---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of **Delaware**
(State)

Case number (*if known*): _____ Chapter **11**

☐ Check if this is an
amended filing

---

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy          04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

---

**1. Debtor's name**

Alto Maipo Delaware LLC

---

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

---

**3. Debtor's federal Employer Identification Number (EIN)**

__ __ - __ __ __ __ __ __ __

---

**4. Debtor's address**

**Principal place of business**

Los Conquistadores 1730
Number      Street

Piso 10

Santiago            Chile
City          State     ZIP Code


County

**Mailing address, if different from principal place of business**

Number      Street

P.O. Box

City          State     ZIP Code

**Location of principal assets, if different from principal place of business**

Number      Street


City          State     ZIP Code

---

**5. Debtor's website (URL)**

conocealtomaipo.cl

---

Debtor    Alto Maipo Delaware LLC _____    Case number *(if known)*_____
          Name

---

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

---

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

    2   3   7   1

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply*:

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

Debtor    Alto Maipo Delaware LLC
_____
Name

Case number (*if known*) _____

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No
☐ Yes. District _____ When _____ Case number _____
                                      MM / DD / YYYY
         District _____ When _____ Case number _____
                                      MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☑ Yes. Debtor    Alto Maipo SpA    Relationship    Parent
         District    Delaware    When    11/17/2021
                                              MM / DD / YYYY
         Case number, if known _____

---

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                            Number       Street

_____

_____
City                          State ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____

        Contact name    _____

        Phone    _____

---

**Statistical and administrative information**

---

Debtor    **Alto Maipo Delaware LLC**                                    Case number (*if known*)_____
_____
Name

| 13. **Debtor's estimation of available funds** | *Check one:* |
|---|---|
| | ☑ Funds will be available for distribution to unsecured creditors. |
| | ☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

| 14. **Estimated number of creditors** | | | |
|---|---|---|---|
| | ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| | ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| | ☑ 200-999 | | |

| 15. **Estimated assets** | | | |
|---|---|---|---|
| | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☑ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| 16. **Estimated liabilities** | | | |
|---|---|---|---|
| | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☑ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| 17. **Declaration and signature of authorized representative of debtor** | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
|---|---|
| | I have been authorized to file this petition on behalf of the debtor. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on _____
       MM / DD / YYYY

✖ _____        Javier Dib
Signature of authorized representative of debtor        Printed name

Title  **Board President and Chief Restructuring Officer**

Debtor    Alto Maipo Delaware LLC
      Name                        Case number (if known)_____

**18. Signature of attorney**

✖   /s/ Sean T. Greecher      Date    11/17/2021

Signature of attorney for debtor            MM   / DD / YYYY

Sean T. Greecher
Printed name

Young Conaway Stargatt & Taylor, LLP
Firm name

Rodney Square, 1000 North King Street
Number      Street

Wilmington                 DE       19801
City                                 State       ZIP Code

302-571-6600              sgreecher@ycst.com
Contact phone                       Email address

4484                       Delaware
Bar number                       State

| | |
|---|---|
| **SESIÓN DE DIRECTORIO** | **BOARD MEETING** |
| **DE** | **OF** |
| **ALTO MAIPO SpA** | **ALTO MAIPO SpA** |

En Santiago de Chile, a 16 de noviembre de 2021, siendo las 17:00 horas, a través del medio tecnológico "Teams" de video conferencia, se da comienzo a la sesión de directorio de la sociedad **Alto Maipo SpA** (en adelante, la "Sociedad").

In Santiago, Chile, on November 16, 2021, at 5:00 p.m., this Board of Directors meeting of **Alto Maipo SpA** (the "Company") was held through videoconference using the "Teams" platform.

Asistieron a la presente sesión los directores titulares, señores Javier Dib, Alfredo del Carril y Roberto Salazar. Con la presencia de los directores antes mencionados se da por cumplido el quorum necesario para sesionar.

The following regular directors attended this meeting: Mr. Javier Dib, Mr. Alfredo del Carril and Mr. Roberto Salazar. With the presence of the aforementioned directors, the quorum required for the meeting was met.

Presidió la sesión el Presidente del directorio, señor Javier Dib, y actuó como secretario designado de actas el señor Alfredo del Carril.

The Chairman of the Board of Directors, Mr. Javier Dib, presided the meeting and Mr. Alfredo del Carril acted as designated secretary of minutes.

Además, a la presente reunión asistieron especialmente invitados, el gerente general señor Luis Urrejola y los señores Ari Lefkovits, Santiago Alsina, Haley Tiller, Lee West, Brett Murray y Alexis Galindo (miembros de Lazard, asesor financiero de la Sociedad), Luke Barefoot (miembro de Cleary Gottlieb, asesores legales estadounidenses de la Sociedad), y Nelson Contador e Iván Caldery (miembros de Nelson Contador Abogados & Consultores, asesores legales de la Sociedad).

In addition, this meeting was attended by special guests Mr. Luis Urrejola, General Manager, Ari Lefkovits, Santiago Alsina, Haley Tiller, Lee West, Brett Murray and Alexis Galindo (members of Lazard, the Company's financial advisor), Luke Barefoot (member of Cleary Gottlieb, the Company's U.S. legal advisors), and Nelson Contador and Iván Caldery (members of Nelson Contador Abogados & Consultores, the Company's legal advisors).

**I. REVISIÓN DEL ACTA DE LA SESIÓN ANTERIOR**

**I. REVIEW OF THE MINUTES OF THE PREVIOUS MEETING**

Se dio lectura al acta de la sesión anterior la que es aprobada por la unanimidad de los asistentes, sin formular ningún tipo de observaciones.

The minutes of the previous meeting were read and approved unanimously by those present, without making any comments.

**II. FORMALIDADES PREVIAS**

**II. PRIOR FORMALITIES**

Por tener asegurada la comparecencia de los miembros del directorio, cuestión que ocurrió y de la que se dejó constancia precedentemente, se dan por cumplidas las formalidades necesarias para tal efecto, según los estatutos y la ley aplicable.

Since the attendance of the members of the Board was assured, which occurred and was recorded above, the necessary formalities for such purpose are deemed to have been complied with, in accordance with the bylaws and the applicable law.

Además, se deja constancia de que, a pesar de que no están físicamente presentes todos los directores, los asistentes estuvieron comunicados simultánea y permanentemente durante toda la sesión por medio de la aplicación tecnológica "Teams". Los asistentes, con el objeto de salvaguardar la salud de los participantes dada la pandemia mundial del Covid-19, estuvieron de acuerdo en sesionar usando dicha aplicación.

In addition, it is noted for the record that, although not all the directors are physically present, the attendees were in simultaneous and permanent communication throughout the meeting by means of the "Teams" technological application. The attendees, in order to safeguard the health of the participants given the global pandemic of Covid-19, agreed to meet using such application.

## III.  TABLA DE LA SESIÓN

Toma la palabra el Presidente quien señala al directorio esta sesión tiene los siguientes objetivos:

## III.   AGENDA FOR THE MEETING

The Chairman took the floor and stated to the Board Members that this meeting had the following objectives:

1)      Revisar el estado de avance de las negociaciones entre la Sociedad y sus acreedores senior y decidir acerca de la conveniencia de que la Sociedad inicie un procedimiento de reorganización bajo el Capítulo 11 ("Chapter 11") del Título 11 del Código de los Estados Unidos de América (el "Procedimiento Chapter 11").

1)      To review the progress of the negotiations between the Company and its senior lenders and to decide whether the Company should initiate a reorganization proceeding under Chapter 11 ("Chapter 11") of Title 11 of the United States Code (the "Chapter 11 Proceeding").

2)      Someter a consideración del directorio los términos y condiciones del contrato de financiamiento bajo la modalidad *Debtor-in-Possession* en el contexto del Procedimiento Chapter 11 que la Sociedad ha estado negociando.

2)      To submit for consideration of the Board Members the terms and conditions of the *Debtor-in-Possession* financing agreement in the context of the Chapter 11 Proceeding that the Company has been negotiating.

3)      Decidir acerca de la dictación del acta que se levante de la presente sesión se haga en un formato doble columna, en inglés y castellano.

3)      Decide that the minutes of this meeting be drafted in a double-column format, in English and Spanish.

## IV.  NEGOCIACIÓN CON FINANCISTAS Y PROCEDIMIENTO CHAPTER 11

El Presidente dio inicio a la discusión de los temas en tabla haciendo una breve recapitulación de los principales hitos del procedimiento que la Sociedad ha llevado adelante durante la segunda mitad de este año 2021 con miras a restructurar su deuda financiera.

## IV.  NEGOTIATION WITH LENDERS AND CHAPTER 11 PROCEEDING

The Chairman began the discussion of the items on the table with a brief recapitulation of the main milestones of the procedure that the Company has carried out during the second half of this year 2021 in order to restructure its financial debt.

En ese contexto, el señor Presidente recordó que en la sesión de directorio que tuvo lugar el pasado 26 de agosto, la Sociedad aprobó el presupuesto final para la construcción de su proyecto hidroeléctrico (el "Presupuesto Final" y el "Proyecto", respectivamente), a la vez que tomó conocimiento de informes preparados por terceros independientes que mostraban probables deterioros futuros en la capacidad de generación de

In this context, the Chairman reminded that at the Board meeting held on August 26th, the Company approved the final budget for the construction of its hydroelectric project (the "Final Budget" and the "Project", respectively), while taking cognizance of reports prepared by independent third parties that showed probable future deteriorations in the Company's cash flow generation capacity that would

flujos de cada por parte de la Sociedad que impedirían dar cumplimiento a algunos de los compromisos asumidos con los financistas senior del Proyecto (los "Financistas") en virtud de los contratos que han sido celebrados con ellos (los "Documentos del Financiamiento").

Sobre la base de dicha información, la Sociedad, de conformidad con lo dispuesto en los Documentos del Financiamiento, comunicó a los Financistas el Presupuesto Final y su plan de negocios (el "Plan de Negocios"), dando inicio a un proceso encaminado a reestructurar su deuda financiera para lograr una estructura de capital que sea sostenible en el largo plazo, que asegure liquidez suficiente para finalizar la construcción del Proyecto y permita maximizar el repago a los Financistas. Para ello, la Sociedad ha contratado a una serie de asesores financieros, legales y comunicacionales, además de requerir los servicios de diversos ejecutivos de AES Andes S.A. ("AES Andes") de conformidad con lo dispuesto en el contrato denominado *Technical Support and Services Agreement*, formando un equipo de trabajo de primer nivel que ha estado trabajando intensamente en este proceso.

Continuó el señor Presidente recordando que desde el 10 de septiembre de 2021, la Sociedad presentó a sus Financistas múltiples propuestas de reestructuración de su financiamiento. Tras el envío de cada propuesta, la Sociedad y sus asesores se contactaron activamente con los Financistas y sus asesores, para recibir sus reacciones a lo presentado. Lo anterior, tomando en consideración que, para asegurar una adecuada liquidez de la Sociedad, resultaba necesario tener claridad con respecto a si una reestructuración consensuada con los Financistas sería o no posible el 15 de noviembre o alrededor de esa fecha.

Como resultado del trabajo de la Sociedad y sus asesores, se han logrado avances importantes con los Financistas respecto a la reestructuración del financiamiento de la Sociedad mediante la sujeción de esta al régimen del Chapter 11. Mientras la Sociedad y los Financistas continúan en discusiones y han progresado en torno a los términos propuestos para la reestructuración de las obligaciones de la Sociedad, la Sociedad y los Financistas no han alcanzado aún un acuerdo definitivo en relación a los términos de un contrato de apoyo a la reestructuración (*restructuring support agreement*).

prevent it from complying with some of the commitments assumed with the senior lenders of the Project (the "Lenders") by virtue of the agreements that have been executed with them (the "Financing Documents").

Based on this information, the Company, in accordance with the provisions of the Financing Documents, communicated to the Lenders the Final Budget and its business plan (the "Business Plan"), initiating a process aimed at restructuring its financial debt to achieve a capital structure that is sustainable in the long term, that ensures sufficient liquidity to complete the construction of the Project and allows maximizing the repayment to the Lenders. For this purpose, the Company has hired a series of financial, legal and communications advisors, in addition to requiring the services of various executives of AES Andes S.A. ("AES Andes") in accordance with the *Technical Support and Services Agreement*, creating a first-class work team that has been working intensively in this process.

The Chairman continued by reminding that since September 10th, 2021, the Company presented to its Lenders multiple proposals to restructure its financing. Following the submission of each proposal, the Company and its advisors actively contacted the Lenders and their advisors, in order to receive their reactions to the submitted proposals. The above, taking into consideration that, to ensure adequate liquidity of the Company, it was necessary to have clarity as to whether or not a consensual restructuring with the Lenders would be possible on or about November 15th.

As a result of the work of the Company and its advisors, significant progress has been made with the Lenders regarding the restructuring of the Company's financing through the submission of the Company to the Chapter 11 regime.  While the Company and the Lenders remain in discussions and have made progress towards proposed terms for a restructuring of the Company's obligations, the Company and the Lenders have not yet reached definitive terms on a restructuring support agreement.

| | |
|---|---|
| En este punto, el señor Presidente, quien además ha liderado el proceso de reestructuración financiera de la Sociedad, otorga la palabra al señor Ari Lefkovits, quien ha sido uno de los principales asesores de la Sociedad a lo largo de este proceso, para que exponga respecto del progreso y estado de las negociaciones con los Financistas. | At this point, the Chairman, who has also led the Company's financial restructuring process, gave the floor to Mr. Ari Lefkovits, who has been one of the Company's main advisors throughout this process, to explain the progress and status of the negotiations with the Lenders. |
| El señor Lefkovits realiza una presentación al directorio, durante la cual se revisaron los términos y condiciones del potencial acuerdo actualmente en discusión con los Financistas, el cual fue entregado oportunamente a los directores previo a esta sesión. Continua el señor Lefkovits discutiendo los puntos respecto de los cuales se ha llegado a acuerdo y aquellos puntos que aún se encuentran en discusión. La exposición del señor Lefkovits es, además, complementada por una exposición del señor Luke Barefoot, quien explicó al directorio las consecuencias que tendría el inicio de Procedimiento Chapter 11. | Mr. Lefkovits made a presentation to the Board, during which the terms and conditions of the potential agreement under discussion with the Lenders were reviewed, which was duly delivered to the directors prior to this meeting. Mr. Lefkovits continued, and discussed the points on which agreement has been reached and the remaining open issues]. Mr. Lefkovits' presentation was complemented by a presentation by Mr. Luke Barefoot, who explained to the Board Members the consequences of initiating the Chapter 11 Proceeding. |
| El señor Lefkovits continuó su exposición con una descripción de la situación actual y proyectada de flujos de caja de la Sociedad en el corto plazo, lo cual fue complementado con explicaciones del señor Barefoot con respecto a los principales hitos y fechas que tendría el Procedimiento Chapter 11, todo ello considerando el objetivo de que el Proyecto pueda alcanzar su operación comercial dentro de las fechas previstas para ello y de acuerdo con los establecido en el Presupuesto Final. | Mr. Lefkovits continued his presentation with a description of the current and projected cash flow situation of the Company in the short term, which was complemented with explanations from Mr. Barefoot regarding the main milestones and dates of the Chapter 11 Proceeding, all of this considering the objective that the Project can reach its commercial operation within the dates planned for it and in accordance with those established in the Final Budget. |
| La exposición del señor Lefkovits terminó con una revisión del presupuesto para terminar la construcción del proyecto, incluyendo ciertos aportes adicionales, que son necesarios, entre otras cuestiones, para que la sociedad pueda transitar por el eventual Procedimiento Chapter 11. Para ello, la Sociedad y sus asesores han estado negociando los términos de un financiamiento *Debtor-in-Possession* (el "Financiamiento DIP") con AES Andes. Dichos términos, que se consideran favorables para la Sociedad, han sido confirmados a través de extensas negociaciones y consultas con diversas instituciones bancarias y financieras. | Mr. Lefkovits' presentation ended with a review of the budget to complete the construction of the project, including certain additional contributions, which are necessary, among other things, for the Company to be able to pass through the eventual Chapter 11 Proceeding. For this purpose, the Company and its advisors have been negotiating the terms of a Debtor-in-Possession financing (the "DIP Financing") with AES Andes. These terms, which are considered favorable for the Company, have been confirmed through negotiations and consultations with various banking and financial institutions. |
| Toma la palabra el señor Barefoot e informa a los presentes, que analizado el asunto con el estudio jurídico Young Conaway Stargatt & Taylor LLP, es recomendable que se constituya una *limited liability* | Mr. Barefoot took the floor and informed the Board that, having analyzed the matter with the law firm Young Conaway Stargatt & Taylor LLP, it is advisable to form a limited liability company (the "LLC") to be |

company (la "LLC"), que sea de propiedad en un 100% de la Sociedad y administrada por esta. Hace presente que esta nueva sociedad podría presentar otras ventajas, como la de contratar ciertos servicios locales, administrar cuentas bancarias, así como otros servicios.

El Presidente agradeció a los asesores su extensa y pormenorizada exposición y análisis. Acto seguido, solicitó al directorio una deliberación acerca de si la Sociedad debiese o no dar inicio a un Procedimiento Chapter 11, tomando en consideración la situación actual y proyectada de la Sociedad, sus negocios y el Proyecto. Antes de dar paso a esa deliberación, el señor Presidente agregó que, en el evento que el directorio decidiera dar inicio al Procedimiento Chapter 11, consideraba adecuado informar a los accionistas acerca de esta determinación citando a una junta extraordinaria de accionistas de la Sociedad, así como también informarles acerca de las operaciones con personas relacionadas que han sido realizadas por la Sociedad desde la última vez que ello fue informado a los accionistas.

**EN CONSIDERACIÓN A LO ANTERIOR, SE ACUERDA, por la unanimidad de los directores presentes:**

1. Que, a juicio del directorio, al día de hoy resulta deseable y de acuerdo con el mejor interés de la Sociedad, sus acreedores y otras personas interesadas, que la Sociedad presente una solicitud voluntaria de amparo conforme con el Chapter 11 y continúe sus conversaciones con los Financistas. Si la Sociedad y sus asesores fuesen capaces de finalizar las negociaciones con los Financistas en relación con los términos definitivos de un contrato de apoyo a la reestructuración (*restructuring support agreement*) en los términos expuestos al directorio, se aprueba la suscripción de dicho contrato.

2. **ADICIONALMENTE SE RESUELVE** que cada uno de (i) el señor Javier Dib, como presidente del directorio de la Sociedad y persona encargada de la reestructuración de la Sociedad; (ii) el señor Roberto Salazar Esperante, en su capacidad de director de la Sociedad; y (iii) el señor Alfredo del Carril, en su capacidad de director de la Sociedad (cada uno de ellos una "Persona Autorizada" y conjuntamente las "Personas Autorizadas"), actuando individualmente o con una o más Personas Autorizadas, se encuentren por la presente autorizados y facultados para (1) adoptar todas las medidas que fueren necesarias o deseables en

100% owned and managed by the Company. He pointed out that this new company could have other advantages, such as contracting certain local services, managing bank accounts, as well as other services.

The Chairman thanked the advisors for their extensive and detailed presentation and analysis. Next, he asked the Board Members to deliberate on whether or not the Company should initiate a Chapter 11 proceeding, taking into consideration the current and projected situation of the Company, its business, and the Project. Before proceeding with this deliberation, the Chairman added that, in the event that the Board decided to initiate a Chapter 11 Proceeding, he considered it appropriate to inform the shareholders of this determination by calling an extraordinary meeting of the Company's shareholders, as well as to inform them of the transactions with related parties that have been carried out by the Company since the last time the shareholders were informed.

**NOW, THEREFORE, BE IT RESOLVED, by the unanimous vote of the directors present:**

1. That in the judgment of the Board it is currently desirable and in the best interests of the Company, its creditors, and other parties in interest that the Company file a voluntary petition for relief under Chapter 11 and continue their discussions with the Lenders. To the extent that the Company and its advisors are able to conclude discussions with the Lenders on definitive terms for a restructuring support agreement on the terms discussed with the Board, such restructuring support agreement is approved.

2. **FURTHER RESOLVED,** that each of (i) Javier Dib, in his capacity as Board President and Chief Restructuring Officer of the Company, (ii) Roberto Salazar Esperante, in his capacity as Board Member, and (iii) Alfredo del Carril, in his capacity as Board Member (each an "Authorized Person" and, collectively, the "Authorized Persons") acting alone or with one or more other Authorized Persons be, and they hereby are, authorized and empowered to (1) take all actions that may be necessary or desirable in connection with the formation of the LLC, including, without limitation, the filing of a certificate of

relación con la constitución de la LLC, incluyendo, sin que ello importe limitación, la presentación de un certificado de constitución, la celebración de un acuerdo de *limited liability company* para regular la LLC, y para hacer cualesquiera elecciones de tributación en nombre de la LLC; (2) ejecutar y presentar en nombre de la Sociedad y, en la calidad de la Sociedad de administrador de la LLC, en nombre de la LLC, todas las peticiones, anexos, listas y otras peticiones, papeles o documentos, y para adoptar todas las acciones que consideren necesarias o apropiadas para iniciar un Procedimiento Chapter 11 por la Sociedad y la LLC y obtener dicho amparo y tramitarlo hasta su terminación, incluyendo, sin que ello importe limitación, cualquier acción necesaria para mantener las operaciones dentro del curso ordinario de los negocios de la Sociedad;

formation, the entry into a limited liability company agreement to govern the LLC, and to make any tax elections on behalf of the LLC; (2) execute and file on behalf of the Company and, in the Company's capacity as the manager of the LLC, the LLC all petitions, schedules, lists and other motions, papers or documents, and to take any and all action that they deem necessary or proper to commence a Chapter 11 Proceeding by the Company and the LLC and obtain such relief and process it until its termination, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business;

3. **ADICIONALMENTE SE RESUELVE** que las Personas Autorizadas estarán autorizadas a determinar el momento en el que ejecutar, tramitar y verificar una petición voluntaria en nombre de la Sociedad y la LLC para iniciar un procedimiento bajo el Chapter 11 del *Bankruptcy Code* y para hacer que este se presente ante la *Bankruptcy Court* de los Estados Unidos para el Distrito de Delaware;

3. **FURTHER RESOLVED,** that the Authorized Persons shall be authorized to determine the time when to execute, process and verify a voluntary petition on behalf of the Company and the LLC to commence a proceeding under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the District of Delaware;

4. **ADICIONALMENTE SE RESUELVE,** que cada Persona Autorizada o ejecutivo de la Sociedad, y cualquiera de ellos, se encuentre autorizada y encargada de contratar en nombre de la Sociedad a (i) (i) Cleary Gottlieb Steen & Hamilton LLP, (ii) Young Conaway Stargatt & Taylor, LLP, (iii) Lazard Frères & Co. LLC and Lazard Chile S.p.A., (iv) Alix Partners LLP, (v) Nelson Contador & Compañía Abogados, (vi) Prime Clerk LLC y (vii) cualesquiera otros profesionales para que asista a la Sociedad en el desempeño de sus respectivas funciones en virtud del *Bankruptcy Code* y sus asuntos relacionados; y, en relación con ello, dichas personas se encuentran, por medio de la presente, autorizadas y encargadas de llevar a cabo los contratos que resulten apropiados, así como autorizan a la Sociedad a pagar todos los anticipos que resulten apropiados antes o inmediatamente después de la presentación de la solicitud bajo el Chapter 11, y de causar que se presente una solicitud apropiada de autorización para contratar los servicios de cualquier otro profesional, según sea necesario;

4. **FURTHER RESOLVED,** that each Authorized Person or officer of the Company, and any of them, be, and hereby is, authorized and directed to retain on behalf of the Company (i) Cleary Gottlieb Steen & Hamilton LLP, (ii) Young Conaway Stargatt & Taylor, LLP, (iii) Lazard Frères & Co. LLC and Lazard Chile S.p.A., (iv) Alix Partners LLP, (v) Nelson Contador & Compañía Abogados, (vi) Prime Clerk LLC and (vii) any other professionals to assist the Company in carrying out their respective duties under the Bankruptcy Code and related matters, and in connection therewith, such persons be, and any of them hereby is, authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to or immediately upon the filing of the case under Chapter 11, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary;

6

5. **ADICIONALMENTE SE RESUELVE,** que cada Persona Autorizada o ejecutivo de la Sociedad y cualquiera de ellos, se encuentre, por medio de la presente, autorizada y encargada de adoptar, en nombre de la Sociedad, todas las acciones y para ejecutar, firmar, reconocer y entregar (y registrar en una oficina pertinente del secretario del condado, de ser necesario) todos y cada uno de los contratos (incluyendo los anexos a los mismos), modificaciones, declaraciones juradas, órdenes, instrucciones, certificados, solicitudes, recibos, declaraciones de financiamiento, u otros instrumentos según se razonablemente necesario para dar efecto a las resoluciones mencionadas y para ejecutar y entregar dichos instrumentos, y para cumplir plenamente los términos y disposiciones de los mismos;

6. Solicitar la designación de Alto Maipo SpA como representante extranjero del Procedimiento Chapter 11 en carácter de procedimiento extranjero ante los tribunales, autoridades y acreedores de jurisdicciones distintas de los Estados Unidos de América para todos los efectos a que haya lugar, incluyendo aquellos contemplados en la ley de la República de Chile que resultaren aplicables;

7. Autorizar la constitución de Alto Maipo Delaware LLC, a ser constituida en Delaware, Estados Unidos de América. Se faculta expresamente al socio de Young Conaway, Mr. Craig Grear, en calidad de persona autorizada, a que otorgue un certificado de constitución para constituir la LLC.

8. Convocar a Junta Extraordinaria de Accionistas de la Sociedad para el día 26 de noviembre de 2021 a las 9.00AM (Chile) con el objeto de comunicarles la decisión de la Sociedad de acogerse al Procedimiento Chapter 11 e informar sobre los contratos con partes relacionadas celebrados por la Sociedad. En ese contexto, se faculta al gerente general de la Sociedad para cumplir con todas las formalidades que se requieran para llevar a efecto la Junta mencionada.

## V.   FINANCIAMIENTO DIP

Continúo el Presidente indicando que, como fuere discutido por el presente directorio en la sesión de fecha 30 de septiembre de 2021, los asesores legales y financieros de la Sociedad recomendaron que, en caso de optarse por el inicio de un Procedimiento Chapter

5. **FURTHER RESOLVED,** that each Authorized Person or officer of the Company and any of them be, and hereby is, authorized and directed, on behalf of the Company, to take such actions and to make, sign, execute, acknowledge, and deliver (and record in a relevant office of the county clerk, if necessary) any and all agreements (including exhibits thereto), amendments, affidavits, orders, directions, certificates, requests, receipts, financing statements, or other instruments as may be reasonably required to give effect to the foregoing resolutions and to execute and deliver such instruments, and to fully perform the terms and provisions thereof;

6. Request the designation of Alto Maipo SpA as a foreign representative of the Chapter 11 Proceeding as a foreign proceeding before the courts, authorities and creditors of jurisdictions other than the United States of America for all applicable purposes, including those contemplated in the law of the Republic of Chile that may be applicable;

7. Authorize the formation of Alto Maipo Delaware LLC, to be formed in Delaware, United States of America. Young Conaway's partner, Mr. Craig Grear, is expressly authorized as an authorized person to execute a certificate of formation to form the LLC.

8. To call an Extraordinary Shareholders' Meeting of the Company for November 26th, 2021, at 9.00 AM (Chile) in order to inform them of the Company's decision to commence the Chapter 11 Proceeding and to report on the contracts with related parties entered into by the Company. In this context, the general manager of the Company is authorized to comply with all the formalities required to carry out the aforementioned Meeting.

## V.   DIP FINANCING

The Chairman continued by stating that, as discussed by the present Board at the meeting held on September 30th, 2021, the Company's legal and financial advisors recommended that, in the event of opting for the initiation of a Chapter 11 Proceeding, a DIP Financing

11, se contara con un Financiamiento DIP pre acordado con uno o más acreedores de la Sociedad. En ese contexto, en dicha sesión se aprobó consultar en forma no vinculante a AES Andes, los demás acreedores de la Sociedad y terceros las condiciones y términos en los cuales estarían dispuestos a proporcionar un Financiamiento DIP.

Tras negociaciones con AES Andes, que ha sido la única entidad con la cual se ha avanzado sustancialmente en los términos y condiciones en que se otorgaría el Financiamiento DIP (lo cual es sin perjuicio que, a futuro, otros Financistas puedan participar del Financiamiento DIP si fuese el caso), existe la posibilidad de contar con un Financiamiento DIP que contempla lo siguiente:

1.     Se trata de la puesta a disposición de la LLC de una línea de crédito por un monto de hasta 50.000.000 de dólares de los Estados Unidos de América ("Dólares").

2.     Está destinado principalmente a dotar de liquidez a la Sociedad, de modo de que ésta disponga, de manera permanente, de al menos 10.000.000 de Dólares en dinero efectivo o inversiones líquidas, que permitan asegurar que la Sociedad cuente con recursos suficientes para finalizar la construcción del Proyecto y enfrentar los gastos del Procedimiento Chapter 11.

3.     Los préstamos que se realicen bajo el Financiamiento DIP devengarían intereses a una tasa de interés de un 4% anual. Dichos intereses deberán pagarse en dinero o bien en especie (capitalizándose), a elección del deudor, con vencimientos trimestrales al último día hábil de marzo, junio, septiembre y diciembre.

4.     Se tiene contemplado que la fecha de vencimiento del Financiamiento DIP sea lo primero que ocurra entre (i) el vencimiento del plazo de 12 meses contados desde la aprobación final del Financiamiento DIP en el Procedimiento Chapter 11 (esto es, la *Final DIP Order*); y (ii) la fecha en que comience a producir sus efectos un plan de reorganización que haya sido confirmado en el Procedimiento Chapter 11. Lo anterior, sin perjuicio de su eventual exigibilidad anticipada de acuerdo con términos usuales para esta clase de operaciones.

should be pre-agreed with one or more of the Company's lenders. In this context, at that meeting it was approved to consult on a non-binding basis with AES Andes, the other lenders of the Company and third parties on the conditions and terms under which they would be willing to provide a DIP Financing.

After negotiations with AES Andes, which has been the only entity with which substantial progress has been made on the terms and conditions under which the DIP Financing would be granted (which is without prejudice that, in the future, other Financiers may participate in the DIP Financing, if applicable), there is the possibility of having a DIP Financing that contemplates the following:

1.     It is the availability to the LLC of a credit facility for an amount of up to 50,000,000 United States dollars ("Dollars").

2.     It is intended primarily to provide the Company with liquidity, in order for the Company to have, on a permanent basis, at least 10,000,000 Dollars in cash or liquid investments, to ensure that the Company has sufficient resources to complete the construction of the Project and meet the expenses of the Chapter 11 Proceeding.

3.     Loans made under the DIP Financing would accrue interest at an interest rate of 4% per annum. Such interest shall be paid in cash or in kind (capitalized), at the borrower's option, due quarterly on the last business day of March, June, September and December.

4.     It is contemplated that the maturity date of the DIP Financing will be the earlier of (i) the expiration of the 12-month period following the final approval of the DIP Financing in the Chapter 11 Proceeding (i.e., the *Final DIP Order*); and (ii) the date on which a plan of reorganization that has been confirmed in the Chapter 11 Proceeding becomes effective. The above, without prejudice to its eventual early enforceability in accordance with the usual terms for this type of operations.

5.     Los desembolsos o préstamos estarán sujetos a términos y condiciones usuales para esta clase de operaciones, incluyendo una serie de hitos o *milestones* que la Sociedad deberá cumplir en virtud del Financiamiento DIP y cuya falta de cumplimiento permitirá a el o los acreedores del Financiamiento DIP suspender futuros desembolsos y exigir anticipadamente el pago de los préstamos que se hayan realizado conforme al Financiamiento DIP. Tales hitos consideran, entre otros, la obligación de la Sociedad de presentar un plan de reorganización al tribunal que conozca del Procedimiento Chapter 11 y alcanzar la operación comercial del Proyecto dentro de determinados plazos.

A continuación, el Presidente don Javier Dib indicó que no iba a tomar parte en la votación de la presente materia por ser un trabajador de AES Andes.

Luego, tomó la palabra el Sr. del Carril, quien expuso que el otorgamiento del Financiamiento DIP en los términos descritos otorgará los recursos necesarios para cubrir gastos operacionales durante la tramitación del Procedimiento Chapter 11. Asimismo, tiene como objetivo asegurar la liquidez de la Sociedad de manera de poder concluir la construcción del Proyecto y poder surgir del Procedimiento Chapter 11 con una estructura de capital que sea sustentable en el largo plazo.

**ACUERDO:** Luego de un breve debate, el Sr. Del Carril y el Sr. Salazar acordaron lo siguiente:

1. Aprobar la negociación y la obtención de préstamos a través del Financiamiento DIP de conformidad con los términos antes expuestos.

2. Aprobar la firma de todos los documentos y la ejecución de todos los actos que sean necesarios o conducentes para concluir las negociaciones relativas al Financiamiento DIP y llevar a cabo su otorgamiento, en el marco de las condiciones previamente descritas.

3. Autorizar a los señores Alfredo del Carril, Javier Dib, Roberto Salazar y Luis Urrejola (los "Apoderados"), para que, actuando individualmente uno cualquiera de ellos, en representación de la Sociedad o de la LLC, según corresponda, tengan todas las facultades necesarias para negociar los términos definitivos del Financiamiento DIP, estando facultados para pactar tasas de interés distintas y/o plazos de pagos distintos a los señalados precedentemente y

---

5.     The disbursements or loans will be subject to terms and conditions customary for this type of transaction, including a series of milestones to be satisfied by the Company under the DIP Financing, the failure of which will permit the lender or lenders of the DIP Financing to suspend future disbursements and demand early repayment of the loans made under the DIP Financing. Such milestones include, among others, the obligation of the Company to submit a reorganization plan to the court hearing the Chapter 11 Proceeding and to achieve commercial operation of the Project within certain time periods.

Next, the Chairman Mr. Javier Dib indicated that he was not going to take part in the vote on this matter because he is an employee of AES Andes.

Then, Mr. del Carril took the floor, who explained that the granting of the DIP Financing in the terms described will provide the necessary resources to cover operating expenses during the Chapter 11 Proceeding. It is also intended to ensure the Company's liquidity so that it can complete construction of the Project and emerge from the Chapter 11 Proceeding with a capital structure that is sustainable over the long term.

**AGREEMENT:** After a brief discussion, Mr. Del Carril and Mr. Salazar agreed as follows:

1. To approve the negotiation and borrowing of the DIP Financing in accordance with the aforementioned terms.

2. To approve the signing of all documents and taking of all acts that are necessary or conducive to conclude the negotiations related to the DIP Financing and to carry out the borrowing of the DIP Financing under the conditions previously described.

3. To authorize any of Messrs. Alfredo del Carril, Javier Dib, Roberto Salazar and Luis Urrejola (the "Representatives"), acting individually, to have, on behalf of the Company or the LLC, as applicable, all the necessary powers to negotiate the definitive terms of the DIP Financing, being authorized to agree on different interest rates and/or payment terms different from those indicated above and to memorialize the DIP Financing, being able to sign all the documents and

materializar el Financiamiento DIP, pudiendo firmar todos los documentos e instrumentos que se requieran a efectos de negociar y materializar el Financiamiento DIP, así como también cualquier otro contrato o documento que forme parte, complemente, modifique o adicione los mencionados documentos, así como cualquier otro documento público o privado que se derive de aquéllos o sea necesario o conveniente suscribir, pudiendo al efecto convenir y modificar en ellos toda clase de pactos y estipulaciones, estén o no contemplados especialmente en las leyes, y sean de su esencia, de su naturaleza o meramente accidentales; fijar montos, condiciones, deberes, atribuciones, épocas y formas de pago y de entrega; y conferir poderes especiales. Los Apoderados estarán asimismo facultados para modificar, aclarar o complementar los referidos documentos, ya sea por iniciativa propia o acogiendo los requerimientos, indicaciones o sugerencias de cualquier organismo, en Chile o en el extranjero, que tenga o pueda tener relación con la referida transacción.

En particular, los Apoderados podrán (a) negociar, ejecutar, otorgar, y presentar frente a tribunales o autoridades (según fuere necesario) el o los contratos de créditos correspondientes, garantías, contratos de garantía, pagarés y los documentos relacionados, certificados e instrumentos, y con respecto a cada uno de los anteriores, y cualquier modificación, suplemento, extensión o renovación de los mismos (conjuntamente, los "Documentos del Financiamiento DIP"); (b) dar garantías en favor de uno o más agentes, en beneficio de los financistas bajo los mismos; (c) negociar, ejecutar, entregar o presentar (según sea necesario) cada contrato, instrumento o documento que sea negociado, suscrito, entregado o presentado (según sea necesario) (conjuntamente con los Documentos del Financiamiento DIP, los "Documentos DIP") en nombre y representación de la Sociedad y la LLC, según corresponda, de conformidad con o en relación con el mismo; y (d) cumplir sus obligaciones bajo los Documentos DIP y suscribir todos los actos, y negociar y pagar cualquier honorario, impuestos u otros gastos, en cada caso, en los términos y condiciones que los Apoderados consideren necesario, adecuado o deseable, todo ello con los cambios y adiciones que cualquier Apoderado apruebe, lo que quedará demostrado por el solo hecho de ejecutarse dichos actos.

instruments required to negotiate and memorialize the DIP Financing, as well as any other contract or document that forms part of, complements, modifies or adds to the aforementioned documents, as well as any other public or private document derived therefrom or that is necessary or convenient to sign, as well as any other contract or document that forms part of, complements, modifies or adds to the aforementioned documents, as well as any other public or private document that derives from them or is necessary or convenient to subscribe, being able to agree and modify in them all kinds of covenants and stipulations, whether or not specially contemplated in the laws, and whether of their essence, nature or merely accidental; to fix amounts, conditions, duties, powers, times and forms of payment and delivery; and to confer special powers of attorney. The Representatives shall also be authorized to modify, clarify, or complement said documents, either on their own initiative or by accepting the requirements, indications or suggestions of any agency, in Chile or abroad, that has or may have a relationship with the referred transaction.

In particular, the Representatives may (a) negotiate, perform, grant, and present before the courts or authorities (as necessary) the relevant loan agreement or agreements, guarantees, security agreements, promissory notes and related documents, certificates and instruments, and with respect to each of the foregoing, and any amendment, supplement, extension or renewal thereof (collectively, the "DIP Financing Documents"); (b) give guarantees in favor of one or more agents, for the benefit of the financiers thereunder; (c) negotiate, perform, grant, and present (as required) each contract, instrument, or document that is negotiated, performed, granted or presented (as required) (collectively with the DIP Financing Documents, the "DIP Documents") in the name of and on behalf of the Company and the LLC, as applicable, pursuant to or in connection therewith; and (d) comply with its obligations under the DIP Documents and subscribe all acts, and negotiate and pay any fees, taxes, or other expenses, in each case, on such terms and conditions as the Representatives may deem necessary, satisfactorily or desirable, all with such changes and additions as any such Representative may approve, which shall be evidenced by the sole execution of such acts.

## VI. EXTENSIÓN DEL ACTA EN FORMATO DOBLE COLUMNA

El Presidente hizo presente al directorio que, debido a que las materias aprobadas en la presente sesión se refieren a asuntos que deberán ser presentados ante entidades extranjeras, resulta conveniente que el acta que se levante de esta sesión sea extendida en idioma inglés y castellano, en un formato a doble columna.

**ACUERDO:** Luego de un breve debate, la unanimidad de los directores acordó que el acta que se levante de la presente sesión sea extendida en un formato doble columna, en inglés y en castellano, pero dejando constancia de que el idioma oficial y con efectos legales de la presente acta, es el castellano. Su traducción al inglés es de carácter libre.

## VII. APROBACIÓN DEL ACTA Y REDUCCIÓN A ESCRITURA PÚBLICA

Los asistentes acordaron dar por aprobada la presente acta desde el momento mismo en que sea firmada por todos de ellos. Sin perjuicio de ello, la unanimidad de los directores acordó que los acuerdos adoptados en esta reunión se lleven a efecto sin esperar la aprobación del acta y sin ninguna formalidad adicional, y facultó además a los señores Alfredo del Carril, Nelson Contador, Javier Dib, Roberto Salazar y Magdalena Vega para que, uno cualquiera de ellos, actuando en forma separada e indistinta, la reduzca a escritura pública en todo o en parte, o bien la inserte, también en todo o en parte, en otra escritura pública o privada si ello fuere necesario, resolviéndose, además, facultar al portador de copia autorizada de dicha escritura pública para practicar las inscripciones y anotaciones a que haya lugar.

## VIII.   TÉRMINO DE LA SESIÓN

Antes de poner término a la sesión, el señor Presidente ofreció la palabra a los directores asistentes para considerar cualquier otra materia.

No habiendo otras materias que tratar, se levantó la sesión a las 18.30 horas.

## VI. EXECUTION OF MINUTES IN DUAL COLUMN FORMAT

The Chairman explained to the Board Members that, since the matters approved at this meeting refer to matters to be submitted to foreign entities, it is convenient that the minutes of this meeting be drawn up in English and Spanish, in a double column format.

**AGREEMENT**: After a brief discussion, the unanimous vote of the directors agreed that the minutes of this meeting be drawn up in a double column format, in English and Spanish, but stating that the official language and with legal effect of these minutes is Spanish. Its translation into English is free.

## VII. APPROVAL OF MINUTES AND CONVERSION INTO PUBLIC DEED

The attendees agreed to consider these minutes approved from the moment they are signed by all of them. Notwithstanding, the directors unanimously agreed that the resolutions adopted at this meeting shall be effective without prior approval of the minutes and without any further formality. The Board also authorizes the lawyers Messrs. Alfredo del Carril, Nelson Contador, Javier Dib, Roberto Salazar and Magdalena Vega, for any one of them acting individually, to reduce these minutes to public deed in whole or in part, or to insert it, also in whole or in part, in another public or private deed if necessary, resolving, in addition, to authorize the bearer of authorized copy of public deed to make the necessary annotations and registrations.

## VII. END OF THE MEETING

Before adjourning the meeting, the Chairman offered the floor to the directors in attendance to consider any other matter.

There being no further matters to deal with, the meeting was adjourned at 18.30 p.m.

Javier Federico Dib (16 Nov. 2021 20:13 EST)

_____
Javier Dib
Presidente / Chairman

_____
Roberto Salazar
Director

_____
Alfredo del Carril
Secretario / Secretary

# Board Meeting Chapter 11 Approval (Double column) - Alto Maipo

Informe de auditoría final                                                          2021-11-17

| | |
|---|---|
| Fecha de creación: | 2021-11-17 |
| Por: | Lukas Schatzmann (lukas.schatzmann@aes.com) |
| Estado: | Firmado |
| ID de transacción: | CBJCHBCAABAAcMk605o_4s8dtV0h_vnSHRqUwiW2LMpJ |

## Historial de "Board Meeting Chapter 11 Approval (Double column) - Alto Maipo"

Lukas Schatzmann (lukas.schatzmann@aes.com) ha creado el documento.
2021-11-17 - 0:59:52 GMT- Dirección IP: 147.161.129.32.

El documento se ha enviado por correo electrónico a Alfredo Del Carril (alfredo.delcarril@aes.com) para su firma.
2021-11-17 - 1:00:26 GMT

Alfredo Del Carril (alfredo.delcarril@aes.com) ha visualizado el correo electrónico.
2021-11-17 - 1:05:41 GMT- Dirección IP: 204.69.235.144.

Alfredo Del Carril (alfredo.delcarril@aes.com) ha firmado electrónicamente el documento.
Fecha de firma: 2021-11-17 - 1:06:12 GMT. Origen de hora: servidor.- Dirección IP: 204.69.235.144.

El documento se ha enviado por correo electrónico a . (roberto.salazare@aes.com) para su firma.
2021-11-17 - 1:06:14 GMT

. (roberto.salazare@aes.com) ha visualizado el correo electrónico.
2021-11-17 - 1:06:40 GMT- Dirección IP: 104.47.56.254.

. (roberto.salazare@aes.com) ha firmado electrónicamente el documento.
Fecha de firma: 2021-11-17 - 1:11:09 GMT. Origen de hora: servidor.- Dirección IP: 147.161.129.17.

El documento se ha enviado por correo electrónico a Javier Federico Dib (javier.dib@aes.com) para su firma.
2021-11-17 - 1:11:11 GMT

Javier Federico Dib (javier.dib@aes.com) ha visualizado el correo electrónico.
2021-11-17 - 1:11:57 GMT- Dirección IP: 104.47.57.254.

Javier Federico Dib (javier.dib@aes.com) ha firmado electrónicamente el documento.
Fecha de firma: 2021-11-17 - 1:13:29 GMT. Origen de hora: servidor.- Dirección IP: 165.225.220.251.

 Adobe Sign

✅ Acuerdo completado.
2021-11-17 - 1:13:29 GMT

Adobe Sign

Alto Maipo S.A.
Top 30 Unsecured Creditors
Prepared: 11/15/2021

Privileged and Confidential
DRAFT prepared at request of Counsel

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | STRABAG SPA ALONSO D CORDOVA 4355 Of 1001 VITACURA Chile | Philipp Rainer p: (2) 3203 6610 f: chile@strabag.com | Operational Vendor | Contingent; unliquidated | | | $3,427,280 |
| 2 | VOITH HYDRO S.A. AV. NUEVA TAJAMAR 481 TORRE NORTE OF302 LAS CONDES Chile | Guillermo Neira p: +56 2 22443213 f: guillermo.neira@voith.com | Operational Vendor | Contingent; unliquidated | | | $1,475,400 |
| 3 | SEGUROS GENERALES SURAMERICANA S.A. AVENIDA PROVIDENCIA 1760 PISO 3 PROVIDENCIA Chile | Marcelo Toledo (broker) p: 600 411 1000 f: marcelo.toledo@willistowerswatson.com | Insurance | Contingent; unliquidated | | | $1,147,500 |
| 4 | ANDRITZ HYDRO GMBH. Eibesbrunnergasse 20 1120 Viena Austria | Andreas Kronsteiner p: 435080553959 f: andreas.kronsteiner@andritz.com e: 435080551016 | Operational Vendor | Unliquidated | | | $866,130 |
| 5 | TESORERIA GRAL.DE LA REPUBLICA Teatinos 28 Santiago Chile | Cristián Vargas Bugueño (Jefe División Jurídica) p: 600 4000 444 f: https://tgr.cl/contacto/ | Tax | Contingent; unliquidated | | | $800,000 |
| 6 | VOITH HYDRO LTDA. AV. NUEVA TAJAMAR 481 TORRE NORTE OF302 LAS CONDES Chile | Guillermo Neira p: +56 2 22443213 f: guillermo.neira@voith.com | Operational Vendor | Unliquidated | | | $546,098 |
| 7 | ANDRITZ CHILE LIMITADA ISIDORA GOYENECHEA 3200 OF202 LAS CONDES, SANTIAGO Chile | Marcelo Henriquez p: 56-2-4624600 f: Marcelo.henriquez@andritz.com e: 56-2-4624646 | Operational Vendor | Contingent; unliquidated | | | $486,380 |
| 8 | CLARO CHILE S.A. EL SALTO 5450 HUECHURABA, RM Chile | Jose Ignacio Gonzalez Cejas p: +56 2 2582 5000 f: asuntoscorporativos@clarochile.cl | Operational Vendor | Unliquidated | | | $62,579 |
| 9 | VERGARA GALINDO CORREA La Concepción 141 OF. 1106 Providencia, SANTIAGO Chile | Maria Eugenia Armisen p: +(562) 223 680 77 f: contacto@vgcabogados.cl | Operational Vendor | Unliquidated | | | $30,000 |
| 10 | SEGUROS DE VIDA SURAMERICANA S.A. Avenida Providencia 1760. piso 4 Providencia Chile | Daniel Mallea p: +56 9 6907 2660 f: danielmallea@nexoseguros.cl | Insurance | Unliquidated | | | $24,000 |

**Alto Maipo S.A.**
Top 30 Unsecured Creditors
Prepared: 11/15/2021

**Privileged and Confidential**
DRAFT prepared at request of Counsel

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 11 | CENTRO DE ECOLOGIA APLICADA LTDA Suecia 3304 Ñuñoa, SANTIAGO Chile | Viviana Vasquez p: 56-2-24491250 f: vvasquez@cea.cl | Operational Vendor | Unliquidated | | | $20,000 |
| 12 | INVERSIONES MENEVADO DOS LIMITADA Espoz 3150 Of. 401 SANTIAGO Chile | Juan Pablo Domenech p: 56225773673 f: jpdomenech@megeve.cl | Operational Vendor | Unliquidated | | | $20,000 |
| 13 | FUNDACION AES GENER Los Conquistadores 1730 piso 10 Providencia, Santiago Chile | Adriana Roccaro p: 26804871 f: adriana.roccaro@aes.com | Operational Vendor | Unliquidated | | | $12,000 |
| 14 | TURISMO COCHA S.A. AV. EL BOSQUE NORTE 0430 LAS CONDES, SANTIAGO Chile | Rosario Vargas p: 5624641010 f: rvargas@cocha.com | Operational Vendor | | | | $11,185 |
| 15 | ASESORIAS E INVERSIONES A&P LIMITAD Málaga 339 Las Condes, Santiago Chile | Nicolás Cannoni Mandujano p: (56-2) 22456616 f: aillanes@amlv.cl | Operational Vendor | Unliquidated | | | $10,000 |
| 16 | EY SERVICIOS PROFESIONALES DE AUDIT Av. Presidente Riesco 5435 Piso 4 Las Condes, Santiago Chile | Ruben Cordova p: 26761000 f: ruben.cordova@cl.ey.com | Operational Vendor | Unliquidated | | | $10,000 |
| 17 | INGENIERIA Y CONSTRUCCION INGEXA AV. JOSE ARRIETA 7256 LA REINA SANTIAGO Chile | Christian San Martin p: 226082778 f: csanmartin@ingexa.cl | Operational Vendor | Unliquidated | | | $6,000 |
| 18 | CONIC - BF INGENIEROS CIVILES MAITENES 2387 Providencia, SANTIAGO Chile | Raúl Demangel p: 222054095 f: dborquez@conicbf.cl | Operational Vendor | Unliquidated | | | $6,000 |
| 19 | CONSULTORA PAMELA ANDREA LATHROP VA BLANCO 1215 DEPTO.403 E MA VALPARAISO Chile | Pamela Lathrop p: 992519543 f: plathrop@lathropconsultores.cl | Operational Vendor | Unliquidated | | | $6,000 |
| 20 | VECTOR SERVICIOS Y ASESORIAS SA Los Alerces 2117 Ñuñoa, Santiago Chile | Mauricio p: 23995000 f: mlopez@vector.cl | Operational Vendor | Unliquidated | | | $4,126 |

**Privileged and Confidential**
DRAFT prepared at request of Counsel

**Alto Maipo S.A.**
Top 30 Unsecured Creditors
Prepared: 11/15/2021

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 21 | SERVITAL AUTOMOTRIZ S A<br>Av. Las Condes 12360<br>Lo Barnechea<br>Chile | Wendy Mora<br>p: +56 2248 0828<br>f: administracion@servital.cl | Operational Vendor | Unliquidated | | | $2,889 |
| 22 | TOOLDATA SpA<br>Javiera Carrera 340<br>Oficina 200<br>Cerro Los Placeres, Valparaiso<br>Chile | Jorge Galvez<br>p: +56990889033<br>f: jorge@tooldata.io | Operational Vendor | Unliquidated | | | $2,529 |
| 23 | FELIX JAVIER MUNOZ DIAZ<br>Avenida Salvador 880 Block A Depto. 1105<br>Providencia, Santiago<br>Chile | FELIX JAVIER MUNOZ<br>p: 966560656<br>f: FJMD2009@GMAIL.COM | Operational Vendor | Unliquidated | | | $1,572 |
| 24 | PROVEEDORES INTEGRALES PRISA S.A.<br>LAS ROSAS 5757<br>CERRILLOS, Santiago<br>Chile | Mario Moreno<br>p: 56-2-28206080<br>f: mmorenoi@prisa.cl | Operational Vendor | Unliquidated | | | $1,553 |
| 25 | SGS CHILE LIMITADA SOCIEDAD<br>PUERTO MADERO 130<br>PUDAHUEL, SANTIAGO<br>Chile | BRAULIO ESTEBAN VERA GARCIA<br>p: 56939237086<br>f: Braulio.Vera@sgs.com | Operational Vendor | | | | $1,375 |
| 26 | TAMARA NOEMI MIRANDA CERON<br>Salitrera Pedro de Valdivia 2322<br>Villa Portal Andino, Puente Alto<br>Chile | TAMARA NOEMI MIRANDA CERON<br>p: 973350804<br>f: Tnmc80@gmail.com | Operational Vendor | | | | $271 |
| 27 | CARLOS FELIPE GARIN AGUILAR<br>Grecia 757 Depto 30<br>Ñuñoa, SANTIAGO<br>Chile | CARLOS FELIPE GARIN AGUILAR<br>p: 56994281712<br>f: cfgarin@gmail.com | Operational Vendor | | | | $164 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.:  21-[ ] |
| Debtors. | (Joint Administration Requested) |

**CONSOLIDATED CORPORATE OWNERSHIP
STATEMENT AND LIST OF EQUITY INTEREST HOLDERS
PURSUANT TO FED. R. BANKR. P. 1007(a)(1), 1007(a)(3), AND 7007.1**

Pursuant to Rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure, the above-captioned debtors and debtors in possession (each, a "Debtor") hereby state as follows:

1.    Alto Maipo SpA is 93% owned by Norgener SpA and 7% owned by Strabag SpA. Norgener SpA is 100% owned by AES Andes S.A. which is 66.7% owned by the AES Corporation. Strabag SpA is 100% owned by Strabag SE.

2.    Alto Maipo Delaware LLC is 100% owned by Alto Maipo SpA.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (•) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

**Fill in this information to identify the case and this filing:**

Debtor Name __Alto Maipo Delaware LLC__

United States Bankruptcy Court for the: _____ District of __Delaware__
(State)

Case number (*If known*): __21-_____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☑ Other document that requires a declaration __Combined Corporate Ownership Statement and List of Equity Interest Holders__

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __11/16/2021__          ✗ _____
MM / DD / YYYY                              Signature of individual signing on behalf of debtor

Javier Dib
Printed name

Board President and Chief Restructuring Officer
Position or relationship to debtor