**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.:  21-11507 (   ) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE**
**PROTECTION; AND (III) MODIFYING THE AUTOMATIC STAY**

Alto Maipo SpA ("Alto Maipo") and Alto Maipo Delaware LLC ("Alto Maipo Delaware"),

debtors and debtors in possession in the above-captioned cases (together, the "Debtors"), hereby

submit this motion (the "Motion"), seeking entry of an interim order (the "Proposed Interim Order")

substantially in the form attached hereto as **Exhibit A**, and a final order (the "Proposed Final

Order")[2] (i) authorizing the Debtors' use of Cash Collateral (as defined below) pursuant to sections

105(a), 361, 362, 363, 364 and 552 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local

Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), (ii) granting and affirming the

adequate protection proposed to be provided to the term loan lenders and supplier financing lender

Strabag SpA (collectively, the "Prepetition Lenders") and agent (in its capacity as such, the "Agent")

under the Debtors' prepetition secured term loan and Supplier Deferred Payment (as defined below)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (•) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2] The form of the proposed Final Order will be submitted to the Court in advance of the final hearing on this Motion.  The Debtors' advisers will meet and confer with counsel to the Prepetition Lenders on the terms of such proposed Final Order.

(collectively, the "<u>Prepetition Secured Loans</u>"), as further described in the *Declaration of Javier Dib in Support of Chapter 11 Petition and First Day Motions* (the "<u>First Day Declaration</u>"),[3] which was filed contemporaneously herewith, in connection with the Prepetition Loan Documents (as defined below) upon the terms set forth in the Proposed Interim Order, and (iii) modifying the automatic stay as set forth in the Proposed Interim Order and waiving the fourteen (14) day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h).  In support of this Motion, the Debtors rely upon the First Day Declaration, and respectfully represent as follows:

**Jurisdiction**

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 506(a), 507(b), 552, and 553 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 7062, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

---

[3]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Proposed Interim Order, as applicable, unless otherwise noted.

**Background**

3.        On November 17, 2021 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware (this "Court").  As of the Petition Date, the Debtors continue to operate their businesses as a debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no committees have been appointed or designated at this time.

4.        Alto Maipo is a special purpose company, incorporated under Chilean law for the purpose of developing, constructing, and operating a run-of-river hydroelectric energy project in the Santiago Metropolitan Region of Chile, approximately 30 miles southeast of the city of Santiago. The hydroelectric energy project that is presently under construction (the "Project") will consist of two run-of-river hydroelectric plants (the "Hydroelectric Plants") which, once completed, will provide significant zero-emissions energy to Chile's electric grid.

5.        As set forth more fully in the First Day Declaration, which is incorporated herein by reference, the energy market that Alto Maipo will enter into next year is not the same energy market that Alto Maipo projected would exist upon its initial Commercial Operation Date (the "COD") when construction began in 2013.  Since that time, increased generation capacity has driven down electricity prices in Chile, such that spot prices at which Alto Maipo could sell power are now less than half of what they were in 2013.  Meanwhile, climate change has significantly impacted the hydrology of the Maipo Valley, where the Project is being constructed, and lower precipitation levels reduce in turn the amount of power that the Project can produce.  As a result, Alto Maipo can no longer rely on its prior revenue projections, which assumed economic and environmental factors that are no longer in place.  In order to right-size their capital structure to meet these market challenges, and in light of a looming liquidity shortfall, the Debtors commenced these Chapter 11 Cases to

ensure that they can complete construction of this hydroelectric project and generate renewable energy for many years to come.

6.       The Debtors submit this Motion to seek interim relief from this Court to permit it to continue to use the Cash Collateral (as defined below) to make critical payments during the initial stages of the Chapter 11 Cases in order to ensure that construction on the Project is not disrupted or delayed as a result of the proceedings.  While any such delay would inure to the detriment of all parties in interest, permitting use of the Cash Collateral to make such payments will serve to increase the value of both the Debtors' estates as a whole and of the collateral pledged to secure the obligations under the Prepetition Secured Loans.

**Prepetition Secured Debt Obligations**

7.       *First Lien Indebtedness*.  The Debtors are the borrowers under a series of prepetition term loans (the "Prepetition Term Loans" and the lenders thereunder, the "Prepetition Term Lenders") and rank *pari passu* as between each other and *pari passu* with the Supplier Deferred Payment (as defined below), from certain international development banks, local and international commercial banks, and syndicated lenders, including (i) the U.S. International Development Finance Corporation, (ii) the Inter-American Development Bank, (iii) Banco de Crédito e Inversiones, (iv) Itaú Corpbanca SA ("Itaú"), (v) DNB ASA, (vi) Deutsche Bank AG, (vii) UBS Group AG, (viii) Moneda Asset Management, (ix) Finepoint Capital, (x) Santana Capital Group, (xi) Clover Capital, Ltd., and (xii) Regera Sàrl.  The Prepetition Term Lenders collectively hold approximately $1.471 billion in outstanding senior secured term loan debt as of the Petition Date.  Additionally, the Debtor and Strabag SpA ("Strabag") are parties to an Amended and Restated Lump Sum Fixed Price Tunnel Complex Construction Contract, dated as of February 19, 2018 (the "Tunneling Construction

Contract").[4]  Pursuant to the Tunneling Construction Contract, among other things Strabag provided

to the Debtor, and the Debtor remains obligated to Strabag for, $391.5 million in secured deferred

supplier financing (the "Supplier Deferred Payment"). The Prepetition Secured Loans and Supplier

Deferred Payment rank *pari passu* and are secured by substantially all assets of the Company (the

"Prepetition Collateral").   The Collateral Agent under the Prepetition Secured Loans and Supplier

Deferred Payment is Itaú.

8.      *Interest Rate Swaps*: Certain of the Prepetition Term Loans are also subject to interest

rate swaps (the "Swaps") held by the originating banks as well as KfW IPEX-Bank GmbH (the

"Swap Counterparties," together with the Prepetition Term Lenders and Strabag, the "Prepetition

Secured Parties," the documents governing agreements with Prepetiton Secured Parties, the

"Prepetition Loan Documents," and all obligations of the Debtor thereunder, the "Prepetition

Secured Loans" or "Prepetition Obligations").  The total mark-to-market value of the Swaps, in the

event of their termination, is approximately $184 million (as of November 16, 2021).  The Debtor's

obligations under the Swaps are also secured by the Prepetition Collateral and rank *pari passu* with

the Prepetition Term Loans and the Supplier Deferred Payment.

## Debtors' Request To Use Cash Collateral

9.      It is essential to the Debtors' efforts to preserve and maximize the value of their assets

that they obtain the authority to access the cash presently in the Debtors' approximately twenty (20)

accounts (the "Bank Accounts"), of which four (4) are actively utilized by the Debtors in their current

cash management system, all of which are held at Itaú Corpbanca S.A. in its New York, New York

and Santiago, Chile branches[5] (the "Cash Collateral").  These Chapter 11 Cases is filed under unique

---

[4]        Strabag is also a minority shareholder in Alto Maipo.

[5]        A complete list of these accounts is included in Exhibit D of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System; (II) Authorizing Use of Prepetition Bank Accounts and Certain Payment Methods; (III) Authorizing Postpetition Affiliate Transactions; (IV) Waiving Compliance with*

circumstances. The Debtors, whose primary asset is the nearly-completed hydroelectric Project, have sought bankruptcy relief in order to stave off what could be a disorderly and extended restructuring process in the event that it fails to meet payments to prepetition creditors, which would be hugely disruptive to the construction process, and thus value-destructive to the Debtors' estates as a whole and potential recoveries to creditors. The Debtors' situation is also unique in that, because the Debtors have no current revenues and the Project's value is highly speculative until it becomes operational (which is currently projected to happen in the first half of 2022), the vast majority of the Debtors' current expenditures are effectively capital expenditures that directly accrete to the value not only of the Debtors' enterprise as a whole, but of the collateral that secures the Debtors' obligations to the Prepetition Secured Parties. In this way, use of the Cash Collateral will serve to increase, rather than diminish, the overall value of the Prepetition Secured Parties' collateral. Such use includes expenditures related not only to construction costs and wages to employees and contractors presently engaged in completing the project, but also to compensation for the restructuring professionals that have been retained by the Debtors and the Prepetition Secured Parties to ensure an orderly restructuring and minimal disruption to the construction process. Furthermore, for the reasons articulated above, the Debtors' attempts to obtain postpetition financing have yielded only one proposal (the "Proposed DIP Financing").[6] Despite the fact that no other proposals were received, the Proposed DIP Financing is highly favorable to the Debtors: it is offered on an unsecured, non-priming basis, with a low interest rate and limited covenants. However, the Proposed DIP Financing, as negotiated with the proposed lender thereunder, effectively requires the Debtors

---

*Restrictions Imposed by Section 345 of the Bankruptcy Code; (V) Authorizing the Opening of a New Bank Account; and (VI) Granting Related Relief* (the "Cash Management Motion").

[6]   The proposed postpetition financing is described in further detail in the *Debtors' Motion for Interim and Final Orders (I) Approving Postpetition Financing (II) Providing Superpriority Administrative Expense Claim Status Pursuant to 11 U.S.C. §§ 363 and 364, (III) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* (the "DIP Motion").

to use their existing cash reserves (*i.e.*, the Cash Collateral) to fund construction costs and other operating costs prior to drawing on the DIP.  Specifically, the Proposed DIP Financing includes a condition precedent to any draw that the Debtors' available cash must be less than $10 million.

10.     As a result, and in order to ensure that the Debtors will have access to their postpetition financing and will suffer no interruption in their efforts to complete the Project, it is imperative that the Debtors be able to immediately access the Cash Collateral to fund construction and other costs in the immediate post-petition period until the conditions precedent to the first draw on the Proposed DIP Financing are met.

11.     Therefore, interim authorization to use Cash Collateral is in the best interests of both the Debtors' estates and their creditors.

### Bankruptcy Rule 4001 And Local Rule 4001–2 Concise Statement

12.     The Debtors and the Prepetition Secured Parties have reached an agreement with respect to the Debtors' use of the Cash Collateral upon the terms and conditions set forth in the Proposed Interim Order and summarized below.  Such agreement is consistent with the budget in Schedule 501(c) to the DIP Credit Agreement, filed as Exhibit B to the DIP Motion (the "DIP Budget"), which lays out not only the Debtors' use of the Proposed DIP Financing, but also their proposed uses of existing cash, in the near term and for the expected duration of the Chapter 11 Cases.

13.     Pursuant to Bankruptcy Rules 4001(b)(1) and (d) and Local Rule 4001-2(a)(ii), the Debtors submit the following concise statement of the material terms of the Proposed Interim Order:[7]

---

[7]     The summary of key provisions of the Proposed Interim Order is qualified by the terms of the Proposed Interim Order.  In the event of an inconsistency, the terms of the Proposed Interim Order shall control.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Proposed Interim Order.

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Use of Proceeds**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i) | The ability of the Debtors to use the Cash Collateral is vital to the Debtors' estates and their creditors, and the Debtors' agreement to the terms and conditions set forth in the Proposed Interim Order is a prudent exercise of the Debtors' sound business judgment.  The use of the Cash Collateral will enable the Debtors to maximize and preserve the value of the Debtors' business during the pendency of the Chapter 11 Cases, and to satisfy payroll obligations, construction costs, restructuring expenses and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the Proposed Interim Order and the DIP Budget. Among other things, entry of the Proposed Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates and, accordingly, is in the best interests of the Debtors, their estates, and their creditors. | Proposed Interim Order at ¶ 3. |
| **Material Conditions to Closing and Borrowing, Including Budgets**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(E) | Provided no Event of Default exists, and during any Remedies Notice Period, the Debtors are authorized to use Cash Collateral, in accordance with the terms, conditions, and limitations set forth in the Proposed Interim Order and consistent with the DIP Budget. | Proposed Interim Order at ¶ 3. |
| **Security and Priority Under the DIP Facility**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i), 4001(c)(1)(B)(ii)<br><br>Local Rule 4001-2(a)(i)(G), 4001-2(a)(i)(N), 4001-2(a)(i)(P) | See "Adequate Protection" below. | |
| **Provisions Prohibiting Use of Estates Funds to Investigate Liens and Claims of Prepetition Lender**<br><br>Local Rule 4001-2(a)(i)(L) | No Prepetition Collateral (including, without limitation, Cash Collateral) may be used to request authorization from the Court to obtain any postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code without the consent of the Prepetition Secured Parties; *provided, however*, that for the avoidance of doubt, the Debtors may use the Cash Collateral to satisfy the Professional Fees and expenses incurred in connection with the administration of, and all | Proposed Interim Order at ¶ 6. |

| | | |
|---|---|---|
| | reporting related to, the DIP Facility; *provided further, however,* that up to $25,000 of Cash Collateral in the aggregate (the "<u>Committee Expense Cap</u>") may be used to pay the allowed fees and expenses of counsel retained by the Creditors' Committee, if any, incurred directly in the investigation (but not the prosecution) of the validity, perfection, enforceability, and extent of the Prepetition Obligations and Prepetition Liens and any potential claims of the Debtors' estates against the Prepetition Secured Parties in respect of the Prepetition Obligations, or any other claims, causes of action, or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action (collectively, the "<u>Claims and Defenses</u>"), provided that, for the avoidance of doubt, no amounts incurred by the Creditors' Committee in excess of the Committee Expense Cap shall be allowed under Bankruptcy Code sections 503(b), 330, 331 or other provisions of the Bankruptcy Code unless such amounts are incurred in connection with the successful prosecution of a Claim or Defense and, in such case, only to the extent of the benefit derived for the Debtors' estates from such successful prosecution. | |
| **Termination or Events of Default**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(M) | The Debtors' right, and the right of any other representative of the Estates, to access Cash Collateral under the Proposed Interim Order shall terminate automatically without the need for any further order of the Court, on the earliest to occur of the following: (a) forty-five (45) calendar days after the Petition Date if a final order with respect to the Debtors' use of Cash Collateral has not been entered by such date; (b) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Cases (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (c) the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (d) the dismissal of the Chapter 11 Cases; (e) a determination by the Court that a material violation or breach (other than by the Prepetition Secured Parties), of any of the provisions of the Proposed Interim Order has occurred, (f) any other (i.e. not material) violation or breach by the Debtors of any of the provisions of the Proposed Interim Order that is not disputed or cured within five (5) business days of written notice from the Prepetition Lender (either (e) or (f), an "Event of Default"); (g) the effective date of any plan of reorganization in the Chapter 11 Cases that has been confirmed by an order of the Court.  The date on which the earliest of clauses (a) through (g) occurs is referred to as the "Termination Date." A Termination Date shall also occur upon termination of the restructuring support agreement executed by the Prepetition Secured Parties and the Debtor prior to the Petition Date (the "<u>RSA</u>"), and delivery by the Prepetition Secured Parties of a valid notice of termination of the RSA (the "<u>RSA Termination</u>"), | Proposed Interim Order at ¶ 8. |

| | | |
|---|---|---|
| | provided that (i) the validity of the RSA Termination is not disputed by the Debtors, and (ii) the event underlying the alleged RSA Termination is not cured, within five (5) business days of written notice from the Prepetition Secured Parties; *provided, however,* that in the event of an RSA Termination, all rights and defenses of the Debtors and the Prepetition Secured Parties with respect to the Cash Collateral and its use shall be reserved, including the Debtors' right to file a renewed motion seeking leave of court to continue to use the Cash Collateral in the ordinary course, and the Secured Parties' right to object or otherwise challenge such use and/or request additional adequate protection. | |
| **Provisions Immediately Approving All Terms and Conditions of the Postpetition Loan Agreement**<br><br>Local Rule 4001-2(a)(i)(R) | The Proposed Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6003(b), 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed immediately to enter the Proposed Interim Order on the Court's docket in these Chapter 11 Cases. | Proposed Interim Order at ¶ 26. |
| **Section 506(c), 552(b) "Equities of the Case," and Marshalling Waivers**<br><br>Bankruptcy Rule 4001(c)(1)(B)(x);<br><br>Local Rule 4001-2(a)(i)(V)-(X) | Subject to the entry of a final order regarding Cash Collateral, no costs or expenses of administration that have been or may be incurred in these Chapter 11 Cases or in any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the Prepetition Secured Parties or Agent, or any of their claims, or any assets or property subject to the Prepetition Liens, pursuant to section 506(c) or section 105 of the Bankruptcy Code or otherwise. Subject to the entry of a final order regarding Cash Collateral, no action, inaction, or acquiescence by the Prepetition Secured Parties or Agent shall be deemed to be, or shall be considered evidence of, any alleged consent to a surcharge against the Prepetition Secured Parties or Agent, any of their claims, or any assets or property subject to the Prepetition Liens.<br><br>Subject to the entry of a final order regarding Cash Collateral, the Prepetition Secured Parties and Agent shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the assets or property subject to the Prepetition Liens or otherwise. Without limiting the generality of the foregoing, subject to the entry of a final order regarding Cash Collateral, no party other than the Prepetition Secured Parties or Agent shall be entitled, directly or indirectly, to direct the exercise of rights or remedies or to seek (whether by order of this Court or otherwise) to marshal or otherwise control the enforcement of the Prepetition Liens. | Proposed Interim Order at ¶ 10-12. |

| | | |
|---|---|---|
| | Subject to the entry of a final order regarding Cash Collateral, the Prepetition Secured Parties and Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Secured Parties or Agent with respect to any proceeds, product, offspring, or profits of any of the Collateral, or otherwise. | |
| **Adequate Protection**<br><br>Bankruptcy Rules 4001(b)(l)(B)(iv), 4001(c)(1)(B)(ii)<br><br>Local Rule 4001-2(a)(i)(B), 4001-2(a)(i)(K), 4001-2(a)(i)(N), 4001-2(a)(i)(P) | While the Debtors believe there will be no diminution in value of the Prepetition Collateral (as to which position, however, the Debtors are not seeking by this Motion any finding of the Court, and as to which the Prepetition Secured Parties' arguments and defenses are fully preserved), as a compromise and settlement, to address any potential diminution in value, the Prepetition Secured Parties and Agent are hereby granted the following: Pursuant to sections 361(1) and 363(e) of the Bankruptcy Code, the Debtors shall pay, transfer or otherwise convey to the Prepetition Secured Parties, following the reasonableness review process set forth in the Proposed Interim Order, (1) (a) the reasonable and documented professional fees of each of (i) Norton Rose Fulbright US LLP, (ii) FTI Consulting, Inc., (iii) Asset Chile S.A., (iv) Landis Rath & Cobb LLP, and (v) Carey y Cia Ltda., and (b) $210,000 in respect of professional fees to Troutman Pepper Hamilton Sanders LLP (both (a) and (b) will be subject to the aggregate budget amounts set forth in the DIP Budget), (2) replacement liens on unencumbered collateral acquired or obtained after the Petition Date (if any) other than the proceeds of the DIP Facility, to the extent that the Court finds that there is any diminution in value (as to which matter all rights and defenses of Prepetition Secured Parties and the Debtors are fully reserved). For the avoidance of doubt, the Prepetition Secured Parties' existing liens will attach to any proceeds or offspring of the Prepetition Collateral, pursuant to section 552 of the Bankruptcy Code. | Proposed Interim Order at ¶¶ 4-5. |
| **Use of Cash Collateral; Entities with Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(l)(B)(i) | The Prepetition Secured Parties. | |
| **Challenge Period** | The Debtors' acknowledgements, stipulations, and releases set forth in Paragraph F of the Interim Order (collectively, the "<u>Stipulations</u>") are final and binding upon the Debtors in all circumstances subject to entry of the Final Order. The Stipulations shall be binding upon | Proposed Interim Order at ¶ 17. |

| | | |
|---|---|---|
| Bankruptcy Rule 4001(c)(1)(B), 4001(c)(1)(B)(viii) | each other party in interest, including, without limitation, a Creditors' Committee, unless a Challenge is commenced by a Creditors' Committee, or any other party with standing, within the Challenge Period and a final, non-appealable order is entered sustaining any such Challenge.<br><br>"Challenge" shall mean an adversary proceeding or contested matter against any of the Prepetition Secured Parties challenging the admissions, stipulations, findings, or releases included in the Stipulations.<br><br>Any Challenge under ¶ 17 of the Interim Order must be commenced by a party in interest, including, but not limited to, any Creditors' Committee, with standing and requisite authority to bring the Challenge by no later than the seventy-fifth (75th) calendar day following the entry of the Interim Order, provided, however, that if a trustee is appointed prior to the expiration of the Challenge Period, such trustee will have until the later of the expiration of the Challenge Period or ten (10) days after appointment (subject to a further order of this Court) to assert a Challenge.<br><br>Upon the next calendar day following the expiration of the Challenge Period and for all purposes, including, without limitation, in these Chapter 11 Cases and any Successor Case, (i) all payments made to or for the benefit of the Prepetition Secured Parties or Agent (whether prior to, on, or after the Petition Date) shall be indefeasible and shall not be subject to counterclaim, offset, recoupment, subordination, recharacterization, defense, recovery, or avoidance; (ii) any and all Challenges not timely filed within the Challenge Period by any party whatsoever shall be deemed to be forever released, waived, and barred; (iii) the Prepetition Obligations shall be deemed to be secured by a valid, binding, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral; (iv) the Prepetition Obligations shall be deemed to be a fully allowed claim; and (v) the Stipulations shall be binding on all parties whatsoever, including, without limitation, any Creditors' Committee and any trustee or trustees appointed in these Chapter 11 Cases or in any Successor Case. | |

## **Relief Requested**

14.    By this motion, the Debtors seek: (i) authority pursuant to sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code for use of the Cash Collateral pursuant to the terms of the Proposed Interim Order; (ii) to grant the Prepetition Secured Parties adequate protection with respect

to their interests in the Prepetition Collateral on the terms set forth in the Proposed Interim Order; and (iii) to modify the automatic stay as set forth in the Proposed Interim Order and waive the fourteen (14) day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h).

15.    Bankruptcy Rule 4001(d) provides that the Court may fix the time within which objections to the approval of an agreement relating to cash collateral and adequate protection pursuant to section 363 of the Bankruptcy Code must be filed.  In addition, the Court is empowered to conduct an expedited preliminary hearing on the motion and authorize the use of the Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.

**Basis For Relief**

**A.    The Debtors' Use of Cash Collateral Is Necessary**

16.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  Further, Bankruptcy Code section 363(e) provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property.  11 U.S.C. § 361.

17.     It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern.  Courts have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild.  Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic failure would be frustrated."  *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

18.     Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value.  *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result.  In effect, a substitution occurs in that the money spent for improvements will be transferred into value.  This value will serve as adequate protection for [the creditor's] secured claim.").

19.     It is essential to the Debtors' reorganization efforts and the preservation of going concern value that it have sufficient funds to continue their construction operations and costs attendant to their restructuring proceeding without interruption.  Absent the use of Cash Collateral, the Debtors will not have sufficient working capital to: (a) make payments to employees, vendors, contractors, or suppliers, (b) satisfy operating costs, and (c) to fund capital expenditures related to the completion of the Project, which, once complete, will dramatically increase not only the value of the Debtors as a going concern, but the value of the assets pledged as collateral to the Prepetition Secured Parties.  The ability to satisfy these expenses when due is essential to avoid both immediate

and irreparable harm to the Debtors' estates and the risk of diminution in value of the pledged collateral.  In the normal course of business, the Debtors use cash on hand to fund working capital and capital expenditures, and to operate and maintain their business and properties.  Absent immediate access, and given the conditions necessary to permit a draw on the Debtors' Proposed DIP Financing facility, the Debtors will not have any unencumbered cash on hand to pay these critical expenses.

20.     The Debtors' use of the Cash Collateral is necessary to maintain and maximize the value of the Debtors' assets during the pendency of this case.  Absent the use of Cash Collateral, the Debtors will be unable to operate their business in a manner necessary to maintain and maximize the value of their assets pending the anticipated restructuring transactions and completion of the Project.  Simply stated, without the use of the Cash Collateral as requested by this Motion, the Debtors will suffer immediate and irreparable harm, their ability to continue work on the Project will cease, the value of the collateral pledged to the Prepetition Secured Parties will diminish, and the value available to all stakeholders will be significantly reduced.

**B.     The Proposed Adequate Protection is Reasonable and Appropriate**

21.     Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor or the level of the secured creditor's collateral is not decreasing over time. *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining).

22.     In *Swedeland*, the Third Circuit noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy."  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see*

*also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for.") (quoting *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993)); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988).

23.    Nevertheless, adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period. *See In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Assoc. & Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).  In cases in which the value of the creditor's property will increase as a result of the Debtors' use of the collateral, however, courts have held that creditors are adequately protected by virtue of that increase, such that no separate adequate protection payments are required. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (holding that where there is "no question that the property [in which the lenders had a security interest] would be improved" by the construction proposed to be financed through the use of the creditors' collateral, the resulting increase in value itself "will serve as adequate protection" for the secured lender's claim).

24.    Here, the Debtors submit that the unique circumstances of their business, in combination with the timing of the Chapter 11 Cases, are such that their use of the Cash Collateral

will cause the value of the Prepetition Secured Parties' total collateral package to increase, rather than decrease, during the pendency of the Chapter 11 Cases.  Because the Debtors are a special purpose entity that has no source of revenue beyond the anticipated revenues that will be generated by the Project, which is slated for completion as soon as the first quarter of 2022, any action the Debtors can take in the coming months toward the imminent completion of the Project, including use of the Cash Collateral for payment of construction costs and wages of employees and contractors, as well as other ordinary course and restructuring expenses, will serve to *increase* the near-term value of the total collateral package that secures their Prepetition Obligations. Because the Debtors' proposed use of the Cash Collateral will in fact avoid diminution in the value of the assets securing the repetition Secured Parties' interests, payment of adequate protection is not required by the Bankruptcy Code and would not accrue to the benefit of the Debtors or any of their stakeholders.

25.     While the Debtors maintain that no adequate protection is required to be paid under the circumstances, the Debtors propose to provide for payment of the fees and expenses of the Prepetition Secured Parties' professionals retained in conjunction with the Chapter 11 Cases, given that it is indisputable that an orderly restructuring of the Debtors' capital structure is critical to the Debtors' ability to continue apace with construction of the Project and begin operating as expeditiously as possible.

26.     The terms and conditions under which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code.  If the Proposed Interim Order is entered, the Debtors will have working capital to operate their business and maximize the value of their assets for the benefit of their stakeholders.  At the same time, the Prepetition Secured Parties will be adequately protected against any possible diminution in the value of their collateral, a possibility that is only likely in a scenario in which the Debtors are unable to

continue construction on the Project uninterrupted during the pendency of the restructuring, in a manner to which they have agreed in exchange for consenting to the Debtors' use of the Cash Collateral. Therefore, the Debtors respectfully submit that the use of Cash Collateral on the terms set forth in the attached Proposed Interim Order provides the Prepetition Secured Parties with adequate protection and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and therefore should be authorized by this Court.

### C.       Interim Relief Should be Granted

27.       Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estates pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990) 115 B.R. at 38. After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g., Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

28.       As set forth above, pending a final hearing regarding the Debtors' ability to use Cash Collateral (the "Final Hearing"), the Debtors require immediate access to Cash Collateral to satisfy the day-to-day needs of their business operations. Access to liquidity will address any concerns regarding the Debtors' financial health and ability to continue operations in light of these Chapter 11 Cases. The Debtors have an immediate need for liquidity to continue construction on the Project,

which necessitates payments to contractors, suppliers, and employees, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest.

**D.      The Automatic Stay Should Be Modified on a Limited Basis**

29.      The relief requested herein contemplates a modification of the automatic stay solely to permit the Prepetition Secured Parties to deliver written notice by electronic mail stating that the Prepetition Secured Parties elect to commence the exercise of rights and remedies on the terms set forth in the Proposed Interim Order including, without limitation, with respect to their Prepetition Collateral. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the circumstances.

## Request For Final Hearing

30.      Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court schedule the Final Hearing.

## Immediate Relief Is Necessary

31.      Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estates pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the petition date requires the debtor to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). As described above, without access to Cash Collateral, the Debtors would be unable to operate their business. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## Waiver Of Any Applicable Stay

32.     The Debtors also request that the Court waive the stay imposed by the Bankruptcy Code, including any stay that may be imposed under Bankruptcy Rules 4001(a)(3) and 6004(h). Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for it to maintain their business without interruption and to preserve and maximize value for their estates.  The Debtors do not believe that such provision is applicable to the Cash Collateral, but to the extent that the automatic stay does apply, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

33.     To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable.

## Reservation Of Rights

34.     Nothing in the Proposed Interim Order, a final order, or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates, (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action against any party in interest, or (iv) shall be construed as a promise to pay a claim.

**Notice**

35.     Notice of the Motion will be given by facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy (Jane.M.Leamy@usdoj.gov); (ii) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (iii) counsel to the administrative agent for the secured loan facility, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, NY 10019, Attn: Christy Rivera (christy.rivera@nortonrosefulbright.com), Andrew Rosenblatt (andrew.rosenblatt@nortonrosefulbright.com); and 799 9th Street NW, Suite 1000, Washington, DC 20001, Attn: Marissa Alcala (marissa.alcala@nortonrosefulbright.com); (iv) counsel to the DIP Lender, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St. #1600, Wilmington, DE, 19801, Attn: Derek C. Abbott (DAbbott@morrisnichols.com), Curtis S. Miller (CMiller@morrisnichols.com), and R. Jason Russell (JRussell@morrisnichols.com); (v) counsel to Strabag, Troutman Pepper Hamilton Sanders LLP, 4000 Town Center, Suite 1800, Southfield, MI 48075, Attn: Robert S. Hertzberg and Deborah Kovsky-Apap, and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE, 19801, Attn: David M. Fournier and Marcy McLaughlin Smith; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).

## **Conclusion**

WHEREFORE, the Debtors respectfully request entry of the Proposed Interim Order, in the form substantially attached hereto as **Exhibit A**, granting the Debtors the relief requested herein, and such other and further relief as is just.

*[Remainder of page intentionally left blank.]*

Dated:  November 17, 2021          YOUNG CONAWAY STARGATT & TAYLOR, LLP
       Wilmington, Delaware

*/s/ Sean T. Greecher* _____
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
S. Alexander Faris (No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:        (302) 571-6600
Fax:              (302) 571-1253
Email:            pmorgan@ycst.com
                  sgreecher@ycst.com
                  afaris@ycst.com

- and -

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper (*pro hac vice* admission pending)
Luke A. Barefoot (*pro hac vice* admission pending)
Jack Massey (*pro hac vice* admission pending)
One Liberty Plaza
New York, New York 10006
Telephone:        (212) 225-2000
Fax:              (212) 225-3999
Email:            rcooper@cgsh.com
                  lbarefoot@cgsh.com
                  jamassey@cgsh.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*

## EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo SpA, *et al.*,[1] | Case No.:  21-11507 (   ) |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, AND 507, AND
BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING DEBTORS
TO USE CASH COLLATERAL AND (II) GRANTING ADEQUATE
PROTECTION TO SECURED LENDERS AND (III) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

This matter is before the Court pursuant to the motion (the "Motion")[2] filed by Alto Maipo

SpA ("Alto Maipo") and Alto Maipo Delaware LLC ("Alto Maipo Delaware"), debtors and

debtors in possession in the above-captioned cases (together, the "Debtors"), pursuant to sections

105, 361, 362, 363, and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

seeking, among other relief, the entry of an interim order (this "Interim Order"):

(i)     authorizing the Debtors to use the Cash Collateral (as defined below) as

contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein

on an interim basis effective as of the Petition Date through the time of the final hearing on the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (•) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]     All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

Motion (the "Final Hearing") unless otherwise terminated pursuant to the terms of this Interim Order;

(ii)    granting and affirming the adequate protection being given to the Prepetition Term Lenders, Swap Counterparties and Strabag (collectively, the "Prepetition Secured Parties") and agent (in its capacity as such, the "Agent") under the Debtor's prepetition secured term loan, swap and Supplier Deferred Payment facilities (collectively, the "Prepetition Secured Loans" or "Prepetition Obligations"), as each of those defined terms are further defined in Motion and further described in the *Declaration of Javier Dib in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"); and

(iii)    modifying the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h); and

(iv)    scheduling the Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(b).

The Court having held a hearing on [[date]] (the "Interim Hearing") to consider the entry of this Interim Order approving the Motion pursuant to Bankruptcy Rule 4001(b)(2), and having found that notice of the Motion and Interim Hearing was provided as authorized by Bankruptcy Rule 4001(c)(2); and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates (the "Estates"), and creditors; and upon the record herein and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    <u>Disposition</u>.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to entry of the Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

B.    <u>Petition Date</u>.   On November 17, 2021 (the "<u>Petition Date</u>"), the Debtors commenced these chapter 11 cases (the "<u>Chapter 11 Cases</u>") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code of the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  The Debtors are operating their business and managing their affairs as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "<u>Creditors' Committee</u>") has been appointed in the Chapter 11 Cases.

C.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue for these Chapter 11 Cases and this Motion under 28 U.S.C. §§ 1408 and 1409.

D.    <u>Notice</u>.  The Interim Hearing was held pursuant to Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2(b).  Notice of the Motion was given by the Debtors on November [[date]], 2021, and notice of the Interim Hearing was given by the Debtors on November [[date]], 2021 (Docket No. [[ ]]).  Notice of the Motion was provided to: (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy (Jane.M.Leamy@usdoj.gov); (ii) the entities listed on the Consolidated List of Creditors

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, and vice versa, pursuant to Bankruptcy Rule 7052.

Holding the 30 Largest Unsecured Claims; (iii) counsel to the administrative agent for the secured loan facility, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, NY 10019, Attn: Christy Rivera (christy.rivera@nortonrosefulbright.com), Andrew Rosenblatt (andrew.rosenblatt@nortonrosefulbright.com); and 799 9th Street NW, Suite 1000, Washington, DC 20001, Attn: Marissa Alcala (marissa.alcala@nortonrosefulbright.com); (iv) counsel to the DIP Lender, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St. #1600, Wilmington, DE, 19801, Attn: Derek C. Abbott (DAbbott@morrisnichols.com), Curtis S. Miller (CMiller@morrisnichols.com), and R. Jason Russell (JRussell@morrisnichols.com); and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002, in each case by telecopy, email, overnight courier, and/or hand delivery and otherwise in accordance with Local Rule 9013(m). Notice of the Interim Hearing and the interim relief requested in the Motion has been provided as authorized by Bankruptcy Rule 4001(c)(2).

E.        Prepetition Liens.  To secure the Prepetition Obligations under the Prepetition Term Loans, Swaps and Supplier Deferred Payment, the Debtors granted the Prepetition Secured Parties valid first priority liens (the "Prepetition Liens") upon and in all of the Debtors' assets, and all proceeds and products of such assets, including the cash held in the Bank Accounts as of the Petition Date.

F.        Acknowledgments and Stipulations. In exchange for and as a material inducement for the Prepetition Secured Parties to agree to the relief sought herein, the Debtors acknowledge, represent, stipulate and agree as follows:

(i)        The Debtors are the borrowers under a series of term loans (the "Prepetition Term Loans"), all of which are secured by pledges of certain assets of the Debtors and rank *pari passu* as between each other.  The Prepetition Lenders include certain international development banks,

local and international commercial banks, and syndicated lenders, including (a) the U.S. International Development Finance Corporation, (b) the Inter-American Development Bank, (c) Banco de Crédito e Inversiones, (d) Itaú Corpbanca SA, (e) DNB ASA, (f) Deutsche Bank AG, (g) UBS Group AG, (h) Moneda Asset Management, (i) Finepoint Capital, (j) Santana Capital Group, (k) Clover Capital, Ltd., and (l) Regera Sàrl.  Certain of these Prepetition Term Loans are also subject to Swaps, held by the Swap Counterparties.  Additionally, Alto Maipo and Strabag SpA ("Strabag") are parties to an Amended and Restated Lump Sum Fixed Price Tunnel Complex Construction Contract, dated as of February 19, 2018 (the "Tunneling Construction Contract"). Pursuant to the Tunneling Construction Contract, among other things Strabag provided to the Alto Maipo, and the Alto Maipo remains obligated to Strabag for, $391.5 million in secured deferred supplier financing (the "Supplier Deferred Payment").

(ii)    The Swaps and the Supplier Deferred Payment are also secured by the Prepetition Collateral and rank *pari passu* with the Prepetition Term Loans.

(iii)   Any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors, or (c) otherwise not subject to any avoidance, offset, recoupment, counterclaim, or defense (including, without limitation, under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code).

(iv)    All of the cash in the Debtors' Bank Accounts as of the Petition Date constitutes Cash Collateral of the Prepetition Secured Parties.

(v)     The Debtors stipulate that in (a) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents, (b) administering the loans and financial

accommodations extended under the Prepetition Loan Documents; (c) extending other financial accommodations to the Debtors under the Prepetition Loan Documents, (d) making the decision to collect upon the indebtedness and obligations of the Debtors, (e) cooperating in the Debtors' efforts toward a reorganization, sale, and/or liquidation, or (g) otherwise engaging in transactions and communications with the Debtors, in each case prior to the entry of the Interim Order, the Prepetition Secured Parties and the Agent shall not by reason thereof be considered to have been or be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law or regulation, including, without limitation, any environmental law, any labor law, or any other statute, regulation, or doctrine.

(vi)    The Prepetition Secured Loans are secured by valid, binding, enforceable, duly perfected and unavoidable security interests in and liens on the Prepetition Collateral, and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual, or otherwise), claims, counterclaims, cross claims, offsets, recoupment, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(vii)    The Debtors have waived, discharged, and released any right they may have to challenge the obligations underlying the Prepetition Secured Loans or the liens on the Prepetition Collateral, or to assert any offsets, recoupment, defenses, claims, objections, challenges, Avoidance Actions (as defined below), causes of action, and/or choses of action against the Prepetition Secured Parties or Agent, with respect to their obligations under the Prepetition Secured Loans, the liens on the Prepetition Collateral, or any other matters arising therefrom or relating thereto.

G.      Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Prepetition Secured Parties or Agent holds a lien, security interest, or other interest, whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise, namely:

(i)      all cash proceeds that constitute collateral under the Prepetition Secured Loans arising from the collection, sale, license, disposition, use, or conversion of any tangible property;

(ii)      all funds generated from equity contribution payments, and other project revenues and energy payments;

(iii)      cash held as of the Petition Date in the Debtors' general operating accounts, disbursement-only accounts, and receipt-only accounts with Itaú Corpbanca S.A. in its New York, New York and Santiago, Chile branches;

(iv)      The Debtors represent and stipulate that all of the Debtors' cash, cash equivalents, deriving from the above-mentioned accounts, constitute Cash Collateral.

H.      Use of Cash Collateral.  The Debtors have an immediate and critical need to use the Cash Collateral to operate their business, complete construction on the Project, and effectuate a reorganization of their business, which will be used in accordance with the terms of this Interim Order and consistent with the DIP Budget.  Without the immediate use of Cash Collateral, the Debtors will not have sufficient liquidity to continue operating their business. The adequate protection provided herein is consistent with and authorized by the Bankruptcy Code and adequately protects the Prepetition Secured Parties' interests in the Prepetition Collateral.  Absent authorization to immediately use Cash Collateral, the Debtors, their Estates, and their creditors would suffer immediate and irreparable harm.

I.    <u>Adequate Protection</u>.  The Prepetition Secured Parties and Agent shall receive, pursuant to sections 361 and 363(e) of the Bankruptcy Code, adequate protection in the form of payment of the Prepetition Secured Parties' professional fees, including (1) reasonable and documented professional fees of each of (i) Norton Rose Fulbright US LLP, (ii) FTI Consulting, Inc., (iii) Asset Chile S.A., (iv) Landis Rath & Cobb LLP, and (v) Carey y Cia Ltda., and (2) $210,000 in respect of professional fees to Troutman Pepper Hamilton Sanders LLP in connection with the Chapter 11 Cases (collectively, the "<u>Professional Fees</u>"), subject to the aggregate budget amounts set forth in the DIP Budget and to reasonableness review as set forth in this Interim Order. The Prepetition Secured Parties and Agent shall also be granted replacement liens on unencumbered collateral acquired or obtained after the Petition Date (if any) other than the proceeds of the DIP Facility.

J.    <u>Good Cause Shown</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(b).  Good cause has been shown for entry of this Interim Order.  The ability of the Debtors to use the Cash Collateral is vital to the Debtors' estates and their creditors.  The use of Cash Collateral will enable the Debtors to increase and maximize the value of the Debtors' business by allowing the Debtors to complete construction of the Project, to satisfy payroll obligations and other working capital, and to satisfy general corporate purposes of the Debtors consistent with the terms set forth in this Interim Order and the provisions included in the DIP Budget (and subject to the Carve Out provisions included therein).  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates and, accordingly, is in the best interests of the Debtors, their estates, and their creditors.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.

2.      <u>Authorization for Use of Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and upon entry of this Interim Order, the Debtors are hereby authorized to use the Cash Collateral in accordance with the terms, conditions, and limitations set forth in this Interim Order, consistent with the DIP Budget (and subject to the Carve Out provisions included therein).

3.      <u>Approved Budget</u>.  Cash Collateral used pursuant to this Interim Order shall be used by the Debtors only in accordance with the DIP Budget (and subject to the Carve Out provisions included therein) and this Interim Order.

4.      <u>Adequate Protection for Prepetition Secured Parties and Agent</u>.  The Debtors have submitted that their intended use of the Cash Collateral to complete construction on the Project and pay related fees and expenses associated with the administration of the Chapter 11 Cases will increase the Debtors' going concern value, and that, because the value of the Debtors' assets will only increase with the Debtors' use of cash collateral, the Prepetition Secured Parties are adequately protected.  The Prepetition Secured Parties reserve the right to contest the Debtors' position with respect to potential diminution in value, and by this Order the Court makes no findings with respect to diminution in value, if any; however, as a compromise and settlement, to

address any potential diminution in value, the Prepetition Secured Parties and Agent are hereby granted the following (which shall be referred to collectively as the "Adequate Protection Rights"):

a.      Adequate Protection Payments.   Pursuant to sections 361(1) and 363(e) of the Bankruptcy Code, the Debtors shall pay, transfer, or otherwise convey to the Prepetition Secured Parties adequate protection payments in the form of all reasonable and documented attorney's fees and expenses and any other professional fees and expenses of the Prepetition Secured Parties incurred before or after the Petition Date in connection with the Prepetition Term Loans or the Supplier Deferred Payment, as provided in this Interim Order.   The Debtors shall pay all such reasonable fees and expenses within ten (10) business days of delivery of a monthly statement or invoice for such fees and expenses (it being understood that such statements or invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such statements or invoices shall not be required to be maintained in any particular format and may be redacted to protect privileged, confidential, or proprietary information, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek the Court's approval of any such payments) to the Debtors, the U.S. Trustee, and the Creditors' Committee (if one is appointed), unless, within such ten (10) business day period, the Debtors, the U.S. Trustee, or the Creditors' Committee (if one is appointed) serve a written objection upon the requesting party, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid.

b.      Adequate Protection Superpriority Claim. As further adequate protection against, and limited to the extent of, any diminution in value, the Prepetition Secured Parties are hereby granted a superpriority claim, which claim shall have priority over all administrative expense

claims and all other unsecured claims against the Debtors or the Estates, now existing or hereafter arising, of any kind or nature whatsoever, to the fullest extent provided for under section 507(b) of the Bankruptcy Code (the "Adequate Protection Claim").

      c.      Replacement Liens.  As further adequate protection against, and limited to the extent of, any diminution in value of the Prepetition Collateral, the Prepetition Secured Parties are hereby granted replacement liens on unencumbered collateral acquired or obtained after the Petition Date (if any) other than the proceeds of the DIP Facility, to the extent that the Court finds that there is any diminution in value (as to which matter all rights and defenses of Prepetition Secured Parties and the Debtor are fully reserved).  For the avoidance of doubt, the Prepetition Secured Parties' existing liens will attach to any proceeds or offspring of the Prepetition Collateral, pursuant to section 552 of the Bankruptcy Code.

      5.      Survival of Adequate Protection Rights. The Adequate Protection Rights shall continue in these Chapter 11 Cases and in any successor case under the Bankruptcy Code (a "Successor Case"), and shall be and remain valid and enforceable (i) against any chapter 11 trustee appointed in the Chapter 11 Cases, (ii) against any chapter 7 trustee appointed in a Successor Case, (iii) against any other representative of the Debtors' estates or any assignee of assets or rights of the Debtors' estates, and (iv) upon any conversion or dismissal of the Chapter 11 Cases or any Successor Case; and all security interests shall maintain their perfected status and respective priority as provided in this Interim Order until the Adequate Protection Claim has been indefeasibly paid in full in cash and satisfied.

      6.      Restrictions on Use of Cash Collateral. Notwithstanding anything to the contrary in this Interim Order, no Prepetition Collateral (including, without limitation, Cash Collateral) may be used to request authorization from the Court to obtain any postpetition loans or other financial

accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code without the consent of

the Prepetition Secured Parties; *provided, however*, that for the avoidance of doubt, the Debtors

may use the Cash Collateral to satisfy the Professional Fees and expenses incurred in connection

with the administration of, and all reporting related to, the DIP Facility; *provided further, however,*

that up to $25,000 of Cash Collateral in the aggregate (the "Committee Expense Cap") may be

used to pay the allowed fees and expenses of counsel retained by the Creditors' Committee, if any,

incurred directly in the investigation (but not the prosecution) of the validity, perfection,

enforceability, and extent of the Prepetition Obligations and Prepetition Liens and any potential

claims of the Debtors' estates against the Prepetition Secured Parties in respect of the Prepetition

Obligations, or any other claims, causes of action, or defenses under chapter 5 of the Bankruptcy

Code or any other claims and causes of action (collectively, the "Claims and Defenses"), provided

that, for the avoidance of doubt, no amounts incurred by the Creditors' Committee in excess of the

Committee Expense Cap shall be allowed under Bankruptcy Code sections 503(b), 330, 331 or

other provisions of the Bankruptcy Code unless such amounts are incurred in connection with the

successful prosecution of a Claim or Defense and, in such case, only to the extent of the benefit

derived for the Debtors' estates from such successful prosecution.

       7.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order

does not create any rights for the benefit of any third party, creditor, equity holder, or any direct,

indirect, or incidental beneficiary.

       8.     Termination; Events of Default. The Debtors' right, and the right of any other

representative of the Estates, to use the Cash Collateral under this Interim Order shall terminate,

automatically and without the need for notice or demand by the Prepetition Secured Parties or any

further order of the Court, on the earliest to occur of the following: (a) forty-five (45) calendar

days after the Petition Date if a final order regarding Cash Collateral has not been entered by such date; (b) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Cases (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (c) the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (d) the dismissal of the Chapter 11 Cases; (e) a determination by the Court that a material violation or breach of any of the provisions of this Interim Order has occurred, (f) any other (i.e. not material) violation or breach by the Debtors of any of the provisions of this Interim Order that is not disputed or cured within five (5) business days of written notice from the Prepetition Secured Parties (either (e) or (f), an "Event of Default"); and (g) the effective date of any plan of reorganization in the Chapter 11 Cases that has been confirmed by an order of the Court. The date on which the earliest of clauses (a) through (g) occurs is referred to as the "Termination Date."  A Termination Date shall also occur upon termination of the restructuring support agreement executed by the Prepetition Secured Parties and the Debtors prior to the Petition Date (the "RSA"), and delivery by the Prepetition Secured Parties of a valid notice of termination of the RSA (the "RSA Termination"), provided that (i) the validity of the  RSA Termination is not disputed by the Debtors, and (ii) the event underlying the alleged RSA Termination is not cured, within five (5) business days of written notice from the Prepetition Secured Parties; *provided, however,* that in the event of an RSA Termination, all rights and defenses of the Debtors and the Prepetition Secured Parties with respect to the Cash Collateral and its use shall be reserved, including the Debtors' right to file a renewed motion seeking leave of court to continue to use the Cash Collateral in the ordinary course, and the Prepetition Secured Parties' right to object or other challenge such use of Cash Collateral and/or seek additional adequate protection.

9.      <u>Remedies and Stay Modification</u>.

a.      The automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed, and are hereby, modified, without the need for further order of the Court, solely to permit the Agent or the Prepetition Secured Parties upon, or at any time after, the occurrence of any Termination Date (including, without limitation, as a result of the occurrence of any Event of Default under this Interim Order) to deliver written notice by electronic mail to counsel for the Debtors, counsel for any Creditors' Committee, counsel for any trustee, and counsel for the U.S. Trustee, stating that the Agent and the Prepetition Secured Parties elect to commence the exercise of rights and remedies in respect of this Interim Order and the Prepetition Loan Documents, and under applicable bankruptcy and non-bankruptcy law (a "<u>Remedies Notice</u>").

b.      Following the fifth (5th) business day following the delivery by the Agent or the Prepetition Secured Parties of a Remedies Notice (the "<u>Remedies Notice Period</u>"), and in the event that the Debtors have not delivered notice of intent to contest the Remedies Notice or cured the alleged Event of Default, the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed, and are hereby, modified, without the need for further order of the Court, to permit the Prepetition Secured Parties and Agent, to exercise all rights and remedies provided for in this Interim Order or in the Prepetition Loan Documents or under applicable bankruptcy or non-bankruptcy law.

c.      Following the expiration of the Remedies Notice Period, and in the event that no the Debtors have not delivered notice of intent to contest the Remedies Notice or cured the alleged Event of Default, the Debtors (or any trustee in the Chapter 11 Case or in a Successor Case) shall cooperate with the Prepetition Secured Parties and Agent in connection with its exercise of rights and remedies by, among other things, (i) providing access to the Prepetition Collateral and the

Debtors' premises to the Prepetition Secured Parties and their representatives and agents, (ii) providing access to the Debtors' books and records to the Prepetition Secured Parties and their representatives and agents, (iii) providing any information or documents reasonably requested by the Prepetition Secured Parties or their representatives or agents, (iv) performing the other obligations of the Debtors in connection with the Prepetition Secured Parties' and Agent's exercise of rights and remedies as required by the Prepetition Loan Documents, and (v) taking reasonable steps to safeguard and protect the assets and property subject to the Prepetition Liens, and (vi) refraining from any interference with (and from any encouragement of others to interfere with) the Prepetition Secured Parties' enforcement of their rights and remedies.

        d.      This Court shall retain jurisdiction to hear and resolve any disputes arising under or related to this Interim Order, including, without limitation, matters relating to the application or continuation of the automatic stay of section 362(a) of the Bankruptcy Code or any other injunctive relief that may be requested in accordance with this Interim Order.

        10.     <u>Limitation on Section 506(c) Claims</u>.  Subject to the entry of a final order regarding Cash Collateral, no costs or expenses of administration that have been or may be incurred in these Chapter 11 Cases or in any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the Prepetition Secured Parties or Agent, or any of their claims, or any assets or property subject to the Prepetition Liens, pursuant to section 506(c) or section 105 of the Bankruptcy Code or otherwise.  Subject to the entry of a final order regarding Cash Collateral, no action, inaction, or acquiescence by the Prepetition Secured Parties or Agent shall be deemed to be, or shall be considered evidence of, any alleged consent to a surcharge against the Prepetition Secured Parties or Agent, any of its claims, or any assets or property subject to the Prepetition Liens.

11.    <u>No Marshaling</u>.  Subject to the entry of a final order regarding Cash Collateral, the Prepetition Secured Parties and Agent shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the assets or property subject to the Prepetition Liens or otherwise.  Without limiting the generality of the foregoing, subject to the entry of a final order regarding Cash Collateral, no party other than the Prepetition Secured Parties or Agent shall be entitled, directly or indirectly, to direct the exercise of rights or remedies or to seek (whether by order of this Court or otherwise) to marshal or otherwise control the enforcement of the Prepetition Liens.

12.    <u>Equities-of-the-Case Waiver</u>.  Subject to the entry of a final order regarding Cash Collateral, the Prepetition Secured Parties and Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against any Prepetition Secured Parties or Agent with respect to any proceeds, product, offspring, or profits of any of the Collateral, or otherwise.

13.    <u>Restrictions on Granting Post-Petition Liens</u>.  Except as otherwise provided in this Interim Order, it shall be an Event of Default if any claim or lien having a priority superior or *pari passu* with those granted by this Interim Order to the Prepetition Secured Parties or Agent is granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Case, while any portion of the Prepetition Obligations are outstanding.

14.    <u>Additional Perfection Measures</u>.

a.    If the Prepetition Secured Parties, in their respective sole and absolute discretion, chooses to take any action to obtain consents from any other party in interest, or to file or record any mortgages, financing statements, notices of lien, or other notices, documents, or instruments,

or to otherwise record or perfect such security interests and liens (in each case subject to the terms and scope of the liens granted to secure the Prepetition Obligations), the Prepetition Secured Parties are hereby authorized, but not directed to, take such action and/or to request that the Debtors take such action on their behalf (and the Debtors are hereby authorized to take such action) and: (i) any such notices, documents, or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and (ii) no defect in any such act shall affect or impair the validity, perfection, and enforceability of the liens granted under this Interim Order.

b.      In lieu of obtaining such consents or filing or recording any such mortgages, financing statements, notices of lien, or similar documents or instruments, the Prepetition Secured Parties may, in their respective sole and absolute discretion, choose to file or record a true and complete copy of this Interim Order in any place in which any such documents or instruments would or could be filed, together with a description of collateral, and such filing by the Prepetition Secured Parties shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien, or similar documents or instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

15.     Application of Collateral Proceeds.  Following the occurrence of any Termination Date (including without limitation, as a result of the occurrence of any Event of Default under this Interim Order) and the expiration of the Remedies Notice Period, and in the event that the Debtors have not delivered notice of intent to contest the Remedies Notice or cured the alleged Event of Default, the Debtors are hereby authorized to remit to the Agent for the benefit of the Prepetition Secured Parties one-hundred percent (100%) of all collections on, and proceeds of, all assets and property subject to the Prepetition Liens, including, without limitation, all Cash Collateral, and the

41

automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified, without the need for further order of the Court, to permit the Agent on behalf of the Prepetition Secured Parties to retain and apply all such collections, proceeds, and Cash Collateral to satisfy or reduce the Prepetition Obligations in accordance with the Prepetition Loan Documents, until the Prepetition Obligations are indefeasibly satisfied in full.  In furtherance of the foregoing, each bank, brokerage firm, and other financial institution with an account of the Debtors are hereby authorized and instructed to comply (without the need for consent of the Debtors or any other representative of the Estates) with any instructions originated by the Agent on behalf of the Prepetition Secured Parties (or their designee) to such bank, brokerage firm, or financial institution directing the disposition of cash, checks, instruments, securities, investment property, or other items deposited by the Debtors (or other representative of the Estates) from time to time, including, without limitation, any instruction to send to the Agent for the benefit of the Prepetition Secured Parties (or their designee) by wire transfer (to such account as the Prepetition Secured Parties (or their designee) shall specify) or in such other manner as the Prepetition Secured Parties (or their designee) shall direct, all cash and other property held for, or owed by it to (or for the credit or benefit of), the Debtors or the Estates.

16.     <u>Delivery of Reports, Pleadings, and Documents</u>.  In addition to all other requirements set forth in this Interim Order, the Debtors shall deliver to the Prepetition Secured Parties all financial reports, budgets, and forecasts delivered by the Debtors to the U.S. Trustee or to any Creditors' Committee, its professionals, or advisors.

17.     <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.

a.     The Debtors' acknowledgements, stipulations, and releases set forth in Paragraph F above (collectively, the "<u>Stipulations</u>") are final and binding upon the Debtors in all

circumstances subject to entry of the Final Order.  The Stipulations shall be binding upon each other party in interest, including, without limitation, a Creditors' Committee, unless, and only to the extent that, a Challenge (defined below) is timely commenced by a Creditors' Committee, or any other party with standing, within the Challenge Period and a final, non-appealable order is entered sustaining any such Challenge.

b.      "Challenge" shall mean an adversary proceeding or contested matter against any of the Prepetition Secured Parties challenging the admissions, stipulations, findings, or releases included in the Stipulations.

c.      Any Challenge under this paragraph must be commenced by a party in interest, including, but not limited to, any Creditors' Committee, with standing and requisite authority to bring the Challenge by no later than the seventy-fifth (75th) calendar day following the entry of the Interim Order, provided, however, that if a trustee is appointed prior to the expiration of the Challenge Period, such trustee will have until the later of the expiration of the Challenge Period or ten (10) days after appointment (subject to a further order of this Court) to assert a Challenge.

d.      Upon the next calendar day following the expiration of the Challenge Period and for all purposes, including, without limitation, in these Chapter 11 Cases and any Successor Case, (i) all payments made to or for the benefit of any Prepetition Secured Parties or Agent (whether prior to, on, or after the Petition Date) shall be indefeasible and shall not be subject to counterclaim, offset, recoupment, subordination, recharacterization, defense, recovery, or avoidance; (ii) any and all Challenges not timely filed within the Challenge Period by any party whatsoever shall be deemed to be forever released, waived, and barred; (iii) the Prepetition Obligations shall be deemed to be secured by a valid, binding, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral; (iv) the Prepetition Obligations shall be deemed to be fully

allowed claims; and (v) the Stipulations shall be binding on all parties whatsoever, including, without limitation, any Creditors' Committee and any trustee or trustees appointed in these Chapter 11 Cases or in any Successor Case.

18. <u>Review of Adequate Protection Professional Fee Payments</u>. The Debtors shall pay all reasonable and documented professional fees in accordance with Paragraph I of this Interim Order within ten (10) business days of delivery of a monthly statement or invoice for such fees and expenses (it being understood that such statements or invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided, however*, that such statements or invoices shall not be required to be maintained in any particular format and may be redacted to protect privileged, confidential, or proprietary information, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek the Court's approval of any such payments) to the Debtors, the U.S. Trustee, and the Creditors' Committee (if one is appointed), unless, within such ten (10) business day period, the Debtors, the U.S. Trustee, or the Creditors' Committee (if one is appointed) serve a written objection upon the requesting party, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid.

19. <u>Binding Nature of Interim Order; Successors and Assigns</u>. It shall be an Event of Default if the rights, remedies, powers, privileges, claims, liens, and priorities of the Prepetition Secured Parties and Agent provided for in this Interim Order or otherwise are modified, altered, eliminated, or impaired in any <u>manner</u> by any subsequent order or judgment (including, without limitation, by any confirmation order or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases, or in any

Successor Case. The provisions of this Interim Order shall be binding upon, and shall inure to the benefit of, the Debtors, the Estates, the Prepetition Secured Parties, the Agent, any Creditors' Committee, and each of their respective successors and assigns, including, without limitation, any trustee appointed under chapter 11 of the Bankruptcy Code, any examiner with expanded powers, any responsible officer, any estate administrator or representative, any liquidation trustee, and any similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code. The provisions of this Interim Order shall also be binding on all of the Debtors' creditors and equity holders, and all other parties in interest.

20.     <u>No Waiver</u>. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to raise any matter or be heard on any matter brought before the Court. Except as expressly provided in this Interim Order, the Prepetition Secured Parties retain and reserve all of their rights and remedies.

21.     <u>Limits on Liability</u>. Nothing in this Interim Order shall in any way be construed or interpreted to impose upon the Prepetition Secured Parties or Agent any liability for any claims arising from any activities by the Debtors in the operation of their business or in connection with their restructuring efforts.

22.     <u>Priority of Terms</u>. In the event of any conflict between (a) any term or provision of the Motion, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

23.     <u>No Third-Party Beneficiary</u>. Except as explicitly set forth herein, no rights are <u>created</u> hereunder for the benefit of any third party, any creditor, any equity holder, or any direct, indirect, or incidental beneficiary.

24.    <u>Survival</u>. Except as otherwise provided herein, or by a further order of this Court after notice to the Prepetition Secured Parties and Agent, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of any order (i) dismissing these Chapter 11 Cases or (ii) converting these Chapter 11 Cases to a case pursuant to chapter 7 of the Bankruptcy Code; and (b) the Adequate Protection Claim shall remain fully effective, binding, enforceable, duly perfected, and non-avoidable in these Chapter 11 Cases, in any Successor Case, or after any such dismissal.  Absent further order of this Court, after notice to the Prepetition Secured Parties and Agent, the Adequate Protection Claim shall maintain its priority as provided in this Interim Order, and shall not be modified, altered, eliminated, or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or by any conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or by dismissal of these Chapter 11 Cases, or by any other act or omission, until all of the Prepetition Obligations and Adequate Protection Claims have been indefeasibly paid in full in cash and completely satisfied.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Interim Order prior to the date of receipt of written notice to the Prepetition Secured Parties and Agent of the effective date of such action or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Interim Order.

25.    <u>Certain Insurance Proceeds</u>.  Notwithstanding anything to the contrary in this Interim Order, any insurance proceeds issued on account of prepetition insurance claims (Claim Nos. 119488886, 118495032, 119448014, 119448021) that Strabag has submitted in its capacity as an "Insured Party" under Debtor's Construction All Risk insurance policy (i) shall be remitted

to Strabag within ten (10) days following receipt of the insurance proceeds by the Debtor or Agent (or any predecessor or successor in interest to Agent), or if already so received by any such party within ten (10) days following entry of this Interim Order, (ii) shall not be subject to the liens granted under this Interim Order or any other order in this case, and (iii) shall not be cash that the Debtor is authorized to use.

26.    <u>Adequate Notice</u>. The notice given by the Debtors of the Interim Hearing was provided as authorized by Bankruptcy Rule 4001(c)(2). The Debtors shall promptly mail copies of this Interim Order to: (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy (Jane.M.Leamy@usdoj.gov); (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (vi) counsel to the administrative agent for the secured loan facility, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, NY 10019, Attn: Christy Rivera (christy.rivera@nortonrosefulbright.com),                Andrew                Rosenblatt (andrew.rosenblatt@nortonrosefulbright.com); and 799 9th Street NW, Suite 1000, Washington, DC 20001, Attn: Marissa Alcala (marissa.alcala@nortonrosefulbright.com); (vii) counsel to the postpetition lender, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St. #1600, Wilmington, DE, 19801, Attn: Derek C. Abbott, Curtis S. Miller, and R. Jason Russell; (viii) counsel to Strabag, Troutman Pepper Hamilton Sanders LLP, 4000 Town Center, Suite 1800, Southfield, MI 48075, Attn: Robert S. Hertzberg and Deborah Kovsky-Apap, and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE, 19801, Attn: David M. Fournier and Marcy McLaughlin Smith; (ix) all other known parties

asserting a lien against any of the Debtors' assets; and (x) any party that has as of the date of this Interim Order requested special notice pursuant to Bankruptcy Rule 2002(i). Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and shall be filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Prevailing Eastern Time) by the following: (a) proposed counsel to the Debtors, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE, 19801, Attn: Pauline K. Morgan (pmorgan@ycst.com), Sean T. Greecher (sgreecher@ycst.com), and S. Alexander Faris (afaris@ycst.com) and (ii) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Richard J. Cooper (rcooper@cgsh.com), Luke A. Barefoot (lbarefoot@cgsh.com) and Jack Massey (jamassey@cgsh.com); (ii) counsel to the administrative agent for the secured loan facility, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, NY 10019, Attn: Christy Rivera (christy.rivera@nortonrosefulbright.com), Andrew Rosenblatt (andrew.rosenblatt@nortonrosefulbright.com) and 799 9th Street NW, Suite 1000, Washington, DC 20001, Attn: Marissa Alcala (marissa.alcala@nortonrosefulbright.com); (iii) counsel to Strabag, Troutman Pepper Hamilton Sanders LLP, 4000 Town Center, Suite 1800, Southfield, MI 48075, Attn: Robert S. Hertzberg and Deborah Kovsky-Apap, and Troutman Pepper Hamilton Sanders LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE, 19801, Attn: David M. Fournier and Marcy McLaughlin Smith; and (iv) if any statutory committee has been appointed in the Chapter 11 Cases, counsel to such committee. The Court shall conduct a Final Hearing on the Motion commencing on [[date]], at [[time]] (Prevailing Eastern Time).

27.     <u>Immediate Binding Effect</u>.  This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6003(b), 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed immediately to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

28.     <u>Proof of Claim</u>. The Prepetition Secured Parties shall not be required to file a proof of claim in the Chapter 11 Cases or in any Successor Case. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of secured claim for the Prepetition Secured Parties upon entry of the Interim Order, and the Prepetition Secured Parties shall be treated under section 502(a) of the Bankruptcy Code as though each had filed a timely proof of claim, notwithstanding any order entered by the Court concerning the establishment of a bar date for the filing of proofs of claim in these Chapter 11 Cases or in any Successor Case. Each of the Prepetition Secured Parties is hereby authorized and entitled, in their sole discretion, but not required, to file a proof of claim in these Chapter 11 Cases or in any Successor Case.

29.     <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.