IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.: 21-11507 (   ) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF ARI LEFKOVITS IN SUPPORT OF DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING POSTPETITION
FINANCING, (II) PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIM STATUS PURSUANT TO 11 U.S.C. §§ 363 AND 364,
(III) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362,
(IV) SCHEDULING A FINAL HEARING AND (V) GRANTING RELATED RELIEF**

I, Ari Lefkovits, hereby declare under penalty of perjury to the best of my knowledge, information, and belief:

1. I am a Managing Director in the Restructuring Group at Lazard Frères & Co. LLC (together with Lazard Chile S.p.A., "Lazard"), the proposed investment banker to Alto Maipo SpA and Alto Maipo Delaware LLC ("Alto Maipo Delaware"), debtors and debtors in possession (together, the "Debtors" or the "Company"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases").[2]

2. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Providing Superpriority Administrative Expense Claim Status Pursuant to 11 U.S.C. §§ 363 and 364, (III) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362, (IV) Scheduling a Final Hearing and (V) Granting*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are: Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (•) (Delaware). The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2] The Debtors anticipate filing an application to retain Lazard as their investment banker substantially simultaneously with the filing hereof.

28821259.1

*Related Relief* (the "DIP Motion"),³ which seeks approval of the Debtors' entry into an unsecured superpriority debtor-in-possession credit facility (the "Proposed DIP Facility") in an aggregate amount of up to $50 million, of which up to $20 million will be available upon entry by the United States Bankruptcy Court for the District of Delaware (the "Court") of an interim order approving the requested postpetition financing, and the balance would be available upon entry of a final order by the Court.

3. Except as otherwise noted, all facts set forth in this Declaration are based on my personal knowledge, my discussions with the Debtors' representatives or advisors, my discussions with employees of Lazard working directly with me or under my supervision or direction, or my review of relevant documents, including the Debtors' books and records maintained in the ordinary course of their business. In making this Declaration, I have relied in part on information and materials that the Debtors' representatives and advisors have gathered, prepared, verified, and provided to me, at my direction, or for my benefit in preparing this Declaration. I am not being compensated for this testimony other than through payments received by Lazard as a professional retained by the Debtors. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

## Background and Qualifications

4. Lazard, along with its predecessors and affiliates, is a preeminent investment banking firm with a global focus that has been advising its clients on how to meet their complex financial needs for more than 170 years. The professionals in Lazard's Restructuring Group have extensive experience not only in restructuring and bankruptcy, but also in a wide range of corporate

---

³ Capitalized terms used in this declaration but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

28821259.1

2

finance transactions across a variety of industries. Lazard's industry knowledge, credit analysis skills, and negotiation experience enable our professionals to provide comprehensive and expert advice to our clients in distressed situations. Over the past decade, Lazard's Restructuring Group has advised on more than 500 restructurings worldwide, with an aggregate value of over $1 trillion.

5. I joined Lazard in 1999 and have more than 20 years of experience in restructurings and reorganizations, mergers and acquisitions, spin-offs, debt and equity financings, joint ventures, and other matters. Specifically, I have advised debtors, creditors, and other parties in interest in multiple bankruptcy cases and have negotiated multiple debtor in possession financings over my career. I received an A.B. in History from Dartmouth College, and a J.D. from Stanford Law School.

### Lazard's Retention

6. The Debtors retained Lazard as of August 2, 2021, to serve as the investment banker for the Debtors in connection with preparing for, negotiating, and implementing a restructuring to be completed either inside or outside of a potential chapter 11 proceeding. In that capacity, Lazard has worked closely with the Debtors' senior management and their other retained professionals with respect to these Chapter 11 Cases, and has become generally familiar with the Debtors' capital structure, liquidity needs, and ordinary business operations. Through this process, it became clear that the Debtors would need to initiate chapter 11 proceedings and obtain debtor-in-possession financing in order to restructure their debts and finance their operations.

### The Debtors' Need for Postpetition Financing

7. Following Lazard's retention, the Debtors, with the assistance of Lazard and other advisors, began a detailed assessment of their capital structure and funding needs. As part of this process, Lazard assisted in evaluating the Debtors' liquidity position and worked with the Debtors

and their other advisors to develop a DIP budget (the "DIP Budget")[4] that accounts for 11 months of the Debtors' projected postpetition cash flow, including operating cash flows, capital expenditures, estimated professional expenses, and other necessary costs of operating in chapter 11. The Debtors are not currently generating revenue and expect revenues to be minimal until they reach a commercial operation date ("COD") to operate their hydroelectric energy project. Consequently, the Debtors are reliant on obtaining additional financing to meet their liquidity needs, including, crucially, the cost of completing construction of the project itself. Facing an impending shortfall in liquidity needs, as well as the costs associated with the Chapter 11 Cases, the Debtors determined that they would require an infusion of capital to finance their operations as they continue to work with advisors and key stakeholders to achieve their goals. Accordingly, debtor-in-possession financing is necessary to ensure sufficient working capital to permit the Debtors to reach COD and begin generating revenue and to enable the Debtors to make timely payment of administrative expenses to be incurred during the Chapter 11 Cases.

### The Debtors' Efforts to Obtain Postpetition Financing

8. Despite the Debtors' need for debtor-in-possession financing, it was concluded that the Debtors would likely face challenges in raising third-party financing because they will have no operating cash flow until COD and have no known material unencumbered collateral. As a result, the Debtors, through Lazard and their other advisors, focused their financing outreach efforts in the first instance on key stakeholders. These key stakeholders should have an incentive to support the Debtors' efforts to reach COD, as the occurrence of COD should significantly increase the enterprise value of the Debtors and thus the value that the Debtors would be able to deliver to their creditors and other parties in interest.

---

[4]  The DIP Budget is attached to the DIP Motion at Exhibit C.

28821259.1

9. Beginning in September 2021, Lazard, on behalf of the Debtors, began discussions regarding terms for potential postpetition financing with AES Andes S.A. ("AES Andes" or the "DIP Lender"), the Debtors' parent entity. Lazard and other of the Debtors' advisors engaged in a series of exchanges with AES Andes and its counsel regarding the terms and conditions of the proposed financing. These negotiations ultimately resulted in the Debtors and AES Andes reaching an agreement in principle on terms for DIP financing in the aggregate amount of up to $50 million.

10. Following these initial negotiations with AES Andes, Lazard shared a proposed DIP Budget and term sheet with the Term Lenders, who, as described more fully in the DIP Motion, collectively hold approximately $1.5 billion in outstanding senior secured loan debt. On October 14, 2021, and on several following occasions, Lazard inquired whether the Term Lenders had interest in offering debtor-in-possession financing to the Debtors, but as of the date of the filing of the DIP Motion, the Term Lenders have not offered a competing proposal for DIP financing to the Debtors.

11. In addition to approaching the Term Lenders, Lazard also contacted fifteen (15) third-party financial institutions and investment funds known to be active in providing debtor-in-possession financing (the "Potential Third-Party Lenders") regarding potential postpetition financing for the Debtors. Lazard offered to provide further financial information about the Debtors and their financing needs to those Potential Third-Party Lenders that executed non-disclosure agreements in connection with the potential financing. One of the Potential Third-Party Lenders executed a non-disclosure agreement. However, neither that party nor any of the other parties contacted provided a financing proposal to the Debtors. The Potential Third-Party Lenders indicated a number of factors influencing their decision to decline the Debtors' financing

opportunity, including the size of the loan, the jurisdiction of the project, the in-construction status of the project, and the lack of available collateral.

### **The Terms of the Proposed DIP Facility Are the Best Available**

12. As the financing terms provided by AES Andes are favorable to the Debtors and no other party submitted a proposal for postpetition financing, the Debtors have elected to move forward with the Proposed DIP Facility offered by AES Andes.

13. The Proposed DIP Facility, as ultimately negotiated with AES Andes, includes an interest rate of 4.0% *per annum*, payable in kind. The Proposed DIP Facility also includes certain fees to the DIP lender, including an Upfront Fee of 1.0% of (i) the portion of the DIP Commitments available upon entry of the Interim Order and (ii) the remaining portion of the DIP Commitments, as well as an Unused Commitment Fee of 0.75% *per annum* on the undrawn portion of the DIP Commitments. Each of these fees is also payable in kind rather than in cash, minimizing cash outlays.

14. The Proposed DIP Facility also contains no maintenance financial covenants or liens on the assets of the Debtors.

15. Based upon a review of recent comparable DIP financing facilities, I believe that the Proposed DIP Facility reflects superior economic terms to the terms obtained by similarly-situated debtors for loans of a similar size and profile. In fact, Lazard's efforts to obtain superior terms from the Potential Third-Party Lenders, all of whom are active in the DIP financing space, revealed that no lender was willing to offer financing, let alone on terms comparable to the terms offered by AES Andes. For these reasons, and because no party other than AES Andes has expressed an interest in providing the Debtors with the necessary postpetition financing, the Debtors determined that the Proposed DIP Facility represents the best financing presently available.

**The Proposed DIP Facility Was Negotiated in Good Faith**

16.     The Debtors, with the assistance of Lazard and their other advisors, have engaged in extensive negotiations with AES Andes regarding the terms of the Proposed DIP Facility, and I believe these negotiations were conducted in good faith.  The Debtors negotiated multiple material terms of the Proposed DIP Facility with AES Andes, including the size and structure of the facility, interest rate and fees, required milestones, and covenants.

17.     The terms obtained by the Debtors through this negotiation process are, based on my experience with similarly-situated companies pursuing similar financing, favorable.  For example, the Debtors were able to procure interest rates and fees that are lower than the prevailing market rates for debtor-in-possession facilities of a similar type and size.

**Approval of the Proposed DIP Facility**

18.     The Proposed DIP Facility is a critical feature of the Debtors' overall restructuring plan.  Without postpetition financing, the Debtors would likely be unable to fund the necessary operating costs to reach COD, without which the recoveries available to the Debtors' creditors would be significantly diminished.  Based on my years of experience as a restructuring professional and an advisor to companies in financial distress, I believe that the Proposed DIP Facility has been adequately market-tested, and I likewise believe that the Proposed DIP Facility is the best (and indeed, only) financing currently available to the Debtors.  Furthermore, based on my involvement in negotiating and marketing the Proposed DIP Facility, I believe that the negotiations with all potential lenders, including AES Andes, the Term Lenders, and the Potential Third-Party Lenders, were conducted in good faith.  In my view, these efforts resulted in a favorable outcome for the Debtors, and one that will address the Debtors' liquidity needs and enable them to pursue their restructuring goals through these Chapter 11 Cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 17, 2021

/s/ Ari Lefkovits
Ari Lefkovits
Managing Director
Lazard Frères & Co. LLC

*Proposed Investment Banker to the Debtors*

28821259.1