## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.: 21-11507 (KBO) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 244 |

**DEBTORS' OBJECTION TO EMERGENCY MOTION OF
OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE
SECTION 105(a) AND BANKRUPTCY RULE 9006 EXTENDING
CHALLENGE PERIOD AND PROVIDING FOR RELATED RELIEF**

Alto Maipo SpA ("Alto Maipo") and Alto Maipo Delaware LLC ("Alto Maipo Delaware"), debtors and debtors in possession (together, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby submit this objection (this "Objection") in response to the Official Committee of Unsecured Creditor's (the "Committee") *Emergency Motion of Official Committee of Unsecured Creditors for Entry of Order Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9006 Extending Challenge Period and Providing for Related Relief* (D.I. 244) (the "Motion"), and respectfully state as follows:

### PRELIMINARY STATEMENT[2]

1.       While incorrectly styled as seeking an *extension*, the Motion in fact requests a lengthy *revival* of the Challenge Period, which expired by the time the Motion was filed, in order

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are: Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]     All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the *Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral; (II) Granting Adequate*

29092961.1

to permit the Committee to examine the validity of the security interests held by the Debtors' prepetition lenders (collectively, the "Prepetition Liens"). As described below, all parties in interest have had ample notice of the nature and extent of the Debtors' prepetition secured obligations, and failed to raise any informal or formal Challenges (as defined below herein) prior to the expiration of the Challenge Period, or even initiate direct communications with the Debtors or their counsel on the topic of the Prepetition Liens until the appointment of the Committee and the present Motion. In the months that have elapsed since the Petition Date, all of the Debtors' creditors, including those that now comprise the Committee, have had ample opportunity to examine the validity of the relevant security interests.

2. The Cash Collateral Orders (as defined below herein), provisions of which are the subject of the Committee's Motion, became final, binding, non-appealable orders of this Court almost a month and a half ago. Therefore, in seeking to set those provisions aside, the Committee must meet the high bar articulated in Rule 60(b) of the Federal Rules of Civil Procedure. The Committee's Motion fails to so much as articulate this governing standard, much less explain how it could be satisfied. Instead, the Committee refers this Court to section 105(a) of the Bankruptcy Code, which does not govern the relief it seeks, as well as to the portion of Bankruptcy Rule 9006(b)(1) relating to unexpired time periods, which similarly does not apply to these facts. The Committee here fails to make any showing that would rise to the level of justifying relief under either Bankruptcy Rule 9006(b)(1) or Rule 60(b), because such facts or circumstances simply do not exist.[3]

---

*Protection; and (III) Modifying the Automatic Stay* (D.I. 12) (the "Cash Collateral Motion"), the Interim Cash Collateral Order (as defined below herein), or the Final Cash Collateral Order (as defined below herein).

[3] While the Committee has no legal basis to request a reopening of the Challenge Period, and has shown no cause for displacing the final, binding, non-appealable orders of this Court, after consultation with the Prepetition

29092961.1

3. Furthermore, promptly after the Committee's appointment, counsel for the Debtors transmitted to the Committee's counsel all documents that were then in their possession relating to the Debtors' prepetition secured financing facilities, including comprehensive opinions of Chilean counsel relating directly to the secured financing facilities and the validity of the liens securing the obligations of Alto Maipo thereunder, as well as the results of recent UCC lien searches conducted by the Debtors with respect to their limited cash assets held in the United States; the Debtors also promptly placed orders with the relevant Chilean authorities to obtain current documentation of the lien certificates relating to the Debtors' noncash assets in Chile. Regardless, while the Committee turned its attention to filing the Motion, it did not do so until the Challenge Period had expired, requesting an excessive and unreasonable Challenge Period of 133 days in total, ending on April 1, 2022. Motion ¶ 14. The Motion gives no indication that the Committee has identified any flaw in the documentation they have received thus far relating to the Prepetition Liens that may form the basis of a Challenge. Indeed, by the date this Court hears the Motion, the Committee will have had more than two weeks in which to undertake their investigation.

4. This requested reopening of the Challenge Period, in addition to being wholly unsupported, is particularly unreasonable in that it jeopardizes the Debtors' ability to pursue prompt confirmation of a plan of reorganization, as the Committee's proposed reopening of the Challenge Period would undo the provisions of the Cash Collateral Orders on which all parties have relied and draw out the Challenge Period well beyond the date by which the Debtors intend to file and obtain approval for a disclosure statement in connection with a proposed plan of

---

Term Lenders, the Debtors nevertheless offered as a compromise, shortly after the Committee was appointed, a short but reasonable period to permit the Committee to undertake the relevant inquiries.

29092961.1

reorganization. This delay would in turn trigger a breach of the milestones set forth in the Debtors' debtor-in-possession financing. While the Committee has not articulated any threshold ground for even considering a revival of the Challenge Period under Rule 60, the Committee has similarly not articulated – and cannot articulate – a legitimate basis for permitting this time-sensitive process to be extended for almost two months, particularly in light of the costs and risks to the Debtors' estates and all parties in interest that such delay would entail. Accordingly, the Debtors respectfully request that this Court deny the Motion.

5. Separately, the Committee appears to take issue more broadly with the Court's orders approving postpetition financing (D.I. 70, D.I. 166 (the "DIP Orders"))—which, in relevant part, prohibit the use of proceeds of the DIP Loans to investigate any agreements between the Debtors and the DIP Lender (as defined in the DIP Orders). Motion ¶ 12. While the Committee's proposed order perplexingly contains no relief relating to the DIP Orders, to the extent that the Motion seeks a modification of this provision, the Debtors submit that such modification is unnecessary and irrelevant, as the Debtors are not aware of any prepetition secured obligations owed to the DIP Lender. The DIP Lender's unsecured prepetition claims, like all unsecured claims against the Debtors, are expected to be released and discharged under the Debtors' contemplated plan of reorganization. Any objection to the DIP Lender's prepetition claims, or the Debtors' treatment of those claims, or an investigation related thereto, should be addressed when and if those claims become relevant to the Debtors' proposed plan of reorganization. Expending limited resources before such time can provide no benefit to the Debtors' estates.

## BACKGROUND

6. On November 17, 2021, the Debtors filed the Cash Collateral Motion. In the Cash Collateral Motion, the Debtors described in detail all of the Debtors' prepetition secured debt

29092961.1

obligations. As set forth in the Cash Collateral Motion, these Prepetition Obligations are secured by the Prepetition Collateral, which includes substantially all of the Debtors' assets as of the Petition Date.

7. On November 19, 2021, this Court entered an interim order approving the Cash Collateral Motion (D.I. 61) (the "<u>Interim Cash Collateral Order</u>"). In the Interim Cash Collateral Order, the Debtors acknowledged and stipulated to the validity of the Prepetition Secured Loans, and further stipulated that those loans are secured by valid, binding, enforceable, duly perfected and unavoidable security interests in and liens on the Prepetition Collateral. Interim Cash Collateral Order ¶ E. The Interim Cash Collateral Order also provided a mechanism through which any party with standing may bring an adversary proceeding against any of the Prepetition Secured Parties challenging the admissions, stipulations, findings, or releases included in the Debtors' stipulations (any such proceeding, a "<u>Challenge</u>"), provided that any Challenge must be commenced by no later than the seventy-fifth (75th) calendar day following the entry of the Interim Order (the "<u>Challenge Period</u>"). Interim Cash Collateral Order ¶ 17(b)–(c). Nothing in these terms was limited to an official committee – the Challenge Period was open "to any other party with standing[.]" Interim Cash Collateral Order ¶ 17(a). Under the formulation in the Interim Cash Collateral Order, the Challenge Period would have expired on February 2, 2022, the seventy-fifth day after November 19, 2021.[4] This seventy-five day Challenge Period meets the requirements of Local Rule 4001-2, which requires a challenge period of "at least seventy-five (75) days from the entry of the initial interim order," applicable to all parties in interest, "including, but not limited

---

[4] The Debtors do not understand the basis for the Committee's assertion that the Challenge Period as set by the Interim Cash Collateral Order expired on February 3, 2022, Motion at ¶ 2, a date which is inconsistent with the plain text of the order.

29092961.1

5

to, any official committee appointed in these cases."[5]  Del. Bankr. L. R. 4001-2(a)(i)(Q).  The Interim Cash Collateral Order provided that, upon the next calendar day following the expiration of the Challenge Period, all Prepetition Obligations were deemed to be secured by a valid, binding, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral.  Interim Cash Collateral Order ¶ 17(d).

8.  On December 17, 2021, this Court entered a final order approving the Cash Collateral Motion (D.I. 164) (the "Final Cash Collateral Order", together with the Interim Cash Collateral Order, the "Cash Collateral Orders").  The Final Cash Collateral Order reiterated the stipulations made by the Debtors in the Interim Cash Collateral Order as to the validity of the Prepetition Secured Loans.  Final Cash Collateral Order ¶ E.  The Final Cash Collateral Order likewise restated the provisions of the Interim Cash Collateral Order regarding Challenges to the Debtors' Stipulations, and provided that the Challenge Period would expire on the forty-fifth (45th) calendar day following the entry of the Final Order.  Final Order ¶ 17(c).  Under this formulation, the Challenge Period would have expired on January 31, 2022.[6]

9.  On January 31, 2022, counsel to the United States Trustee for the District of Delaware (the "U.S. Trustee") filed its *Notice of Appointment of Committee of Unsecured Creditors* (D.I. 231).  On February 1, 2022, the Committee filed a notice of appearance in these Chapter 11 Cases (D.I. 233), and counsel to the Debtors and the Committee held an initial

---

[5] Notably, Local Rule 4001-2 was amended in 2021 to remove a provision that had previously required that any official committee of unsecured creditors, if formed, receive an additional challenge period of sixty days from the date of its formation.  *See* Local Rules Redlined Version of 2020 Local Rules with 2021 Changes, available at https://www.deb.uscourts.gov/ sites/default/files/3%20%20Redline%20Copy.pdf.

[6] Under either the Interim Cash Collateral Order or the Final Cash Collateral Order, the Challenge Period had expired as of the date of the Motion, which was filed on February 3, 2022.  Accordingly, the mountain that the Motion makes of the proverbial molehill between an expiration date of January 31, 2022 (under the Final Cash Collateral Order) and February 2, 2022 (under the Interim Cash Collateral Order) does nothing to advance the Committee's arguments.

telephonic meeting. At this meeting, counsel to the Committee raised the possibility of extending the Challenge Period. Counsel to the Debtors asked the Committee's counsel to specify the length of the requested time period. Following this initial meeting, on February 2, 2022, the Committee's counsel contacted the Debtors' counsel in writing to request the creation of a new Challenge Period deadline of April 2, 2022, which would be 136 days after the Petition Date. After that meeting, counsel for the Debtors provided more than a dozen documents relating to the prepetition financing agreements, as well as several opinion letters from Claro & Cía (Chilean counsel to the Debtors on such transactions) corroborating the validity of the liens.

10. On February 3, 2022, the Committee filed the Motion, seeking a reopening of the Challenge Period until April 1, 2022.

## ARGUMENT

**A.  The Committee Has Failed to Show Adequate Cause to Reopen the Challenge Period.**

> i. *The Committee Has Failed to Articulate the Correct Standard for Relief, and Has Failed to Meet the Standard of Either Rule 60(b) or Bankruptcy Rule 9006(b).*

11. Although disguised as a motion to extend the Challenge Period, the Committee's motion actually seeks relief from the final and non-appealable Cash Collateral Orders, under which the Challenge Period had run. To succeed, the Committee must demonstrate a basis for relief under Rule 60(b) of the Federal Rules (made applicable by Bankruptcy Rule 9024). However, the Committee has failed to do so.

12. The Cash Collateral Orders provide that, on the next calendar day following the expiration of the Challenge Period, all Prepetition Obligations are deemed to be secured by a valid, binding, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral. Interim Cash Collateral Order ¶ 17(d); Final Cash Collateral Order ¶ 17(d). These orders became final and non-appealable almost a month and a half ago. Contrary to the

29092961.1

Committee's assertions, section 105(a) of the Bankruptcy Code cannot be used to alter the requirements imposed by Rule 60(b).  *See, e.g.*, *In re Frank Montique, Inc.*, No. 97-12086F, 2003 Bankr. LEXIS 2357 at *23 (Bankr. E.D. Pa. Jan. 21, 2003) ("[T]he bankruptcy court's inherent power to reconsider orders has been merged into the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.  Accordingly, final orders may be set aside only under FRCP 60(b) applicable via Rule 9024; the bankruptcy court may not use its inherent power [under section 105(a)] to circumvent the limitations of those rules.") (citing *In re Reinertson*, 241 B.R. 451, 456 (9th Cir. B.A.P. 1999)).

13. In lieu of addressing the applicable standard of Rule 60(b), the Committee also relies upon Bankruptcy Rule 9006(b) to argue that this Court "may extend unexpired time periods, such as the Challenge Period, without notice."  Motion ¶ 21.  As explained in Paragraph 7 above, the Challenge Period is not, in fact, unexpired, but instead ended – even under the Committee's theory – no later than February 2, 2022.[7] The Committee's citation to Bankruptcy Rule 9006(b)(1) excerpts only the language from that rule that applies "if the request [for enlargement of a court-ordered time period] is made before the expiration of the period originally prescribed or as extended by a previous order," which plainly does not pertain here.  Fed. R. Bankr. P. 9006(b)(1); *see also* Feb. 21, 2017 Hr'g Tr. at 27:7–11; 35:7–15, *In re Paragon Offshore PLC*, No. 16-10386 (CSS) (Bankr. D. Del. Feb. 14, 2016) (denying request by official committee of unsecured creditors to reopen an expired challenge period) ("[T]he plain meaning of 'extension' doesn't mean do-over, it doesn't mean resuscitation, it doesn't mean revival. It means to make longer a period

---

[7] While the Committee's Motion asserts that the Challenge Period ran through February 3, 2022 (Motion ¶ 2), there is no support for this position.  Even adopting the Committee's curious assumption that the Interim Order, rather than the Final Order governs, the Interim Order set a period of seventy-five days from November 19, 2021.  Such seventy-five day period expired on February 2, 2022, not February 3.

of time that still is in existence."). The portion of Bankruptcy Rule 9006(b)(1) that the Committee does *not* quote provides that a court may enlarge a time period in which parties may take a given action after its expiration "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The Committee has made no showing that would satisfy this standard.

14.   The Committee has not only failed to address the correct governing standard in its Motion, but the basis for relief it has articulated fails to meet the standard of either Bankruptcy Rule 9006(b) or Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) requires that, in order to set aside a final order of this Court, the Committee must show "mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud, [ . . . ] misrepresentation, or misconduct by an opposing party; the judgment is void; the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or any other reason that justifies relief." Fed. R. Civ. P. 60(b). Under the Third Circuit's precedent, the "excusable neglect" standard of Rule 60(b) is identical to that of Bankruptcy Rule 9006(b). *See Hart v. Oppman*, 765 Fed. Appx. 644, 647 (3d Cir. 2019).

15.   The sole basis for relief advanced by the Committee in its Motion is that the Committee was not appointed until January 31, 2022. Although the Committee was not formally created until January 31, the recent changes to this Court's local rules dispel any notion that the appointment of a Committee itself merits some automatic revival of the Challenge Period. *See* Local Rules Redlined Version of 2020 Local Rules with 2021 Changes, available at https://www.deb.uscourts.gov/_sites/default/files/3%20%20Redline%20Copy.pdf (removing the requirement under Local Rule 4001-2 to provide an additional challenge period to any official

29092961.1

committee of unsecured creditors of sixty days from such committee's formation). Moreover, the Committee's constituent members have had more than adequate notice of the Challenge Period, rendering any claim of surprise or excusable neglect woefully deficient. As the Third Circuit Court of Appeals and the Supreme Court have noted, a determination of "excusable neglect" under either Bankruptcy Rule 9006(b) or Rule 60(b) is an equitable one, taking into account all relevant circumstances, including "(1) the danger of prejudice; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith." *Hart*, 765 Fed. Appx. at 647 (citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Here, the substantial delay in proceedings requested by the Committee, the significant prejudice to the Debtors, and the ample notice of the Challenge Period provided to all creditors in these Chapter 11 Cases weigh heavily against a finding of excusable neglect. This is particularly the case where the prospect of the appointment of a Committee was known to the U.S. Trustee, the Court, and all parties in interest at the time that the Cash Collateral Orders were entered. While the precise timing of the Committee's appointment is a new fact, the prospect that an official committee could have been appointed well after entry of the Cash Collateral Orders is not.

16.     Furthermore, the Committee's reliance on the *Outer Harbor Terminal* case serves only to support the Debtors' position. Although the Committee relies on *Outer Harbor Terminal* for the proposition that agreed or negotiated forms of order should be interpreted through the lens of contract interpretation (Motion ¶ 21), *Outer Harbor Terminal* denied precisely the relief sought by the Committee's Motion. In *Outer Harbor Terminal*, as here, an official committee of unsecured creditors was formed well after the petition date, and, once appointed, sought to reopen an expired challenge period relating to certain claims against the debtor-in-possession lender. The

Court concluded that the relevant challenge period had clearly expired, and declined to reopen that period, stating: "While it may be unfortunate that the Committee was not appointed earlier, I cannot use that circumstance to re-open an expired period. Lenders are entitled to rely on the finality of orders. The Office of the United States Trustee ensured that parties in interest had an opportunity to challenge the released claims. No party-in-interest did so within the allotted time. Accordingly, I will deny the Committee's motion to enlarge the challenge period as the motion was filed after that period had expired." *In re Outer Harbor Terminal LLC*, No. 16-10283, 2017 Bankr. LEXIS 1263, at *18 (Bankr. D. Del. May 5, 2017). Thus, *Outer Harbor Terminal* supports the Debtors' position that the Challenge Period has expired and the relief requested by the Committee in its Motion is inappropriate.

17. The Committee cites no precedent supporting its request to reopen the Challenge Period after that period has already expired—and indeed, the Debtors have not identified any prior examples of a bankruptcy court granting similar relief. Instead, several courts have specifically denied requests to reopen a challenge period after it has already expired. *See Outer Harbor Terminal*, 2017 Bankr. LEXIS 1263, at *18; *cf. In re Jevic Holding Corp.*, No. 08-11006 (BLS), 2021 Bankr. LEXIS 1203, at *17 (Bankr. D. Del. May 5, 2021) ("Once the 75-day Interested Party Investigation Period passed, a party in interest's right to challenge the Prepetition Indebtedness ended, including any right of a Chapter 7 Trustee appointed during that period.").

        ii.    *The Scrivener's Error in the Challenge Period Provisions Does Not Create Any Ambiguity as to the Existence (and Length) of the Challenge Period.*

18. The Committee identifies a scrivener's error in the Challenge Period provisions of each Cash Collateral Order, which identify the Stipulations at issue as being contained in Paragraph F of each order, rather than Paragraph E (which is entitled "Acknowledgments and Stipulations"). As a result of this typographical error, the Committee asserts, "it appears that the

Prepetition Liens are free to be challenged at any time." Motion ¶ 11. On the contrary, Paragraph 17(d) of each Cash Collateral Order explicitly provides that on the day following the expiration of the Challenge Period, "the Prepetition Obligations shall be deemed to be secured by a valid, binding, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral." Interim Cash Collateral Order ¶ 17(d). Regardless, the Committee's reliance on the plain typographical error in each of the Cash Collateral Orders is misplaced. *See, e.g.*, *In re Prithvi Catalytic, Inc.*, 580 B.R. 652, 658 (Bankr. W.D. Pa. 2017) (holding that creditor could not rely upon scrivener's error in plan documents where creditor had reason to know provision was an error). The typographical error does not create any genuine ambiguity as to the length or purpose of the Challenge Period, and does not change the fact that the Committee's members and counsel have had ample notice of the Challenge Period. Indeed, the entire premise of the Motion makes clear that the Committee itself does not believe that a mistaken cross-reference in the Cash Collateral Orders eviscerates the existence of the Challenge Period, and the Committee's proposed order seeks no finding or determination to that effect.

        iii.    *In Any Event, the Requested April 1st Date Is Unreasonable.*

19. In addition to the fact that the Committee has shown no cause whatsoever for its requested reopening of the Challenge Period, to the extent that the Court were to nonetheless find that the Committee made the requisite showing under Rule 60(b) for any relief, a revival of the Challenge Period through April 1, 2022 is plainly excessive, and would place significant strain on the Debtors' efforts to emerge from chapter 11 expeditiously. The Debtors have been working diligently since the Petition Date with the Prepetition Term Lenders to negotiate and document a series of restructuring transactions consistent with the Restructuring Support Agreement ("RSA") that was agreed prior to the Petition Date. Certain unforeseen circumstances have led to some revisions of the terms of the RSA and the transactions it contemplates, and to the execution of a

second amendment to the RSA by more than two-thirds of the Debtors' secured lenders.[8]  The Debtors expect to file a motion seeking this Court's authority to assume the RSA, as amended, shortly, and to seek approval of a disclosure statement by the end of February, if not sooner.  Thus, if the Court were to grant the Motion, the Debtors' ability to meet certain postpetition financing milestones would be jeopardized.

            iv.    *Any Relief Related to the DIP Orders Is Currently Unnecessary.*

20. Finally, the Motion appears to take issue with certain provisions of the DIP Orders providing that "neither the Carve Out nor any proceeds of any DIP Loans shall be used to . . . object to . . . investigate, initiate, assert or prosecute any claims, defense or cause of action relating to . . . any of the agreements between any of the Debtors . . . and their affiliates . . . ." Motion ¶ 12. While the Committee's proposed order does not contain any relief relating to the DIP Orders, to the extent that the Committee seeks a modification of the DIP Orders, the Committee has failed to show why such a modification would be necessary in light of the anticipated release of all prepetition unsecured claims, including those of the DIP Lender, pursuant to the terms of the RSA. If the prepetition unsecured claims of the DIP Lender do ultimately become relevant to the Debtors' proposed plan of reorganization, the Debtors would not object to the Committee's consideration of this issue at a later date.  However, given that the RSA contemplates that these claims will be released, it would be a waste of estate resources to address these claims now.

**B.    The Challenge Period Is Not Exclusive to the Committee.**

21. Contrary to the Committee's assertion that, "[u]ntil its appointment, there was no party in interest capable or charged with the responsibility to conduct an investigation of the

---

[8] The current RSA extension provides only for an extension of the milestone requiring a motion to assume the RSA until February 16, 2022. The Debtors' DIP milestones (including the requirement to file an acceptable plan no later than February 17, 2022), remain in effect.

29092961.1

13

Prepetition Liens," (Motion ¶ 19), the provisions in the Cash Collateral Orders authorizing a Challenge to the Debtors' Stipulations as to the Prepetition Obligations permit the commencement of a Challenge by any party in interest with standing to bring such an action. The availability of this recourse is not exclusive to the Committee. Therefore, while the Committee was not formally appointed until January 31, 2022, any of the Debtors' creditors could have (and perhaps have) taken steps toward verifying the validity of the Prepetition Liens since receiving notice of the Debtors' Stipulations and of the Challenge Period since November 19, 2021, the date of entry of the Interim Cash Collateral Order. All parties in interest also had ample opportunity to object to the length of the Challenge Period in advance of the entry of the Final Cash Collateral Order, and no formal or informal objections to the final relief requested in the Cash Collateral Motion were filed or raised.

22.  Furthermore, the constituent members of the Committee have been aware of the proceedings in these Chapter 11 Cases since December 16, 2021 at the latest.[9] The Committee's counsel includes sophisticated, experienced U.S. bankruptcy practitioners as well as attorneys who are both qualified and based in Chile.[10] The Committee has advanced no reason to explain why the existing Challenge Period was insufficient to allow the Committee's members to familiarize themselves with the Debtors' Prepetition Obligations. The Debtors have provided the Committee with all relevant documentation presently in the Debtors' possession and have formally requested current versions of the registrations evidencing perfection of the secured interests from the relevant

---

[9]  Two members of the Committee, Parque Arenas SpA and Compañia Industrial El Volcan S.A., submitted indications of interest in becoming members of an official committee of unsecured creditors to counsel for the U.S. Trustee on or about December 16, 2021. The third member of the Committee, Comunidad de Aguas Canal El Manzano, which did not submit its indication of interest until January, was aware of the Chapter 11 Cases no later than December 3, 2021.

[10] Additionally, the Committee's counsel was listed as the notice party for one of the Committee members in the Debtors' schedules of assets and liabilities (D.I. 175 p. 54), suggesting that the Committee's counsel has had ample time to become familiar with the facts of these Chapter 11 Cases, including the Challenge Period.

29092961.1

Chilean government offices. The Debtors have provided the registrations that they have received to date and will provide the remainder promptly upon receipt, relieving the Committee of any need to collect documents or make public records inquiries, which will take longer to process. The Debtors are not aware of any additional documentation that would be relevant to the Committee's review, nor has the Committee pointed to any documentation that may be difficult to obtain. The liens in question exist only under New York and Chilean law, such that an extensive lien search in multiple states or jurisdictions, which a committee may be required to undertake under other circumstances, is not necessary or relevant in this case. Furthermore, under Chilean law, there is no need to make periodic filings to maintain perfection of a lien, significantly reducing the volume of documentation that the Committee would need to review in order to determine the liens' validity. The Committee has not provided any explanation for the necessity of such a lengthy period to review the documentation that has already been provided to it, nor has the Committee identified any further action it intends to take that would require almost two months to complete.

## CONCLUSION

23.     The Committee has failed to show cause for its requested reopening of the Challenge Period until a date that is 133 days from the initial establishment of that period. For the reasons stated herein, the Objection should be sustained and the Motion should be denied.

*[Remainder of this page intentionally left blank]*

Dated: February 11, 2022
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sean T. Greecher*
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
S. Alexander Faris (No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Fax: (302) 571-1253
Email: pmorgan@ycst.com
sgreecher@ycst.com
afaris@ycst.com

- and -

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper (admitted *pro hac vice*)
Luke A. Barefoot (admitted *pro hac vice*)
Jack Massey (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
Email: rcooper@cgsh.com
lbarefoot@cgsh.com
jamassey@cgsh.com

*Counsel for the Debtors and Debtors-in-Possession*