## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Alto Maipo Delaware LLC, *et al.*,[1]<br><br><br>Debtors. | Chapter 11<br><br>Case No. 21-11507 (KBO)<br><br>(Jointly Administered)<br><br>**Ref: Docket No. 301** |

### DEBTORS' OBJECTION TO EMERGENCY
### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
### CREDITORS FOR ENTRY OF AN ORDER, PURSUANT TO FEDERAL
### BANKRUPTCY RULE 2004, DIRECTING THE PRODUCTION OF DOCUMENTS

Alto Maipo SpA ("Alto Maipo") and Alto Maipo Delaware LLC ("Alto Maipo Delaware"),

debtors and debtors in possession (together, the "Debtors") in the above-captioned cases (the

"Chapter 11 Cases") hereby submit this objection (this "Objection") in response to the *Emergency*

*Motion of the Official Committee of Unsecured Creditors for Entry of an Order, Pursuant to*

*Federal Bankruptcy Rule 2004, Directing the Production of Documents* [D.I. 301] (the "Motion")

and respectfully state as follows:

### PRELIMINARY STATEMENT

1.      The Official Committee of Unsecured Creditors (the "Committee") seeks, pursuant

to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), an order of

the Bankruptcy Court for the District of Delaware (the "Court") compelling the Debtors to produce

a copy of that certain power purchase agreement (the "PPA") between Alto Maipo and Minera Los

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

Pelambres S.A. ("<u>MLP</u>" and together with Alto Maipo, the "<u>Parties</u>") and a vaguely-defined universe of ostensibly related documents.

2.      The PPA contains highly sensitive commercial information, which, if made public, could compromise the Debtors' leverage and positions in selling power in the future.  Similar competitive concerns apply to MLP.  Because of its commercially sensitive nature, the PPA contains strict confidentiality provisions: Pursuant to Section 17 of the PPA, the Parties are obligated to keep the terms of the PPA confidential and to oppose any attempt to make such terms public, including through a court order.

3.      As previously disclosed in the Debtors' first day motion papers, the PPA is one of the Debtors' most critical assets, and the Debtors therefore have a demonstrable interest, for the benefit of all creditors, in avoiding claims of defaults under the PPA.  Prior to the Committee's filing of the Motion, the Debtors sought consent of MLP to provide the PPA to the Committee's professionals, which consent MLP declined to give.  As such, and in accordance with the requirements set forth in Section 17 of the PPA to protect the commercially sensitive information contained therein, the Debtors object to the Motion.

4.      Understanding, however, the fiduciary role of the Committee and its interest in reviewing the PPA, should the Court grant the Motion, at minimum certain clarifications are required.  Beyond its request for production of the PPA, the Motion also seeks an order from the Court compelling production of additional, purportedly related documents.  Specifically, the Committee seeks other documents regarding "the sale of the electric energy and capacity" produced by the Debtors' hydroelectric energy project (the "<u>Project</u>"), and "the Debtors' current (and future) business plan that incorporates components of the PPA."  Motion ¶ 14.  To the extent these are intended only to cover information that would otherwise reference or incorporate the

29144829.1

terms and economics of the PPA, and should the Court determine to grant the Motion, that should be clarified in the form of the order.

5.      In addition, if the Court determines to grant the Motion, the Court should reject the suggestion in the Committee's Motion that the PPA does not implicate competitive information covered by section 107(b) of title 11 of the United States Code (the "Bankruptcy Code").  To the contrary, as noted above, the PPA contains highly sensitive competitive information.  *See* Declaration of Javier Dib, attached hereto as **Exhibit A** (the "Dib Declaration").  Should the Court decide to grant the Committee's Motion with respect to the PPA, the Debtors urge the Court to limit access to the PPA and any subsidiary documents produced as a result of the Motion to a professionals'-eyes-only review.  Given the commercially sensitive nature of the PPA, it would be damaging to the Debtors for the PPA to be made available to any commercial party, including the Committee's members.  Limiting access to the PPA and any related documents to the Committee's professionals would allow for sufficient review of the documents in accordance with the Committee's fiduciary role, but would also offer some protection regarding the sensitive information contained in the PPA.

## BACKGROUND

6.      On June 28, 2013, Alto Maipo entered into the PPA with Antofagasta Minerals S.A, which was subsequently assigned by novation to MLP, the current counterparty to the PPA.  Dib Declaration ¶ 2. Under the terms of the PPA, Alto Maipo is obligated to sell, and MLP is obligated to purchase, a certain amount of electric energy produced by the Project at a price to be calculated in accordance with the terms of the PPA.  *Id.*

7.      The PPA contains significant commercially sensitive information, and accordingly Section 17 requires the Parties to keep the terms of the agreement confidential except under certain

circumstances, including when compelled by order of a court.  Dib Declaration ¶ 3.  The PPA also requires the Parties to oppose any motion, such as the Committee's Motion, seeking a court order that would require sharing the PPA publicly.  Dib Declaration ¶ 4.

8.  Prior to filing the Motion, the Committee requested a voluntary production of the PPA from the Debtors.  In response to the Committee's request, the Debtors' counsel at Cleary Gottlieb Steen & Hamilton LLP contacted MLP's counsel at Sullivan & Cromwell LLP to request MLP's consent to voluntarily share a copy of the PPA with the Committee; MLP's counsel declined this request.

9.  In addition to its request for voluntary production of the PPA, the Committee has submitted several hundred requests to the Debtors for other documents.  The Debtors have, through their advisors, diligently responded to these requests and continue to do so on a rolling basis.

10.  On February 24, 2022, the Committee filed the Motion pursuant to Bankruptcy Rule 2004 seeking an order from the Court compelling the Debtors to produce a copy of the PPA and "any other documents or agreements respecting (i) the sale of the electric energy and capacity produced by the Project, including any renewable energy or environmental attributes, and (ii) the Debtors' current (and future) business plan that incorporates components of the PPA."  Motion ¶ 14.

## ARGUMENT

### I.    The Debtors oppose the Committee's request to compel production of the PPA.

11.  The Debtors are required by the terms of Section 17 of the PPA to keep confidential the terms and information contained in the PPA, and to oppose any attempts to require disclosure

of such information, including by order of a court.  In accordance with their obligations under Section 17 of the PPA, the Debtors object to the Motion.

**II.    Should the Court compel production of the PPA, access should be limited to the Committee's professionals only.**

12.    Although the Debtors object to the Motion in accordance with the requirements of the PPA, the Debtors will of course accept the Court's ruling on whether it is appropriate to order this commercially sensitive document to be shared with the Committee in connection with the Committee's fiduciary role in the Chapter 11 Cases.  Should the Court decide to grant the Committee's Motion, however, access to the PPA should be limited to the Committee's professionals in order to protect the sensitive commercial information contained therein.

13.    The PPA contains highly sensitive commercial information regarding both the Debtors' and MLP's businesses and the terms negotiated by the Parties, access to which by third parties would be detrimental to the Debtors.  The PPA contains highly negotiated terms under which Alto Maipo will sell energy generated by the Project to MLP; making public these terms would place the Debtors at a competitive disadvantage, as it would impede the Debtors' ability to negotiate future contracts for the sale of energy generated by the Project, which, after the Project reaches commercial operation, will be the Debtors' sole revenue driver.  As such, compelling production of the PPA has the potential to be highly damaging to the Debtors, and the Debtors reject the Committee's suggestion that the provisions of section 107(b) of the Bankruptcy Code on competitive information are not implicated.  Motion at ¶ 19.

14.    If the Court enters an order compelling production of the PPA, the Debtors request that the Court include in its order a provision requiring that review of PPA and related documents be reviewed on a professionals'-eyes-only basis and specifying that the Committee may not disseminate copies of the PPA or confidential information contained therein to its members or

anyone else outside of the Committee's circle of retained professionals, and must seek to maintain the PPA and confidential information contained therein under seal in connection with any filings in this Court or others.

15.    Although the Committee agrees to remain bound by the confidentiality provisions in the Committee's bylaws, these provisions are not sufficient to provide the level of protection that is called for in the case of the PPA, given that they allow for confidential information to be shared with and between the Committee's members.  Motion ¶ 20; *see also* Article VII of the By-Laws of the Official Unsecured Creditors' Committee, attached to the Motion as Exhibit B [D.I. 301-2].  The Debtors understand that the Committee believes it needs to examine the PPA to discharge its duties to its clients; a full and satisfactory review, however, can be conducted by the Committee's professionals without making the PPA broadly available to the Committee's members.

**III.    The Committee's requests as to documents other than the PPA require clarification.**

16.    In addition to the PPA, the Committee asks the Court to compel production of documents related to "the sale of the electric energy and capacity produced by" the Debtors' Project and "the Debtors' current (and future) business plan that incorporates components of the PPA."  Motion ¶ 14.  The Committee's requests as to these secondary documents are too vague for the Debtors to respond to directly, and make little sense in the context of the Committee's broader process for requesting documents from the Debtors.  As mentioned, the Committee has submitted hundreds of requests for documents, to which the Debtors have been responding cooperatively.  It is not clear from the Motion which, of the huge volume of requested documents,

the Committee thinks the Debtors have neglected or refused to produce such that it needs an order of the Court compelling such production.

17.     The Committee has also failed to show good cause for examination of these secondary documents.  *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (D. Del. 2016) ("The party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.").  Although the Committee claims that it needs to examine the PPA because it is the most important asset of the Debtors, the Committee does not explain why this supports its request to review documents beyond and potentially unrelated to the PPA.  Motion ¶ 18.

18.     To the extent that these secondary requests are intended only to cover documents or information that would otherwise reference or incorporate the terms and economics of the PPA and which the Debtors would otherwise be unable to produce per the confidentiality provisions contained in the PPA, that is not clear from the Motion.  Should the Court determine to grant the Motion, the Debtors respectfully ask that the Court clarify this point in its order, and to provide for a similar professionals'-eyes-only limitation to the production of any documents or information that reference or incorporate the terms and economics of the PPA.

## **CONCLUSION**

19.     For the reasons set forth above, the Debtors respectfully request that the Court deny the Committee's Motion seeking an order from the Court compelling the Debtors to produce the PPA and other related documents.  Should the Court grant the Committee's Motion as to the PPA, however, the Debtors respectfully request that the Court limit access to the PPA to the Committee's professionals to protect the commercially sensitive material contained therein.

29144829.1

WHEREFORE, the Debtors respectfully request that the Court reject the Committee's Motion and grant such other and further relief as the Court may deem just and proper.

Dated: March 3, 2022
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sean T. Greecher*

Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
S. Alexander Faris (No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Fax:   (302) 571-1253
Email:   pmorgan@ycst.com
      sgreecher@ycst.com
      afaris@ycst.com

- and -

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper (admitted *pro hac vice*)
Luke A. Barefoot (admitted *pro hac vice*)
Jack Massey (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:   (212) 225-2000
Fax:   (212) 225-3999
Email:   rcooper@cgsh.com
      lbarefoot@cgsh.com
      jamassey@cgsh.com

*Counsel for the Debtors and Debtors-in-Possession*

29144829.1

**EXHIBIT A**

**Declaration of Javier Dib**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No. 21-11507 (KBO) |
| | (Jointly Administered) |
| Debtors. | |

## <u>DECLARATION OF JAVIER DIB</u>

I, Javier Dib, hereby declare under penalty of perjury:

1.      I am the Board President and Chief Restructuring Officer ("<u>CRO</u>") of Alto Maipo.[2]

In my capacity as Board President and CRO of Alto Maipo, I am familiar with the Debtors'

operations and business affairs.  I am also personally familiar with the PPA.

2.      Alto Maipo entered into the PPA with Antofagasta Minerals S.A on June 28, 2013.

The PPA was subsequently assigned by novation to MLP, who is the current counterparty to the

PPA.  Under the terms of the PPA, Alto Maipo is obligated to sell, and MLP obligated to purchase,

a certain amount of electric energy produced by the Project at a rate to be calculated in accordance

with the terms of the PPA.

3.      The PPA contains highly sensitive commercial information, such as pricing, which

would cause significant harm the Debtors if made available to third parties.  Making the terms of

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]      Capitalized terms used herein and not defined shall have the meaning ascribed to them in the *Debtors' Objection to the Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order, Pursuant to Federal Bankruptcy Rule 2004, Directing the Production of Documents*.

the PPA available to competitors could compromise the Debtors' leverage in negotiating future contracts for the sale of energy.

4.      Section 17 of the PPA requires the Parties to keep the terms of the PPA confidential and to oppose any attempt to share the terms or information contained therein with third-parties.

Dated: March 3, 2022

*/s/ Javier Dib*

Javier Dib