## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALTO MAIPO DELAWARE LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11507 (KBO)<br><br>(Jointly Administered)<br><br>**RE: D.I. 301, 324** |

**REPLY IN SUPPORT OF EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER, PURSUANT TO FEDERAL BANKRUPTCY RULE 2004, DIRECTING THE PRODUCTION OF DOCUMENTS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") by and through its proposed undersigned counsel of record, hereby file this reply to the objection of the Debtors (the "Objection") [Docket No. 324] to the *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order, Pursuant to Federal Bankruptcy Rule 2004, Directing the Production of Documents* (the "Motion") [Docket No. 301], and, in support of the Motion, respectfully states as follows:

1.      The Debtors oppose the production to the Committee of the power purchase agreement (the "PPA") between Alto Maipo and Minera Los Pelambres S.A. ("MLP"), including business plans and information that references or relies on the terms of the PPA because the Debtors believe they are contractually required to do so under the PPA.  The Debtors, however, recognize "the fiduciary role of the Committee and its interest in reviewing the PPA." (Objection,

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are: Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

¶ 4).  As such, the Debtors contend that if the documents should be produced, the scope must be further clarified and production limited to the Committee's professionals.

2.      The Committee believes that should the Court grant the Motion, the following language should constitute an acceptable resolution of scope:[2]  (a) a copy of the PPA, (b) the Debtors' current (and future) business plan that incorporates or otherwise relates to the PPA, and (c) any other documents or agreements related to the PPA or reflecting its terms that the Debtors would otherwise be precluded from producing in connection with the confidentiality restrictions articulated in Section 17 of the PPA.[3]  An amended proposed order granting the Motion, which includes this clarification as to the scope of the document requests, is attached hereto as **Exhibit A**.  Also, attached as **Exhibit B** to this Reply is a blackline of revisions to the initial proposed order.

### i.      The Committee Has a Right to Access the PPA and Related Documents.

3.      As even the Debtors seem to acknowledge it is essential that the Committee obtain access to the PPA[4] and related documents to allow the Committee to satisfy its duties, including its duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan."  *See* 11 U.S.C. § 1103(c)(2).   Bankruptcy Rule 2004(b) provides that any party in interest may order the examination of the debtor relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."    The Debtors make clear that "the PPA is one of the

---

[2]  As discussed, a dispute between the Committee and the Debtors remains whether these documents will be produced "for professional eyes only" or if Committee members will also have access to the documents.

[3] The Committee notes that it does not know what is provided in Section 17 of the PPA because the PPA has not been shared with the Committee.

[4] Capitalized terms not otherwise defined herein shall have the meaning afforded in the Motion.

Debtors' most critical assets."  Objection, ¶ 3.  Thus, the Committee's Motion seeking the production of the PPA and related documents is proper and well within the scope of Bankruptcy Rule 2004(b).  Again, the Debtors readily admit that the Committee has a right to obtain a copy of the PPA and related documents, given "the fiduciary role of the Committee and its interest in reviewing the PPA."[5]  Objection, ¶ 4.

ii.   ***Production of the Documents Should Not Be Subject to "Professional Eyes Only Review."***

4.      At bottom, apart from the gating issue of production, the Debtors' central objection to the Motion is that any access to the PPA should be limited to the Committee's professionals only.  The Debtors contend that only the Committee's professionals should have access to the PPA and related documents because, "[g]iven the commercially sensitive nature of the PPA, it would be damaging to the Debtors for the PPA to be made to any commercial party, including the Committee's members."  Objection, ¶ 5.  The Debtors, however, fail to indicate how providing Committee members access to the PPA and related documents could be damaging for the Debtors.

5.      The Committee recognizes that the PPA may contain confidential information regarding both the Debtors' and MLP's businesses, including the terms under which Alto Maipo will sell energy generated by the Project to MLP.  *See* Objection, ¶ 13.  However, the Debtors do not explain why the confidentiality provision contained in the Bylaws – which contain language requested by the Debtors– do not provide sufficient protection.  The Debtors do not allege  (nor can they) that the Committee members are energy producers or business competitors of the Debtors.  In fact, the Debtors provide no explanation why producing such information to the

---

[5] The only reason the Debtors contest the production of the PPA and related documents to the Committee is because the counter-party to the PPA (MLP) refused to consent to the production.  *See* Objection, ¶ 3.  Without the MLP's agreement, the Debtors were forced to oppose the production of the PPA to the Committee because the PPA's terms allegedly require the parties to keep the terms of the PPA confidential.  *See* Objection, ¶¶ 3, 11 (citing Section 17 of the PPA).  However, as explained herein and in the Motion, the Committee agrees to abide by the confidentiality provisions in its Bylaws which alleviates any confidentiality concerns.

Committee members will harm them or the estates.    Further, production of the PPA and related documents to Committee members will not result in making the terms of these agreements public. Nor is there any reason to assume, as the Debtors appear be doing, that the Committee members will not respect their obligations under the Bylaws, an agreement that each member has signed. *See* Objection, ¶¶ 13-15; *see also* Declaration of Sam J. Alberts, attached hereto as **Exhibit C**. There are no allegations in the Objection that any Committee members have done anything in violation of the Committee Bylaws or the confidentiality provisions included therein.

6.      In contrast, restricting production to "professional eyes only" would place an undue burden on both the Committee and its professionals by handcuffing their ability to communicate freely with respect to the PPA, an asset that the Debtors aver is central to their proposed reorganization.    Restricting the Committee's professionals from being able to work and communicate with the Committee about the PPA and the Debtors' business plans that apparently rely on continuation of the PPA, would adversely impact the Committee's ability to perform its duty as required by the Bankruptcy Code.

7.      Therefore, the Court should find that the Committee members' agreement to abide by the confidentiality provisions in the Committee Bylaws is sufficient to alleviate any concerns regarding the production of the PPA and related documents to Committee members.

## **CONCLUSION**

8.      For the reasons set forth above, the Committee respectfully requests that the Court enter the amended proposed order, attached hereto as **Exhibit A**, granting the Motion.

Dated: Wilmington, Delaware
March 4, 2022

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

 */s/ Kevin M. Capuzzi*
Jennifer R. Hoover (DE No. 5111)
Kevin M. Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Fax: (302) 442-7012
Email: jhoover@beneschlaw.com
kcapuzzi@beneschlaw.com
jgentile@beneschlaw.com

- and –

Sam J. Alberts (admitted *pro hac vice*)
David F. Cook (DE No. 6352)
**DENTONS US LLP**
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 408-7004
Fax: (202) 496-7756
Email: sam.alberts@dentons.com
david.f.cook@dentons.com

- and –

Lynn P. Harrison III (admitted *pro hac vice*)
Geoffrey M. Miller (admitted *pro hac vice*)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email: lynn.harrisoniii@dentons.com
        geoffrey.miller@dentons.com

- and –

James R. Irving (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
Fax: (502) 540-2215
Email: james.irving@dentons.com

- and –

Carlos Urzúa
Gonzalo Varela
**DENTONS LARRAÍN RENCORT SpA**
Av. Apoquindo 3885
Piso 18
Las Condes
Santiago, Chile
Telephone: +56.2.2411.9200
Email: carlos.urzua@dentons.com
gonzalo.varela@dentons.com

*Proposed Counsel for Official Committee of Unsecured Creditor*