**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No. 21-11507 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Hearing Date: April 6, 2022 at 12:30 p.m. (ET)** |
| | **Related Docket Nos.: 341, 374, 387** |

**REPLY IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING
DEBTORS TO ASSUME RESTRUCTURING SUPPORT AGREEMENT**

Alto Maipo SpA ("<u>Alto Maipo</u>") and Alto Maipo Delaware LLC ("<u>Alto Maipo Delaware</u>"),

debtors and debtors in possession (together, the "<u>Debtors</u>" or "<u>Company</u>") in these chapter 11

cases (the "<u>Chapter 11 Cases</u>") respectfully submit this reply (this "<u>Reply</u>") in support of the

*Debtors' Motion for Entry of an Order Authorizing Debtors to Assume Restructuring Support*

*Agreement* (D.I. 341) (the "<u>Motion</u>") pursuant to Rule 6006 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>") for entry of an order authorizing the Debtors to assume that

certain RSA[2] and to perform their obligations thereunder, and in response to the objection filed by

the Official Committee of Unsecured Creditors (the "<u>Committee</u>") (D.I. 387) (the "<u>Objection</u>").

In support of this Reply and the Motion, the Debtors rely on and incorporate by reference the

*Second Declaration of Javier Dib in Support of the Debtors' Motion for Entry of an Order*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, Fifth Amended RSA (including the Plan Term Sheet, Definitions, and Restructuring Term Sheet attached as Exhibit A, Annex I and Schedule II respectively thereto), as applicable.

*Authorizing Debtors to Assume Restructuring Support Agreement* ("Second Dib Declaration"), which is attached to this Reply as **Exhibit C**.  In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.     As highlighted in the Motion, the RSA represents a significant milestone in the Chapter 11 Cases and a substantial step toward a successful reorganization.  The RSA is a carefully negotiated agreement between the Debtors and the majority of their creditors, and particularly given the amendments memorialized in the fifth amendment to the RSA dated as of April 1, 2022 (the "Fifth Amended RSA," attached to the revised disclosure statement filed substantially simultaneously herewith), evidences a clear and viable path for the Debtors to consensually restructure their obligations and promptly emerge from chapter 11 on their present timeline.  Since the filing of the Motion, additional secured lenders have become signatories to the Fifth Amended RSA, such that the agreement embodied therein now enjoys the support of approximately 75% of the debtors' secured creditors, which is more than adequate support to ensure the approval of the amended plan of reorganization filed substantially simultaneously herewith.  In addition, the RSA parties now support a Plan that will provide for the unimpairment of general unsecured claims.

2.     Absent entry of an order approving assumption of the RSA, the RSA will automatically terminate by its terms, which would moot the volumes of work that the Debtors and their senior creditors have undertaken in order to reach a deal with a critical mass of senior creditor support.

3.     The sole objection to the assumption of the RSA was lodged by the Committee.  The Committee's Objection should be overruled for a number of reasons:

i.   *Heightened Scrutiny Does Not Apply.*  The Committee's suggestion that heightened scrutiny should apply given that AES Andes is among the dozen other creditors signing the RSA is unsupported by case law and ignores the inherent check presented by the participation and support of the Debtors' other third party creditors.  Moreover, to the extent that the Objection focuses on the treatment of unsecured creditors, the Fifth Amended RSA calls for the Plan to provide for unsecured creditors to be unimpaired, funded by contributions from AES Andes. In any event, even if heightened scrutiny applied, the Motion satisfies that standard.

ii.   *The RSA Provides Valuable Assurance to the Debtors.*  Not only is the RSA now supported by more than two-thirds of the holders of Alto Maipo Obligations, but it imposes covenants and obligations on the supporting creditors that will help ensure an expeditious exit from Chapter 11.

iii.   *The RSA is Not a Sub Rosa Plan.*  To the extent that the Committee somehow suggests that because the RSA spells out the terms of a proposed plan on which the supporting creditors have agreed to vote, the RSA is somehow either a "de facto" approval of the plan or itself a *sub rosa* plan, the Committee fundamentally misapprehends the basic nature of the relief sought by the Motion.  Indeed, the form of proposed order attached to the Motion already provided that "[n]othing herein shall act as an approval of any disclosure statement, plan or a finding of fact or conclusion of law in connection therewith."  Proposed Order ¶ 12.  For the avoidance of doubt, and given the Committee's apparent conflation of RSA assumption and confirmation, the Debtors have further revised the proposed

3

order to make express that all parties' rights and defenses in connection with confirmation are expressly reserved.

## ARGUMENT

**A.    The Debtors' Assumption of the RSA is Governed By and Satisfies the Business Judgment Standard.**

4.    Section 365 of the Bankruptcy Code permits assumption of the RSA as an executory contract upon a showing that the Debtors' decision to assume the agreement benefits the Debtors' estates and constitutes an exercise of sound business judgment. *In re Altegrity, Inc.*, Case No. 15-10226 (LSS) (Bankr. D. Del. Mar. 16, 2015) (approving the assumption of a prepetition restructuring support agreement as the sound exercise of the debtors' business judgment).

5.    The general purpose of restructuring support agreements is to make the restructuring proceedings as "quick and painless" as possible and maximize the chances of a successful restructuring. *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 462 (Bankr. S.D.N.Y. 2014) (noting that costs associated with long, drawn-out bankruptcies can cause grievous injury to both debtors and their stakeholders). Here, the RSA does just that. It avoids a long and expensive stay in chapter 11 and provides a framework for the Debtors and their creditors to make significant compromises and agreements on how the Debtors will structure their debt obligations going forward on more favorable terms. Importantly, it also provides the Debtors with assurance that their solicitation efforts will be successful, having secured the agreement of creditors holding sufficient amounts of Alto Maipo Obligations to ensure acceptance of the Plan by an impaired class of creditors. Failure to assume the RSA will set back the significant progress made to date.

6.    The RSA binds the majority of the Debtors' lenders to agreed-upon terms focused on right-sizing the Debtors' indebtedness and securing adequate short and long-term capital upon

emergence from these Chapter 11 Cases, under certain conditions – one of which is that the Debtors seek, and ultimately obtain, an order of this Court approving assumption of the RSA. *See* RSA § 3.01(t).

7.      The Committee raises no valid arguments that bring into question the Debtors' business judgment in seeking to assume the RSA.  The Committee summarily suggests that the RSA "does not serve a legitimate purpose at this late stage of the Chapter 11 Cases", suggesting the "need for [the RSA] has been obviated" because the Plan has already been filed.[3]  Objection at ¶ 31.  Even a cursory review of the RSA belies this notion, as the RSA contains various covenants that bind the parties to the RSA after the initial filing of the Plan.  Critically, for example, the RSA obligates the Shareholders and Sponsor to, *inter alia,* "not take any action that would reasonably be expected to prevent, interfere with, delay or impede the Chapter 11 Case or the consummation of the Plan or any of the other Restructuring Transactions…"  RSA § 1.05.  Crucially, this obligation is not terminated upon the filing of the Debtors' Plan and extends through and beyond confirmation of the Plan.  Further, the Fifth Amended RSA obligates AES Andes to roll its DIP claims into a new upsized exit facility and waive its rights to repayment in cash at exit, agree to certain deferrals, fund up to $300,000 for the unimpairment of the unsecured class of creditors, and agree to make capital contributions to fund certain claims that will ride through unimpaired— all of which is conditioned on the Plan being confirmed in the form contemplated by the Fifth Amended RSA.  Second Dib Declaration at ¶ 5.

8.      The Committee also suggests, without citing any authority, that the inclusion of a "fiduciary out" provision represents "the lack of legitimate purpose" for a restructuring support

---

[3]      The Debtors filed their *Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* on February 28, 2022 (D.I. 313), as revised on March 22, 2022 (D.I. 401) (as has been and may be subsequently supplemented, revised or amended, or otherwise modified in accordance with its terms, the "Plan").

29244096.1

agreement in these Chapter 11 Cases. Objection at ¶ 32-33. In reality, the fiduciary out, which is a common feature of restructuring support agreements approved in this district,[4] is a safety valve for the Debtors' board ensuring that they are able to faithfully exercise their fiduciary duties. Moreover, while the Committee suggests that the fiduciary out contained in the RSA is somehow a "very challenging" hoop for the Debtors to jump through (Objection at ¶ 33), the Committee fails to identify any way in which the present fiduciary out differs from those that are frequently used in and routinely approved by courts in this district and elsewhere. *See e.g.*, Order Authorizing the Cetera Debtors to Assume the Restructuring Support Agreement, *In re RCS Capital Corporation, et.al.*, No. 16-10223 (MFW) (D.I. 543) (Bankr. D. Del. Apr. 14, 2016) ("(ix) the board of directors of any Company Party, after consultation with outside counsel, determines in good faith that continued performance under this Agreement would be inconsistent with the exercise of its fiduciary duties under applicable law, including because such board's fiduciary obligations require it to direct such Company Party to accept a proposal for an Alternative Transaction."); Disclosure Statement for Debtors' Amended Chapter 11 Plan, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (D.I. 762) (Bankr. D. Del. Dec. 21, 2020) ("'Fiduciary Out': The Company may terminate the RSA, if it determines, based on the advice of outside advisors, that termination of the RSA is required under any fiduciary duties the Company owes to creditors or other stakeholders; provided that the Company must provide notice to the Secured Creditors at least three (3) business days prior to the exercise of the foregoing termination right."); Order Authorizing Entry into the Additional Noteholder RSA, *In re Automotores Gildemeister SpA, et al.*, No. 21-10685 (LGB) (D.I. 77) (Bankr. S.D.N.Y. Apr. 28, 2021) ("(g) the Companies

---

[4]     *See, e.g., In re Hercules Offshore, Inc.*, 565 B.R. 732, 756-57 (Bankr. D. Del. 2016); *Hamilton Partners, L.P. v. Highland Capital Management, L.P.*, 2014 WL 1813340, *4 (Ch. Del. May 7, 2014); Order Authorizing the Cetera Debtors to Assume the Restructuring Support Agreement, *In re RCS Capital Corporation, et.al.*, No. 16-10223 (MFW) (D.I. 543) (Bankr. D. Del. Apr. 14, 2016).

29244096.1

determine, based on the advice of outside advisors (after consultation with counsel, the Consenting Noteholders and counsel to the Consenting Noteholders), that termination of this Agreement is required under any fiduciary duties the Companies owe to creditors or other stakeholders and Gildemeister delivers to the Consenting Noteholders a written notice of termination in accordance with Section 6.09 hereof.") (RSA filed at D.I. 3).

9.      Finally, the Committee suggests that the multiple extensions of the milestone to obtain Court approval of the Debtors' assumption of the RSA must indicate that the RSA milestones are "artificial in nature" and therefore meaningless.   Objection at ¶ 34.   The Committee's assertion could not be further from reality.   The extensions of the deadline for the Debtors to file a motion to assume the RSA in fact underscore the hard-fought, arms'-length nature of the RSA negotiations, as they reflect extensions agreed to by the RSA parties to accommodate ongoing negotiations over final, but crucial, remaining issues.

10.      To the extent the Committee seeks to rely on *In re Innkeepers USA Tr.*, 442 B.R. 227, 233 (Bankr. S.D.N.Y. 2010) for the proposition that the RSA may not be assumed under the business judgment standard, such reliance is misplaced.   In *Innkeepers*, the court found that the plan support agreement in question could not be assumed under the business judgment standard because the Debtors failed to engage in discussions regarding a restructuring with any of their major creditors besides Lehman, the sole counterparty to the plan support agreement.   *Innkeepers*, 442 B.R. at 233.   Indeed, the court observed that testimony from the debtors' chief restructuring officer demonstrated that Lehman "wielded great power in the [plan support agreement] negotiations and that [the debtors' chief restructuring officer] seems to have succumbed to virtually all of their demands…"   *Id*.   That is not the case here. In stark contrast, the RSA was negotiated

by and among a diverse group of the Debtors' prepetition creditors holding a majority of Alto Maipo Obligations.

11.     The presence of, active participation by, and assent from these other creditors distinguishes these facts from the concerns that animate the application of heightened scrutiny. None of the cases cited by the Committee stand for the proposition that the involvement of an insider, alongside other third party creditors, in the negotiation of a restructuring support agreement alone warrants the application of heightened scrutiny. In the Committee's own case, *In re CS Mining, LLC*, the court determined that the settlement agreement involved insiders but went on to apply the business judgment standard. *In re CS Mining, LLC*, 574 B.R. 259, 277 (Bankr. D. Utah 2017) (though ultimately concluding business judgment was not met, the court states "[i]n multiple cases, this Court has stated it will not second-guess the Debtor's business judgment when reasonable, exercised in good faith, and within the scope of the Code").

12.     Several other cases highlight instances where the court has approved the assumption of restructuring agreements involving insiders under the business judgment rule. See RSA Assumption Order, *In re Grupo Posadas S.A.B. de C.V., et al.*, No. 21-11831 (SHL) (D.I. 79) (Bankr. S.D.N.Y. Nov. 17, 2021) (approving restructuring agreement incorporating an agreement with shareholders as a conditions precedent); Order Authorizing Entry into the Additional Noteholder RSA, *In re Automotores Gildemeister SpA, et al.*, No. 21-10685 (LGB) (D.I. 77) (approving restructuring agreement with the Debtors' shareholder as a party); (Bankr. S.D.N.Y. Apr. 28, 2021); Order Authorizing Debtors' Assumption of and Performance Under Restructuring Support Agreement, *In re Modular Space Holdings, Inc., et al.*, No. 16-12825 (KJC) (D.I. 160) (Bankr. D. Del. Jan. 17, 2017) (approving restructuring agreement involving holders of 91.9 percent of equity interest in the debtors); RPSA Assumption Order, *In re Inversiones Alsacia*

*S.A., et al.*, No. 14-12896 (MG) (D.I. 69) (Bankr. S.D.N.Y. Nov. 15, 2014) (approving restructuring agreement involving a non-debtor wholly-owned subsidiary).  As noted herein and as detailed in the Motion, the RSA negotiations have been hard-fought, and reflect the product of extensive, good-faith and arms'-length negotiations among many of the Debtors' prepetition secured creditors.

**B.    Heightened Scrutiny Is Inapplicable But Is Nonetheless Satisfied**

13.    The Committee suggests that heightened scrutiny is required because the RSA was negotiated with at least one statutory insider of the Debtors.[5]  However, the Committee fails to cite any cases where a court applied the entire fairness standard when considering the assumption of a restructuring support agreement.[6]

14.    The Committee's apparent reliance on the *Innkeepers* and *In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) cases for demonstrating why the RSA is not entirely fair is misplaced.  Not only are the facts in *Innkeepers* far from the facts here, where the RSA has been negotiated at arms'-length with numerous of the Debtors' creditors, but the court in *Innkeepers* actually applied the business judgment standard.[7]  Similarly, the facts in *Bidermann* – where the debtors sought to assume a memorandum of understanding contemplating a leveraged buy-out, where the court found that the debtors' chief executive officer had a clear conflict of interest with one of the contemplated buyers, where the debtors had not hired an investment banker

---

[5]    To the extent that the Committee suggests in passing that Strabag is a non-statutory insider of the Debtors (Objection at ¶ 7, n.2), the Committee articulates no facts that would support such a suggestion, and the Debtors dispute any such assertion..

[6]    Notably, the Committee elsewhere appears to concede that business judgment is the appropriate standard. Objection at ¶ 41 (arguing that the Committee "must have a fulsome opportunity to consider the specific facts of this case and whether the releases sought by the Plan and RSA are a valid exercise of the debtor's business judgment").

[7]    As the Objection acknowledges, in *Innkeepers*, the court merely noted in dicta that the entire fairness standard *might* apply, finding instead that the plan support agreement in question did not satisfy the business judgment standard.  Innkeepers, 442 B.R. at 231; Objection at ¶ 24.

to engage in a market test, and where the proposed "bidding procedures [were] nothing short of incomprehensible" – are not at all on point. *Bidermann*, 203 B.R. at 551.

15.     Nonetheless, even assuming, *arguendo*, that the entire fairness standard applies, the Committee has failed to put forth any articulable reason why the RSA does not satisfy that standard.  When applying this heightened scrutiny, "courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *Innkeepers*, 442 B.R. at 231.  As highlighted throughout the Motion and the Reply, the RSA represents equitable and fair arms-length dealing between the Debtors and several major creditors.  Second Dib Declaration at ¶ 4.  Frankly, there is no viable path for the Debtors to emerge on the current schedule without all signatories to the RSA being bound by the terms of the RSA, including AES Andes.  Second Dib Declaration at ¶ 5.  The negotiations with the RSA parties began long before the commencement of these Chapter 11 Cases and continued even after the filing of the Motion and have led to five amendments to the original RSA—all of which have been filed publicly and/or disclosed to the Committee.  Second Dib Declaration at ¶¶ 3-4.  Each party has advocated zealously to advance its interest, which often resulted in intensely painstaking meetings between the Debtors and their senior secured lenders that ultimately led to an agreement squarely in the best interest of the Debtors, their estates and their creditors.  Second Dib Declaration at ¶ 4.  Reaching agreement on the restructuring of the Debtors' indebtedness and preservation of liquidity upon emergence is a significant achievement for the Debtors, easily justifying assumption of the RSA.

16.     The Committee points to Messrs. Dib's and Del Carril's former positions at AES Andes as evidence of a supposed lack of fairness of the terms of the RSA, but completely fails to

articulate, much less provide any evidentiary support for, how the Debtors' fiduciary duties were compromised in the execution of the RSA.  To the extent these concerns were focused on the treatment of unsecured creditors, the RSA has been amended to provide that allowed unsecured claims will be either paid in full in cash or will ride through unimpaired.  In any event, as the Committee itself repeatedly acknowledges in its Objection, the RSA hardly locks in treatment of any creditor under the Plan; the substantive terms of the Plan are appropriately adjudicated at Plan confirmation.  *See* Objection at ¶ 18  The Committee further acknowledges, as it must, that an RSA binds a debtor to propose a plan on certain terms and binds its creditors to vote in favor of a plan containing those terms, but is not itself a plan of reorganization, and the matter of confirmability of the plan is not yet before the Court.

17.    As detailed throughout the Motion and this Reply, the terms of the RSA are fair and equitable, and represent the best path for the Debtors to move forward.  Fundamentally, what the RSA accomplishes is to assure the support of an overwhelming majority of creditors holding approximately 75% of the Debtors' indebtedness—whose support is essential to a consensual and streamlined reorganization—of a comprehensive framework for a chapter 11 plan and expeditious exit from chapter 11.[8]  By assuming the RSA now, the Debtors lock in the support of their secured creditors to a chapter 11 plan that provides sufficient liquidity to allow the Debtors to operate their business during and after the Chapter 11 Cases and permits substantial de-leveraging of the Debtors' capital structure post-emergence.  Assumption of the RSA is squarely in the best interest

---

[8]    The lenders to that certain Second Amended and Restated Common Terms Agreement (the "CTA"), dated as of May 8, 2018 (as further amended and supplemented) among Alto Maipo and DNB Bank ASA and Itaú Corpbanca (the "Senior Lenders") filed the *Senior Lenders' Joinder and Statement in Support of Debtors' Motion for Entry of an Order Authorizing Debtors to Assume Restructuring Support Agreement* (D.I. 374) in support of the relief requested in the Debtors' Motion.

of the Debtors and their creditors, and without it, the Debtors and their stakeholders would return to square one of negotiations. Nothing in the Committee's Objection proves otherwise.

## C.   The Committee's Confirmation-Related Objections, Including Regarding Plan Releases, Are Premature.

18.     The Committee's arguments regarding Plan releases are not cognizable objections to the assumption of the RSA. They are premature objections to the confirmability of the Debtors' Plan and should be reserved for the confirmation hearing.

19.     The Committee accuses the Debtors of seeking to evade the Bankruptcy Code's requirements for confirmation of a chapter 11 plan by arguing that, *inter alia*, the Court's approval of the assumption of the RSA would "signal this Court's approval of unconscionably broad releases," Objection at ¶ 37, and that the RSA is an impermissible *sub rosa* plan, Objection at ¶ 47.[9] However, it is the Committee that inappropriately seeks to pre-litigate plan confirmation issues. Indeed, the Debtors' original proposed form of order already included language making abundantly clear that nothing in the Court's approval of the RSA would "act as an approval of any disclosure statement, plan, or a finding of fact or conclusion of law in connection therewith." Proposed Order at ¶ 12. As Judge Glenn succinctly noted upon consideration of objections to the assumption of the plan support agreement in the *In re Residential Capital* case, "approval of the [plan support agreement ("PSA")] does not assure that a plan embodying its terms will be confirmed. Approval of the PSA does not bind the objecting parties or the Court from challenging (in the case of the objectors) or rejecting (in the case of the Court) a plan substantially on the terms set forth in the PSA…" *In re Residential Cap., LLC*, No. 12-12020, 2013 WL 3286198, at *2 (Bankr. S.D.N.Y. June 27, 2013) (unreported).

---

[9]     The Committee's arguments that the RSA constitutes a *sub rosa* plan are discussed further herein, *infra* at ¶ 21.

20.     Courts routinely hold that objections to plan terms are appropriately raised at plan confirmation.  *See In re Innkeepers USA Trust*, 448 B.R. 131, 148-49 (Bankr. S.D.N.Y. 2011) (finding certain arguments are "best categorized as confirmation objections" and "parties in interest will be afforded the right to make relevant confirmation objections" to the proposed plan); *In re Adell*, 325 B.R. 883, 886 ("[C]onfirmation issues should be considered at the confirmation hearing."); *In re Sunshine Precious Metals, Inc.*, 142 B.R. 918, 920 (Bankr. D. Iadaho 1992) (refusing to hear confirmation issues); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) ("[I]ssues respecting the plan's confirmability will await the hearing on confirmation").  The Committee cites no cases to the contrary.  In fact, in several instances, it acknowledges that it is previewing plan confirmation issues and reserves its rights to raise them during the confirmation process.  *See, e.g.*, Objection at ¶ 4 (reserving rights to object to the Plan and disclosure statement); ¶ 18 ("The Committee has serious concerns as to confirmability of the Plan. . . . [T]hese are issues that should be properly adjudicated in the confirmation process, not in connection with this RSA and the Motion."); ¶ 19 (same); ¶ 36 (the Committee has issues with the RSA and the Plan that "are confirmation issues and should be argued before this Court . . . in connection the Plan, not the RSA"); ¶ 41 (". . . this argument may be better received at a hearing on the disclosure statement and at plan confirmation.").  On this point, the Debtors agree with the Committee.  Crucially, nothing in the RSA limits the Committee's ability, or that of similarly situated parties in interest who have not already acceded to the RSA, to raise these or similar arguments at the plan confirmation stage.  While the Debtors believe it to be unnecessary, for the avoidance of any doubt, the Debtors have revised the proposed order to expressly include

a reservation of rights on this point.  Combined with the language that was already in the proposed order, the Debtors believe this fully resolves any concern on this front.[10].

21.     Further, the Committee's argument that the RSA constitutes an impermissible *sub rosa* plan is equivalent to throwing dry pasta at the wall and hoping it sticks.  They cite four inapposite cases that are far off base with the facts in these Chapter 11 Cases and the procedural posture of this Motion—three on settlement agreements under Bankruptcy Rule 9019 and one on the scope of "use, sale or lease" under section 363(b) of the Bankruptcy Code.  In fact, the courts in *In re Nortel Networks, Inc.*, 522 B.R. 491, 508 (Bankr. D. Del. 2014) and *In re Capmark Financial Group Inc.*, 438 B.R. 471, 514 (Bankr. D. Del. 2010) both found the settlement agreements contemplated by the debtors did *not* constitute a *sub rosa* plan, even where the debtors sought to finally resolve and release claims.[11]  Unlike the settlement agreements at issue in the cases cited, the RSA does not finally bind the Debtors or have the effect of discharging or paying claims.  All transactions contemplated under the RSA occur on the plan effective date.  The RSA is a "'necessary step towards, or building block of,' a plan of reorganization' [and] does not constitute [an] improper *sub rosa* plan."  *In re Nortel*, at 508.

22.     The Debtors, through their Motion, only seek to assume the RSA—a critical agreement with the majority of their lenders setting forth consensual means through which the Debtors will right-size their debt obligations and emerge from chapter 11 on solid footing.  The

---

[10]     Attached hereto as **Exhibit A** is a revised proposed order, along with a blackline to the original proposed order filed with the Motion, which is attached as **Exhibit B**.

[11]     The remaining cases are plainly irrelevant. *In re SCH Corp.*, No. 14-2888, 597 Fed. Appx. 143, 149 (3d Cir. Feb. 24, 2015) addresses a proposed post-confirmation settlement agreement that the Court found amounted to a plan modification in connection with the sale of assets.  *In re Braniff Airways, Inc.*, 700 F.2d 935, 939-40 (5d Cir. Mar. 2, 1983) deals with proposed agreements resulting in the sale of all the debtor's assets (cash, equipment, leases), which the court found is "much more than the 'use, sale or lease' allowed under section 363(b).  These scenarios cannot be farther from the facts at hand and cannot be made applicable to the Debtors' assumption of the RSA.

Committee's musings about the Plan are premature and should be brought in connection with the confirmation process, not the RSA assumption.

**D.      The Committee's Argument on the Percentage of Lender Support is Moot.**

23.      The Committee further laments that the assumption should not be approved because the Debtors do not have the support of the majority of its senior secured lenders. Objection ¶ 2. This assertion is moot with the recent joinder of Strabag and other lenders as signatories to the RSA.  Since the Committee's Objection was filed, additional lenders have executed joinders to the RSA and represent approximately 75% of the Debtors' indebtedness.  Thus, the Debtors now also have the requisite votes to confirm a plan of reorganization – a significant and hard-earned milestone.

24.      Through subsequent negotiations following the filing of the Motion, and among other agreements and compromises, the Debtors and Strabag have agreed to certain terms governing the letters of credit provided by Strabag.  In accordance with the RSA, these terms are required to be included in the proposed order granting assumption of the RSA, and as such, are included in the blackline form of order attached as **Exhibit B**.  This agreement was a key inducement to Strabag's accession to the terms of the RSA.

25.      As a result of such agreements, not only does the RSA secure votes for a plan of reorganization, it allows the Debtors to avoid timely and costly drawbacks that may delay emergence—simply, there is no viable plan of reorganization without the signatories to the RSA and the primary leverage the Debtors have is to negotiate compromises that include proposed terms of a potential plan.  That is the process and outcome embodied in the RSA.  The support that the RSA enjoys strongly suggests the Debtors will be able to emerge from these Chapter 11 Cases promptly on the present timeline.  The Debtors, their creditors and their estates are best-served by an expeditious emergence from chapter 11.

29244096.1

## **CONCLUSION**

For the reasons set forth herein and in the Motion, the Debtors therefore respectfully submit

that the Objection should be overruled and the Motion should be granted.

Dated:  April 4, 2022
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ S. Alexander Faris*
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
S. Alexander Faris (No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Fax:              (302) 571-1253
Email:          pmorgan@ycst.com
                     sgreecher@ycst.com
                     afaris@ycst.com

- and -

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper (admitted *pro hac vice*)
Luke A. Barefoot (admitted *pro hac vice*)
Jack Massey (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:    (212) 225-2000
Fax:              (212) 225-3999
Email:          rcooper@cgsh.com
                     lbarefoot@cgsh.com
                     jamassey@cgsh.com

*Counsel for the Debtors and Debtors-in-Possession*

## EXHIBIT A

**Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.:  21-11507 (KBO) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. ___ |

## ORDER AUTHORIZING THE DEBTORS TO
## ASSUME THE RESTRUCTURING SUPPORT AGREEMENT

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession in the above captioned cases (collectively, the "Debtors"), for an order,

pursuant to sections 105(a), 362, and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006,

authorizing the Debtors to assume the Restructuring Support Agreement and perform their

obligations thereunder, all as more fully set forth in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012; and the Motion and the relief requested therein being a core

proceeding pursuant to 28  U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection

having been given under the circumstances; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein and that such

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]    All capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and the *Objection of Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Authorizing Debtors to Assume Restructuring Support Agreement* (D.I. 387) having been addressed through revisions to the Restructuring Support Agreement or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized to assume the Restructuring Support Agreement and, effective as of the date of entry of this order, the Restructuring Support Agreement is hereby assumed and the Debtors are authorized to perform all of their obligations thereunder pursuant to section 365(a) of the Bankruptcy Code.

3. The Restructuring Support Agreement shall be binding and enforceable against the Debtors and the Supporting Parties in accordance with its terms.  The Debtors and the Supporting Parties are granted all rights and remedies provided to them under the Restructuring Support Agreement.

4. The failure to describe specifically or include any particular provision of the Restructuring Support Agreement in the Motion or this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Restructuring Support Agreement be assumed by the Debtors in its entirety.

5. The Debtors are authorized to enter into amendments, modifications, or waivers of terms to the Restructuring Support Agreement, from time to time as necessary, subject to the terms and conditions set forth in the Restructuring Support Agreement and without further order of the Court; *provided* that any amendment that is both material and

adverse to the Debtors shall require Court approval.  Within two business days of the effective date of each such amendment, the Debtors will file a notice attaching a copy of any such amendments with the Court.

6.      Notice of the Motion was good and sufficient and the requirements of the Bankruptcy Rules and Local Bankruptcy Rules are satisfied by such notice.

7.      To the extent that the automatic stay provisions of section 362 of the Bankruptcy Code would otherwise apply, such provisions are modified to effectuate all of the terms and provisions of the Restructuring Support Agreement and this order, including permitting the Supporting Parties to exercise all rights and remedies under the Restructuring Support Agreement in accordance with its terms, and deliver any notice contemplated thereunder, in each case, without further order of the Court.

8.      No default exists under the Restructuring Support Agreement, and, therefore, the Debtors are not required to satisfy the requirements of section 365(b)(1). Accordingly, the Debtors are not required to: (a) cure, or provide adequate assurance that the Debtors will promptly cure, any defaults under the Restructuring Support Agreement; (b) compensate, or provide adequate assurance that the Debtors will promptly compensate, the Supporting Parties for any actual pecuniary loss resulting from any default; or (c) provide adequate assurance of future performance of the Restructuring Support Agreement.

9.      The Strabag Letter of Credit Provisions attached as Annex VI to the Restructuring Support Agreement are hereby approved.  In accordance therewith, to the extent that Strabag believes there has been a wrongful draw on an applicable Strabag letter of credit prior to the effectiveness of the Plan, the automatic stay is hereby lifted solely to the extent necessary to permit Strabag to pursue its rights under Section 18 of the Tunneling

29244100.1

Agreement; provided however, that any such dispute shall be adjudicated exclusively pursuant to Section 18 of the Tunneling Agreement, without derogation from any existing right of Strabag to seek any relief consistent with the terms of the Tunneling Agreement.

10.     Notwithstanding any applicability of Bankruptcy Rule 6006(d), the terms and conditions of this order shall be immediately effective and enforceable upon entry of this order.

11.     The requirements of Bankruptcy Rule 6004(a) and 6004(h) are hereby waived with respect to this order.

12.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this order, and such action shall not constitute a solicitation of acceptances or rejections of a plan pursuant to section 1125 of the Bankruptcy Code.

13.     Nothing herein shall act as an approval of any disclosure statement, plan, or a finding of fact or conclusion of law in connection therewith.

14.     With respect to any parties in interest that are not a party to the RSA, all rights and defenses in connection with confirmation of a plan of reorganization are expressly reserved.

15.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this order.

29244100.1

# EXHIBIT B

**Blackline**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.:  21-11507 (KBO) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. ___ |

### ORDER AUTHORIZING THE DEBTORS TO
### ASSUME THE RESTRUCTURING SUPPORT AGREEMENT

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession in the above captioned cases (collectively, the "Debtors"), for an order,

pursuant to sections 105(a), 362, and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006,

authorizing the Debtors to assume the Restructuring Support Agreement and perform their

obligations thereunder, all as more fully set forth in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012; and the Motion and the relief requested therein being a core

proceeding pursuant to 28  U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection

having been given under the circumstances; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein and that such

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]     All capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and ~~any objections to the Motion having been withdrawn~~*the Objection of Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Authorizing Debtors to Assume Restructuring Support Agreement (D.I. 387) having been addressed through revisions to the Restructuring Support Agreement* or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized to assume the Restructuring Support Agreement and, effective as of the date of entry of this order, the Restructuring Support Agreement is hereby assumed and the Debtors are authorized to perform all of their obligations thereunder pursuant to section 365(a) of the Bankruptcy Code.

3.      The Restructuring Support Agreement shall be binding and enforceable against the Debtors and the Supporting Parties in accordance with its terms.  The Debtors and the Supporting Parties are granted all rights and remedies provided to them under the Restructuring Support Agreement.

4.      The failure to describe specifically or include any particular provision of the Restructuring Support Agreement in the Motion or this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Restructuring Support Agreement be assumed by the Debtors in its entirety.

5.      The Debtors are authorized to enter into amendments, modifications, or waivers of terms to the Restructuring Support Agreement, from time to time as necessary, subject to the terms and conditions set forth in the Restructuring Support Agreement and

without further order of the Court; *provided* that any amendment that is both material and adverse to the Debtors shall require Court approval.  Within two business days of the effective date of each such amendment, the Debtors will file a notice attaching a copy of any such amendments with the Court.

6.      Notice of the Motion was good and sufficient and the requirements of the Bankruptcy Rules and Local Bankruptcy Rules are satisfied by such notice.

7.      To the extent that the automatic stay provisions of section 362 of the Bankruptcy Code would otherwise apply, such provisions are modified to effectuate all of the terms and provisions of the Restructuring Support Agreement and this order, including permitting the Supporting Parties to exercise all rights and remedies under the Restructuring Support Agreement in accordance with its terms, and deliver any notice contemplated thereunder, in each case, without further order of the Court.

8.      No default exists under the Restructuring Support Agreement, and, therefore, the Debtors are not required to satisfy the requirements of section 365(b)(1). Accordingly, the Debtors are not required to: (a) cure, or provide adequate assurance that the Debtors will promptly cure, any defaults under the Restructuring Support Agreement; (b) compensate, or provide adequate assurance that the Debtors will promptly compensate, the Supporting Parties for any actual pecuniary loss resulting from any default; or (c) provide adequate assurance of future performance of the Restructuring Support Agreement.

9.      The Strabag Letter of Credit Provisions attached as Annex VI to the Restructuring Support Agreement are hereby approved.  In accordance therewith, to the extent that Strabag believes there has been a wrongful draw on an applicable Strabag letter of credit prior to the effectiveness of the Plan, the automatic stay is hereby lifted solely to

3

the extent necessary to permit Strabag to pursue its rights under Section 18 of the Tunneling Agreement; provided however, that any such dispute shall be adjudicated exclusively pursuant to Section 18 of the Tunneling Agreement, without derogation from any existing right of Strabag to seek any relief consistent with the terms of the Tunneling Agreement.

10.    9. Notwithstanding any applicability of Bankruptcy Rule 6006(d), the terms and conditions of this order shall be immediately effective and enforceable upon entry of this order.

11.    10. The requirements of Bankruptcy Rule 6004(a) and 6004(h) are hereby waived with respect to this order.

12.    11. The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this order, and such action shall not constitute a solicitation of acceptances or rejections of a plan pursuant to section 1125 of the Bankruptcy Code.

13.    12. Nothing herein shall act as an approval of any disclosure statement, plan, or a finding of fact or conclusion of law in connection therewith.

14.    With respect to any parties in interest that are not a party to the RSA, all rights and defenses in connection with confirmation of a plan of reorganization are expressly reserved.

15.    13. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this order.

**<u>EXHIBIT C</u>**

**Second Javier Dib Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.:  21-11507 (KBO) |
| Debtors. | (Jointly Administered) |

**SECOND DECLARATION OF JAVIER DIB IN SUPPORT OF THE
DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING
DEBTORS TO ASSUME RESTRUCTURING SUPPORT AGREEMENT**

I, Javier Dib, hereby declare under penalty of perjury:

1.     I am the Board President and Chief Restructuring Officer ("CRO") of Alto Maipo

SpA ("Alto Maipo", and, together with Alto Maipo Delaware LLC ("Alto Maipo Delaware"), the

"Debtors").  In my capacity as Board President and CRO of Alto Maipo, I am familiar with the

Debtors' operations, day-to-day business affairs, and books and records.  I submit this declaration

(this "Second Declaration") in support of the *Debtors' Motion for Entry of an Order Authorizing*

*Debtors to Assume Restructuring Support Agreement* (D.I. 341) (the "Motion") and to supplement

the *Declaration of Javier Dib in Support of the Debtors' Motion for Entry of an Order Authorizing*

*Debtors to Assume Restructuring Support Agreement* (D.I. 341.4) (the "Initial Declaration").[2]  I

am authorized by the Debtors to submit this Declaration.

2.     Except as otherwise noted, all facts set forth in this Second Declaration are based

on  my  personal  knowledge,  my  discussions  with  other  members  of  the  Debtors'  senior

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, Reply or Initial Declaration, as applicable.

management and professional advisors, my review of relevant documents or my opinion, based upon my experience and knowledge of the Debtors' operations and financial conditions.  In making this Second Declaration, I have relied in part on information and materials that the Debtors' personnel and advisors have gathered, prepared, verified, and provided to me, at my direction, or for my benefit in preparing this Second Declaration.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

3.      As set forth more fully in the First Day Declaration, beginning in July 2021, Alto Maipo began its consultations with certain of its advisors, including Lazard Fréres & Co. LLC, Lazard Chile SpA and Cleary Gottlieb Steen & Hamilton LLP, to assess the probability of restructuring its indebtedness as a result of the changing hydrology in the Maipo Valley affecting the Project and the company's liquidity.  Shortly thereafter, in August 2021, Alto Maipo presented a revised construction budget and long-term business plans to the Bank Lenders (as defined in the First Day Declaration) and Strabag.  Since then, the Debtors, AES Andes, the Bank Lenders, Strabag and other creditors have been engaged in rigorous negotiations around a restructuring proposal and timeline.

4.      After months of negotiations, the RSA was first agreed to on November 17, 2022 and enjoyed the support of the majority of the Debtors' lenders holding Alto Maipo Obligations. Due to further worsening hydrological conditions in the Maipo Valley, a previously unidentified liquidity gap, additional concessions requested by the Debtors' secured lenders, and other critically important issues to reaching consensus, the RSA has now been amended five times.  Each step involved intense debates, gridlocks, late nights and compromises from all parties.  The fortunate result of these negotiations is an equitable and fair agreement on which the Debtors can rely going forward.  Further, with the joinder of Strabag to the Fifth Amended RSA, the Debtors now have a

consensual and a viable path out of these Chapter 11 Cases as the RSA again enjoys the support of an overwhelming majority of creditors holding more than 69% of the Debtors' indebtedness. The RSA is squarely in the best interest of the Debtors and their creditors and to unravel the hard-fought accomplishments would dramatically setback the Debtors' timeline for emergence and would come at tremendous cost.

5.    Each party to the RSA is vital as they comprise the two-thirds support the Debtors need for the RSA and to confirm a plan of reorganization.  The support of AES Andes is equally critical as the Fifth Amended RSA obligates AES Andes to roll its DIP claims into a new upsized exit facility and waive its rights to repayment on the DIP obligations in cash at exit, agree to certain deferrals, fund up to $300,000 for the unimpairment of the unsecured class of creditors, and agree to make capital contributions to fund certain claims that will ride through unimpaired—all conditioned on the Plan being confirmed in the form contemplated by the Fifth Amended RSA. The terms of the RSA evidence the integrity behind the negotiations and the belief in the long-term success of the Debtors.  The RSA is critical as it binds these creditors to its terms, affords the Debtors security moving forward in and out of these Chapter 11 Cases, while also preserving the Debtors' right to engage with potential alternative proposals in accordance with their fiduciary duties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: April 4, 2022

/s/ Javier Dib
Javier Dib
Board President & Chief Restructuring Officer

29244106.1

3