**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Alto Maipo Delaware LLC, *et al.*,[1]<br><br><br><br>Debtors | Chapter 11<br><br>Case No.: 21-11507(KBO)<br><br>(Jointly Administered)<br><br>**Related Doc. Nos. 369, 402, 430 & 441** |

**SENIOR LENDERS' (I) JOINDER AND STATEMENT IN FURTHER SUPPORT
OF DEBTORS' MOTION FOR AN ORDER (i) APPROVING THE DISCLOSURE
STATEMENT; (ii) APPROVING SOLICITATION AND VOTING PROCEDURES,
INCLUDING (A) FIXING THE RECORD DATE, (B) APPROVING THE
SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION,
(C) APPROVING THE FORM OF THE BALLOTS AND ESTABLISHING
PROCEDURES FOR VOTING, AND (D) APPROVING PROCEDURES FOR VOTE
TABULATION; (iii) SCHEDULING A CONFIRMATION HEARING AND
ESTABLISHING NOTICE AND OBJECTION PROCEDURES; AND
(iv) GRANTING RELATED RELIEF AND (II) RESPONSE TO OFFICIAL
COMMITTEE OF UNSECURED CREDITORS' OBJECTION THERETO**

The lenders to that certain Second Amended and Restated Common Terms Agreement, dated as of May 8, 2018 (as further amended and supplemented, "the "***CTA***"), among Alto Maipo SpA ("***Alto Maipo***"), as borrower, DNB Bank ASA, as LC Issuing Bank, Itaú Corpbanca, as administrative agent, and the lenders thereto (collectively, the "***Senior Lenders***"),[2] hereby submit this (i) joinder and statement in further support of *Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, is Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware). The location of the corporate headquarters and the service address for Alto Maipo SpA is: Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2] The Senior Lenders also include parties (the "***Hedging Counterparties***") that provided interest rate hedges to the Debtors with respect to terms loans issued under the CTA and that hold secured claims on a *pari passu* first priority lien basis with the term lenders under the CTA.

{1332.001-W0067404.}

*for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 369] *(the "Disclosure Statement Approval Motion"),*[3] and (ii) response to the *Official Committee of Unsecured Creditors' Objection to Debtors' Motion Seeking Approval of Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code and for Related Relief* [Docket No. 430] (the "**Disclosure Statement Objection**"), and respectfully state as follows:

### JOINDER AND FURTHER STATEMENT IN SUPPORT

1. The Senior Lenders adopt and incorporate by reference the *Debtors' Omnibus Reply in Support of the Disclosure Statement Approval Motion* Docket No. 441 (the "**Debtors' Disclosure Statement Reply**"), which provides further support for approval of the Disclosure Statement Approval Motion and responds to each of the alleged infirmities raised by the Committee and the U.S. Trustee.[4]

2. The Senior Lenders will not belabor the record by rehashing those arguments, but submit this joinder in further support of the Disclosure Statement Motion to urge this Court to consider the context in which the Committee's objections are made. Under the pretense of complying with its fiduciary duties to unsecured creditors, the Committee has engaged in a

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Disclosure Statement Approval Motion.

[4] As described in the Debtors' Disclosure Statement Reply, many of the objections to the Disclosure Statement raised by the Committee and U.S. Trustee, which are more accurately characterized as premature confirmation-related objections to the Plan of Reorganization, are mooted as a result of amendments to the Restructuring Support Agreement and Plan of Reorganization that will result in allowed unsecured claims being rendered unimpaired.

litigation crusade that has resulted in the accrual of excessive administrative costs,[5] depleting the estate's limited resources. The impact of these excessive administrative costs, as with any other depletion of the estate's limited resources, is ultimately borne by the Senior Lenders, as the fulcrum debtholders.

3. The economic reality of these Chapter 11 Cases is that the ***general unsecured creditors are out of the money by several hundreds of millions of dollars***.[6] This is a stark reality that the Committee continues to ignore as they litigate with blinders as if this was an Enron-like Chapter 11 case. While everyone wishes that the Debtors' assets were worth more than they are, or that market conditions supported a full recovery by all stakeholders—especially the Senior Lenders, who under the Plan are making significant financial concessions[7]—this is simply not possible.[8] The Debtors' valuation reflects an enterprise value that is between $1.277 billion to $1.416 billion, which is approximately $600 to $700 million less than the amount of the Senior Lenders' allowed secured claims.

---

5 On March 23, 2022, the Committee submitted fee applications for the period from January 31, 2022 through February 28, 2022 disclosing that the Committee has incurred fees in the collective amount of approx. $760,000. *See* Docket Nos. 410, 411, 412, 417. This does not include any amounts that that may be owed to the Committee's financial advisors.

6 The Debtors filed an Amended Disclosure Statement on March 23, 2022 [Docket No. 402], which includes, at Exhibit C, a valuation analysis prepared by the Debtors' investment banker, Lazard Freres & Co. LLC. The analysis estimated that Alto Maipo's going-concern value upon emergence from bankruptcy (assuming the Effective Date will occur on May 31, 2022) will be in the range of $1.277 billion to $1.416 billion, with a selected midpoint value of approximately $1.347 billion (this amount includes expected cash on hand at emergence and recovery of the CNM Arbitral Award (as defined in the Disclosure Statement)).

7 Among other things, the Senior Lenders are:
- Receiving first lien takeback paper in a reduced principal amount in partial satisfaction of their prepetition secured claims;
- Receiving second lien takeback paper, with no scheduled amortization, in partial satisfaction of their prepetition secured claims;
- Deferring payments, extending maturities, and reducing interest rates on their debt; and
- Permitting an exit facility to prime their post-petition claims.

8 Despite being badly out of the money, the latest revised Plan of Reorganization does treat general unsecured creditors as being unimpaired and contemplates payment of allowed unsecured claims in full through contributions to be made by AES Andes. It is contemplated that the actual allowed amount of all general unsecured creditors will not exceed $300,000.

4.      If the Committee believes that the Debtors' valuation is wrong, then the proper course of action would be to challenge valuation at confirmation. However, the Committee has chosen an obstructionist path, raising issues that will ***not*** enhance unsecured creditors' waterfall recovery in these Chapter 11 Cases, and that are solely intended to undermine the restructuring. The Committee's objection should be seen for what it really is—a blatant attempt to gain negotiating leverage to extract money from AES Andes[9] and/or the Senior Lenders, who have, in good faith, engaged in painstaking negotiations with the Debtors to formulate and implement a restructuring deal that will permit the Debtors to successfully emerge from bankruptcy as a financially healthy company.[10]

5.      The prolonged but successful efforts by the Senior Lenders to build consensus, including their agreement to make significant financial concessions, is intended to preserve a restructuring deal that avoids a "free-fall" scenario that would be value-destructive and would jeopardize the Debtors' ability to reorganize in an efficient and cost-effective manner. The Committee's obstructionist strategy, including the Disclosure Statement Objection, is an affront to the objectives and purpose of Chapter 11, and reflects the worst of the U.S. bankruptcy system. The Committee should not be able to use their status as fiduciaries as a shield, while trying to undermine a viable restructuring plan for the purpose of extracting value from stakeholders with skin in the game for a constituency that is far out of the money.

---

9   The fact that AES Andes has acquiesced and has agreed to fund distributions to pay general unsecured creditor claims up to $300,000 does not change the financial realities of these Chapter 11 Cases or the inappropriate actions taken by the Committee to extract a recovery for their out of the money constituency. At the end of the day, common sense and simple math dictate that paying allowed unsecured claims in full will cost stakeholders less than additional administrative expenses incurred by the Committee in further challenging confirmation.

10  The objectives and purposes of the Bankruptcy Code include preserving going concern businesses, maximizing property available to satisfy creditors, giving debtors a fresh start in life, and achieving fundamental fairness and justice. *In re W.R. Grace & Co.*, 729 F.3d 332, 346 (3rd Cir. 2013) (quoting *Am. Capital Equip., LLC*, 688 F.3d 145, 156-57 (3d Cir. 2012)).

## CONCLUSION

6.      The recent changes made to the Plan of Reorganization should moot most, if not all, of the Committee's objections. However, if the Committee does continue to pursue its objection, particularly its attacks on the Plan of Reorganization, the Court should disregard all issues raised by the Committee that do not directly impact unsecured creditors.[11] For the foregoing reasons and those set forth in the Disclosure Statement Approval Motion and the Debtors' Disclosure Statement Reply, the Senior Lenders request that the Court enter an order granting the Disclosure Statement Approval Motion and related relief.

Dated: April 4, 2022
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Matthew B. McGuire (No. 4366)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  mcguire@lrclaw.com
           pierce@lrclaw.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Andrew Rosenblatt (admitted *pro hac vice*)
Derek Cash (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
Email: andrew.rosenblatt@nortonrosefulbright.com
Email: derek.cash@nortonrosefulbright.com

*Counsel for the Senior Lenders*

---

11  Although the Committee has standing to object to plan confirmation as a party in interest under the Bankruptcy Code, its standing only extends to the particular plan provisions that might affect the rights or interests of unsecured creditors. *See In re Applied Safety*, 200 B.R. 576, 587 (Bankr. E.D. Pa. 1996) ("Generally, it is only an aggrieved party, whose own interests are impacted by particular plan provisions, [that] may object to those provisions at confirmation."); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 624 (Bankr. S.D.N.Y. 1986).