# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Alto Maipo Delaware LLC, *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No.: 21-11507 (KBO)<br>(Jointly Administered)<br><br>**Re: D.I. 314, 369, 402, 430, 436 & 441** |

**JOINDER AND REPLY OF AES ANDES, S.A. AND NORGENER RENOVABLES, SPA IN SUPPORT OF APPROVAL OF DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ALTO MAIPO SPA AND ALTO MAIPO DELAWARE LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND FOR RELATED RELIEF**

AES Andes S.A., f/k/a AES Gener S.A. and Norgener Renovables, SpA, (collectively, "AES"), by and through their undersigned counsel, hereby join in (the "Joinder") the *Debtors' Omnibus Reply in Support of Debtors' Motion for an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballots and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* (D.I. 441) (the "Debtors' Reply") and specifically reply (the "Reply") to certain of the objections and allegations set forth in the *Official Committee of Unsecured Creditors' Objection to Debtors' Motion Seeking Approval of Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code and for Related Relief*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction in which it operates, are: Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware). The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

(D.I. 430) (the "Objection") filed by the official committee of unsecured creditors (the "Committee") appointed in the bankruptcy cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").  In support of this Joinder and Reply, AES adopts and incorporates all arguments set forth in the Debtors' Reply as if fully set forth herein and further respectfully represents as follows:

## PRELIMINARY STATEMENT

1. With the filing of the revised *Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 435) (the "Revised Plan") and its accompanying disclosure statement (D.I. 436) (the "Revised Disclosure Statement," and with the Revised Plan, the "Revised Solicitation Documents"), all of the Committee objections and concerns have either been mooted or are more properly reserved until the hearing on confirmation of the Revised Plan.  The Revised Plan now on file provides for payment of 100% of the Allowed[2] General Unsecured Claims in Class 4 due to a significant additional contribution from AES and certain other clarifications have been made to address concerns raised by the Committee.  With these changes, there is no reason the Revised Disclosure Statement should not be approved even if the Committee chooses to press the issues raised in the Objection at the confirmation hearing, which is the appropriate time.

## REPLY

2. Turning to certain of the specific objections of the Committee, AES submits that they are either (a) resolved by the Revised Solicitation Documents or (b) are appropriately considered at the Confirmation Hearing.  As set forth below, the Committee's

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Revised Plan and Revised Disclosure Statement.

remaining objections are to the treatment of the General Unsecured Creditors and asserted violations of the absolute priority rule under section 1129(b), feasibility concerns, and objections to third-party releases and other provisions contained in the Plan.  To the extent these objections are not entirely resolved by the Revised Plan, this Court should consider them at the Confirmation Hearing.

3.     First, any concerns about the absolute priority rule or treatment of the General Unsecured Creditors have been entirely resolved by the Revised Plan which now provides, due to a further and significant contribution by AES, 100% recovery for Allowed General Unsecured Claims in Class 4, and which is fully described in the Revised Disclosure Statement. *Revised Disclosure Statement*, Articles I & II, Section 2.3(c)-(d).  More specifically, the Revised Plan provides that all Allowed General Unsecured Claims will either (i) be paid in full in cash, (ii) ride through Unimpaired (with contribution support from AES), or (iii) be expunged and disallowed or estimated at zero for purposes of distribution (all of which creditors have submitted themselves to this Court's jurisdiction by filing Proofs of Claim).[3]  *Revised Disclosure Statement*, Article II, Section 2.2(c)-(d).[4]

4.     With Class 4 now receiving a 100% recovery under the Revised Plan, and Class 5 and 6 being permitted to vote, the absolute priority rule found in section 1129(b) of the Bankruptcy Code is unlikely to be triggered as the Holders of Claims in Classes 5 and 6 are parties to the Restructuring Support Agreement and will vote in favor of the Revised Plan.[5]  As such, any

---

[3] AES is providing both approximately $300,000 in cash to pay Allowed General Unsecured Claims plus a $10 million indemnity for certain contingent claims, should such contingent claims become Allowed General Unsecured Claims under the Revised Plan.

[4] The description of the Revised Plan and Revised Disclosure Statement in this Reply and Joinder are subject to and limited by the terms of the Revised Plan and Revised Disclosure Statement.

[5] Under the Revised Plan, Class 5 consists of "DIP Claims" held by AES Andes, S.A. Under the Restructuring Support Agreement (as amended), AES Andes, S.A., as Sponsor, shall vote the Claims in the Class 5 in favor of the Plan.  *See* Restructuring Support Agreement § 1.05.  Similarly, Class 6 consists of "Strabag's Other

determination of whether the absolute priority rule (or any other portion of section 1129(b)) is applicable (let alone violated) needs to wait until voting has been completed and the Revised Plan is considered at the Confirmation Hearing. It is not an issue for the Disclosure Statement Hearing. *See In re Monroe Well Serv.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (holding that "there is no need at [the disclosure statement hearing] to address the absolute priority rule or the best interest of creditors test, other than to hold that these concepts are properly explained in the disclosure statement.").

    5.  Second, the overwhelming majority of the Committee's objections are, at most, premature objections to the feasibility of the Revised Plan. Although dressed up in many different ways, the feasibility objections include concerns raised about (i) the Restructuring Support Agreement, *see Objection* ¶¶ 43-49, (ii) enforcement of the Revised Plan abroad, *see Objection* ¶¶ 52-58, (iii) claims concerning water rights, *see Objection* ¶¶ 68-70, (iv) hydrological details of the ongoing Project, *see Objection* ¶¶ 71-72, and (v) future debt servicing obligations, *see Objection* ¶¶ 73-74.

    6.  Many of these objections have already been resolved through the modifications found in the Revised Plan. To the extent that any remain outstanding, they are all issues that should be left for determination at the Confirmation Hearing because none of these feasibility objections meets the significant burden of establishing that the Plan is "patently unconfirmable." *See Monroe Well.*, 80 B.R. at 333 (observing that the "patently unconfirmable" standard as requiring an objecting party to demonstrate that the Plan, on its face, "could not possibly be confirmed"). Courts in the Third Circuit find plans to be "patently unconfirmable"

---

Claims" held by Strabag. Under the Restructuring Support Agreement (as amended), Strabag, as a Consenting Creditor, shall vote the Claims in the Class 6 in favor of the Plan. *See* Restructuring Support Agreement § 1.03.

4

only "where (1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154–55 (3d Cir. 2012) (internal quotations omitted).  A party raising this objection bears the heavy burden of proving, as a matter of law, that the plan "is so fatally flawed that confirmation is impossible." *In re U.S. Brass Corp.*, 194 B.R. 420, 428 (Bankr. E.D. Tex. 1996).  The Committee has not met that burden here.

       7.      Additionally, bankruptcy courts generally do not hear confirmation disputes at disclosure statement hearings because those hearings lack the evidentiary record necessary to determine confirmation issues.  *See, e.g., In re Quigley Co.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the debtor's disclosure statement despite finding that questions existed regarding good faith, improper voter manipulation, and voter designation because such questions were "confirmation issues that require an evidentiary hearing").  For this reason, "[o]nly where the disclosure statement on its face relates to a plan that cannot be confirmed" is it appropriate to dismiss a proposed plan prior to the solicitation of votes; "otherwise, confirmation issues are left for later consideration." *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (emphasis in original).  AES is confident that the Debtors will be able to demonstrate that the Revised Plan is feasible under section 1129(a)(11) of the Bankruptcy Code at the Confirmation Hearing, and these objections should be reserved until then.

       8.      Third and finally, the Committee asserts that AES, as parents of the Debtors, may be potentially responsible for various cost overruns or is otherwise not entitled to releases under the Revised Plan, *see Objection* ¶¶ 59-67.  Putting aside the fact that the allegation that AES is somehow responsible for cost overruns due to, among other things, (a) the shifting

hydrological and market factors detailed in section 5.1 of the Revised Disclosure Statement or (b) the liquidity challenges and contingent claims detailed in section 5.2 of the Revised Disclosure Statement, are without any basis in fact, the reasons behind such cost overruns are, as evidenced by the immediately prior citations, adequately described in the Revised Disclosure Statement.

9. Additionally, as explained above, the Committee's objection to the releases for the benefit of AES under the Plan are confirmation objections and do not demonstrate that the Revised Plan "is so fatally flawed that confirmation is impossible." *See In re U.S. Brass Corp.*, 194 B.R. at 428. Thus, these objections are not a basis to deny approval of the revised Disclosure Statement. And once again, AES is confident that the Debtors will demonstrate at the Confirmation Hearing that the various releases and injunctions are integral to the Debtors' restructuring under the Plan, and AES will have made substantial contributions in exchange for any such releases.[6]

10. For all of these reasons, AES submits that the Court should overrule all remaining objections of the Committee and approve the Revised Disclosure Statement.

---

[6] In addition to the commitment of approximately $300,000 in cash and an indemnity of $10 million to ensure the payment of 100% of the Allowed Amounts of the Class 4 General Unsecured Claims (as set forth more fully in the Revised Plan), the contributions of new value being made by AES under the Revised Plan include: (i) the provision of Exit and Working Capital Facilities at a 4.0% interest rate, (ii) the wavier of all commitment fees on the Exit and Working Capital Facilities, (iii) the waiver of any unused line fee on the Working Capital Facility, (iv) the waiver of rollover fees on the DIP Facility, (v) the deferral of interest payments on the Exit Facility until April 2023, and (vi) the deferral of amortization payments on the Exit Facility until July 2023. In total, these substantial and below-market concessions are estimated to represent a new value contribution between $4.5 million and $28.8 million, with a midpoint estimate of $16.9 million.

| | |
|---|---|
| Dated: April 4, 2022<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Daniel B. Butz*<br>Derek C. Abbott (DE Bar No. 3376)<br>Curtis S. Miller (DE Bar No. 4583)<br>Daniel B. Butz (DE Bar No. 4227)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email:    dabbott@morrisnichols.com<br>            cmiller@morrisnichols.com<br>            dbutz@morrisnichols.com<br><br>*Counsel for AES Andes, S.A. and Norgener Renovables, SpA* |