1            UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF DELAWARE
2

3   IN RE:                    .  Chapter 11
                              .  Case No. 21-11507 (KBO)
4   ALTO MAIPO DELAWARE, LLC, .
    et al.,                   .  (Jointly Administered)
5                             .
                              .  Courtroom No. 3
6                             .  824 Market Street
                   Debtors.   .  Wilmington, Delaware 19801
7                             .
                              .  Tuesday, April 26, 2022
8   . . . . . . . . . . . . . .  11:01 a.m.

9                TRANSCRIPT OF ZOOM HEARING
           BEFORE THE HONORABLE KAREN B. OWENS
10              UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:          Sean T. Greecher, Esquire
                              YOUNG CONAWAY STARGATT & TAYLOR, LLP
13                            Rodney Square
                              1000 North King Street
14                            Wilmington, Delaware 19801

15                            -and-

16                            Luke A. Barefoot, Esquire
                              CLEARY GOTTLIEB STEEN
17                              & HAMILTON, LLP
                              One Liberty Plaza
18                            New York, New York 10006

19  (APPEARANCES CONTINUED)

20  Audio Operator:           Lisa Brown, ECRO

21  Transcription Company:    Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.

1   <u>APPEARANCES (CONTINUED)</u>:

2   For the Senior Secured
     Lenders:                Andrew R. Rosenblatt, Esquire
3                            NORTON ROSE FULBRIGHT US, LLP
                           1301 Avenue of the Americas
4                            New York, New York 10019

5   For AES Andes and
     Norgener Renovables:        Derek C. Abbott, Esquire
6                            MORRIS, NICHOLS, ARSHT
                             & TUNNELL, LLP
7                            1201 North Market Street
                           16th Floor
8                            Wilmington, Delaware 19899

9   For Cerberus FSBA
     Corporate Credit
10   Fund, L.P.:              Brian M. Resnick, Esquire
                           DAVIS POLK & WARDWELL, LLP
11                            450 Lexington Avenue
                           New York, New York 10017
12

     For the Official
13   Committee of
     Unsecured Creditors:        Sam J. Alberts, Esquire
14                            DENTONS US, LLP
                           1900 K Street, NW
15                            Washington, DC 20006

16   For Minera Los
     Pelambres:              James L. Bromley, Esquire
17                            SULLIVAN & CROMWELL, LLP
                           125 Broad Street
18                            New York, New York 10004

19

20

21

22

23

24

25

1                               INDEX

2  MOTIONS:                                              PAGE

3  Agenda
   Item 1:    SEALED - Debtors' Motion for Entry of an Order      5
4             Pursuant to Sections 363 and 365 of the
             Bankruptcy Code Approving Assumption of
5             Agreement With Minera Los Pelambres
             [D.I. 349, 3/10/22]
6
             Court's Ruling:                           57
7

8  Agenda
   Item 2:    SEALED - Debtors' Motion for Entry of an Order     41
9             (I) Enforcing the Automatic Stay (II) Declaring
             Void Ab Initio Any Purported Termination of the
10            Agreement by MLP, and (II) Granting Related
             Relief [D.I. 351, 3/10/22]
11
             Court's Ruling:                           57
12

13  Agenda
    Item 3:    Debtors' Motion for Entry of an Order (I)          4
14             Enforcing the Automatic Stay Against Manzano
             and (II) Granting Related Relief
15             [D.I. 485, 4/12/22]

16             Court's Ruling:                          --

17
   Agenda
18  Item 4:    Debtors' Motion for Entry of an Order Pursuant      4
             to Sections 363 and 365 of the Bankruptcy Code
19             Approving Assumption of Agreement with Manzano
             [D.I. 487, 4/12/22]
20
             Court's Ruling:                          --
21

22  Transcriptionist's Certificate                        66

23

24

25

1          (Proceedings commenced at 11:01 a.m.)

2               THE COURT:  Good morning, parties.  This is Judge

3    Owens.  We are gathered for an omnibus hearing in Alto Maipo.

4               Can you all hear me?

5               COUNSEL:  We can, Your Honor.

6               THE COURT:  Okay.  Thank you very much.

7               Okay.  We're here for an omnibus hearing in Alto

8    Maipo.  We have a series of items scheduled to go forward.

9    Why don't I turn the virtual podium over to the debtors and

10   you can walk me through today's agenda.

11              MR. GREECHER:  Yes, thanks.  Good morning, Your

12   Honor.  Sean Greecher from Young Conaway, on behalf of the

13   debtors.

14              We did file yesterday, an amended agenda; it's at

15   Docket Number 537.  The amended agenda reflects a few

16   additional matters that were filed by various parties.  It

17   also reflects the adjournment of the matters relative to the

18   Manzano community parties.  Those matters, Numbers 3 and 4 on

19   this agenda, will be heard on April 29th.  And we thank Your

20   Honor for the accommodation in that regard.

21              With that, Your Honor, I would propose to just

22   jump into Matter 1, which is the debtors' motion to assume

23   the Minera Los Pelambres agreement.  And for that, I would

24   turn things over to Mr. Barefoot.

25              THE COURT:  Okay.  Thank you, Mr. Greecher.

1          Mr. Barefoot, welcome.

2          MR. BAREFOOT:  Good morning, Your Honor.

3          Luke Barefoot from Cleary Gottlieb Steen &

4    Hamilton for the debtors in possession.

5          Your Honor, as Mr. Greecher mentioned, we have two

6    items on the agenda this morning:  the debtors' motion to

7    assume the power purchase agreement with Minera Los Pelambres

8    that was originally filed on March 10th at Docket Item 349

9    and the debtors' related motion to enforce the automatic

10   stay, also filed on March 10th at Docket Item 352.

11         Your Honor, the agreement that these motions

12   relate to, a long-term power purchase agreement with MLP, is

13   central to the debtors' reorganization efforts and is the

14   core of their business plan, as it secures MLP's obligations

15   to purchase power from the debtors' hydroelectric project on

16   favorable, predictable, and long-term terms.

17         In terms of how we would propose to proceed, Your

18   Honor, subject to your views, I would propose to provide a

19   brief introduction on the merits of the assumption motion and

20   take care from an evidentiary perspective, admitting into

21   evidence the testimony that the debtors would rely on in

22   support of the motions, and then turn to the only outstanding

23   objection, which is the personal jurisdiction objections

24   asserted by MLP that have now been extensively briefed by the

25   parties.

1          THE COURT:  Okay.  I actually do have a problem

2     with that procedure.  We're here on just the limited

3     threshold question of whether I can exercise, or excuse me,

4     whether it's appropriate to decide the motions without the

5     presence of MLP, having been decided.  So, that's the legal

6     issue that's squarely before me and the merits are not at

7     this point, so I will not move any evidence -- move any of

8     the declarations into evidence at this time.

9          MR. BAREFOOT:  Understood, Your Honor.

10         Then, in that light, what I would propose is that

11    the debtors and the parties that are supporting the debtors

12    would begin with argument on the personal jurisdiction

13    question and then turn it over to Mr. Bromley, while

14    reserving reply?

15         THE COURT:  That would be perfect.  Thank you.

16         MR. BAREFOOT:  So, Your Honor, as we set it out at

17    the beginning, the sole issue that is before the Court and

18    the sole objection to entry of the orders is MLP's assertions

19    on personal jurisdiction.  And to set the stage there, I

20    would like to begin with the frameworks of Section 365 and

21    541, which are well established.  Section 365 requires that,

22    one way or the other, the debtors assume or reject in their

23    business judgment, all executory contracts prior to

24    confirmation.

25         When the debtors exercise that business judgment

1   to assume a contract, the Court is required to determine

2   under Section 365(b), whether there are any defaults under

3   the agreement, and if there are, to provide for cure of those

4   defaults and adequate assurance of future performance.

5          In turn, Section 541 provides that the debtors'

6   estate consist of all legal and equitable interests of the

7   debtor and property, wherever located, and pursuant to

8   Section 1334 of Title 28, the Court is vested with

9   jurisdiction to decide motions to assume, as matters arising

10  under Title 11.

11         While MLP has framed the question before the Court

12  in terms of due process, there can be no question that MLP

13  has had and has what due process requires:  notice and an

14  opportunity to be heard.  Presented with that opportunity,

15  MLP made the strategic decision not to engage or object with

16  the merits of assumption or the merits of whether a default

17  exists.

18         MLP is a sophisticated party represented by

19  capable counsel and that is their entitlement to make that

20  decision.  But what MLP asked the Court to do today is to

21  allow their strategic choice to rely on personal jurisdiction

22  objections to trump the debtors' entitlements under Section

23  365 and to make new law that the Court must engage in an

24  individualized determination on personal jurisdiction every

25  time the debtor exercises its business judgment to assume a

1  contract.

2          There is simply no support in the tomes of case

3  law on Section 365 that squarely supports that assertion.

4          THE COURT:  You would agree with me, Mr. Barefoot,

5  that it's a basic of civil procedure that I have subject-

6  matter jurisdiction, but as well, I need jurisdiction over

7  the thing or I need jurisdiction over the person.  You would

8  agree with me on that?

9          MR. BAREFOOT:  Agreed, Your Honor.

10          THE COURT:  Okay.

11          MR. BAREFOOT:  I agree.  And that is a disjunctive

12  choice.

13          THE COURT:  Okay.

14          MR. BAREFOOT:  You do not require both.  If you

15  have jurisdiction over the thing, you do not require

16  jurisdiction over the person, as you can proceed *in rem*.

17          THE COURT:  Okay.  So the idea that only MLP is

18  only entitled to notice and an opportunity to be heard is not

19  exactly a correct statement of the law, is it?

20          MR. BAREFOOT:  Well, in terms of -- Your Honor, I

21  was framing that in terms of their framing of the issue that

22  this is an issue of due process and that's what due process

23  requires.

24          THE COURT:  I think the Fifth Amendment goes to

25  more than notice and an opportunity to be heard, doesn't it?

1          MR. BAREFOOT:  That's fair, Your Honor.

2          But I think, turning squarely to Your Honor's

3  question, the Court clearly has jurisdiction here over the

4  thing; the thing being the debtors' rights under the power

5  purchase agreement.

6          THE COURT:  Okay.

7          MR. BAREFOOT:  And, Your Honor, if I could just

8  elaborate a bit on MLP's position and the practical import

9  they would have, if the Court accepted MLP's assertion

10  foreign counterparties everywhere could effectively tie the

11  Court's hands by making a strategic choice that rather than

12  appear and be heard on the merits, whether it be as to

13  whether there's default, whether it be as to whether there's

14  an integration issue, whether there is cure required, all of

15  those matters, they could avoid a determination on and,

16  instead, rest on personal jurisdiction assertions in an

17  effort to block the debtors' ability to assume what would be

18  an agreement that's beneficial to the debtors' estates.

19          The consequences of that kind of a ruling cannot

20  be understating, particularly, in large cross-border cases

21  such as these.  MLP's arguments would transform what is

22  intended to be a summary proceeding under 365, into a complex

23  series of potentially hundreds or even thousands of

24  minitrials, where the Court would be required to make one-by-

25  one determinations on personal jurisdiction with each of the

1  debtors' counterparties.  MLP's assertions, if accepted and

2  taken to that logical conclusion, would fundamentally alter

3  the inquiry the Court is required to make and grind the

4  "assumption and rejection" process to a halt.

5          Going straight to, Your Honor, the touchstone for

6  MLP's arguments, it's the Supreme Court's decision in Shaffer

7  v Heitner.  Courts have made clear that Shaffer only applies

8  to *quasi in rem* proceedings, not *in rem* proceedings, such as

9  this bankruptcy case, where the Court has core, *in rem*

10 jurisdiction over all the legal and equitable interests of

11 the debtor and property, wherever it's located.

12         As an initial matter, Your Honor, the scope of

13 Shaffer is made clear by the fact that the Supreme Court has

14 gone on to decide two subsequent cases:  the 2006 decision in

15 Central Virginia v Katz and the 2004 decision in Tennessee

16 Student Assistance v Hood, where it clearly held that

17 bankruptcy proceedings are fundamentally *in rem* actions,

18 without so much as a citation to Shaffer.

19         THE COURT:  You would agree we me --

20         MR. BAREFOOT:  Indeed --

21         THE COURT:  -- that those cases -- you would agree

22 with me that those cases seem to imply that the *in rem*

23 jurisdiction isn't the starting and endpoint, however.  I

24 mean, those cases --

25         MR. BAREFOOT:  Well, Your Honor --

1          THE COURT:  -- imply that a Bankruptcy Court could

2   overstep *in rem* jurisdiction -- I shouldn't even say, "*in rem*

3   jurisdiction" -- just an *in rem* action is not the start and

4   the end; that there could be an *in rem* action coupled with an

5   *in personam* action.

6          MR. BAREFOOT:  There certainly could be, Your

7   Honor, and that would be an example, such as in many of the

8   cases that MLP has cited to where there's an adversary

9   proceeding, there's a request for a declaratory judgment,

10  there is a request for a monetary judgment against the

11  counterparty.

12         But the debtors here are not seeking any of those;

13  the debtors are simply seeking authority to assume the

14  contract in the exercise of their business judgment.  And as

15  part and parcel of that, it's a required element of 365 that

16  the Court make a determination about whether defaults exist.

17         THE COURT:  Well, the Orion Court would seem to

18  suggest that that's not the requirement and that's not how I

19  should analyze a motion to assume.  And other courts that

20  have accepted Orion's position actually disagree with that

21  approach.

22         MR. BAREFOOT:  Your Honor, I'd only note on that

23  point that Orion is fundamentally focused on jury trial

24  rights.  No one has asserted that jury trial rights are at

25  issue here and, in fact, the Third Circuit in the Billing v

1 Ravin, Greenberg decision, which is at 22 F.3d 1242,

2 criticized Orion and said that the Court did not engage in an

3 in-depth Seventh Amendment analysis and that it found the

4 observations in Orion unpersuasive.

5        THE COURT:  Well, wouldn't it have parallels to

6 this proceeding?  Orion was concerned with constitutional

7 rights.  In that case, the issue was the jury trial, but here

8 it's due process.

9        So how -- yes, while it is not on point, exactly,

10 you can extract the fundamentals from that case and apply

11 them to this case, couldn't you?

12        MR. BAREFOOT:  Your Honor, I think if we look at

13 the lower court decisions that apply to Shaffer v Heitner,

14 it's very clear that the courts have drawn a bright-line

15 around *quasi in rem* proceedings and distinguishes them from

16 *in rem* proceedings.

17        If you look at the Ninth Circuit decision in

18 United States v Obaid, it provides a thorough analysis of

19 Shaffer and held and expressed terms that Shaffer is limited

20 to *quasi in rem* proceedings and not *in rem* proceedings, and

21 it expressly gave bankruptcy proceedings as an example of

22 purely *in rem* proceedings.

23        And that's entirely consistent, Your Honor, with

24 the District of Delaware decision in Forest Labs.  Forest

25 Labs held, and I'm quoting:

1          <u>Shaffer</u>, however, addressed the vitality of *quasi*

2   *in rem* jurisdiction; it does not address the question of

3   consent to personal jurisdiction, nor the concept of general

4   jurisdiction.

5          And while MLP argues that <u>Forest Labs</u> from the

6   District of Delaware is inapposite because there, the

7   defendant consented to personal jurisdiction, that's not

8   necessary to the Court's holding that <u>Shaffer</u> only applies to

9   *quasi in rem* proceedings.

10         THE COURT:  And how would you describe a *quasi in*

11  *rem* proceeding?

12         MR. BAREFOOT:  Your Honor, I think <u>Shaffer</u> is the

13  prototypical example, right.  As a matter of Delaware law,

14  the shares in that case were located within the District of

15  Delaware, but the parties who owned those shares were not.

16  So, the Court was required to make findings that it could not

17  execute because those parties were not within its

18  jurisdiction.

19         THE COURT:  Did the findings seek, did they seek

20  to apply the findings to assets outside of Delaware?

21         MR. BAREFOOT:  I don't believe so, Your Honor,

22  because I think as a statutory matter, the shares at issue

23  are, as a matter of Delaware law, always located in Delaware,

24  no matter where they're certificated or who the holders of

25  those shares are.

1          But here, Your Honor, it's not ambiguous and, you

2    know, MLP has made a lot of bones about the fact that this is

3    a contract, that it's intangible rights under a contract,

4    rather than, you know, something like a bank account or a car

5    that is tangible.  That is really not consistent with the

6    current concept of the scope of the debtors' property under

7    541.  And the case law that we cited makes clear that

8    intangible rights, such as the debtors' rights under the

9    contract with MLP are part of the debtors' estate that is *in*

10   *rem* before the Court.

11         Your Honor, if I could just turn to, very briefly,

12   addressing some of the additional decisions on the Shaffer

13   decision that MLP cited to in its surreply?

14         THE COURT:  That would be great.  Thank you.

15         MR. BAREFOOT:  So, Your Honor, most of the other

16   decisions that MLP cites to in its surreply brief are

17   inapposite because they are *in personam* actions that were

18   either adversary proceedings or district court civil actions

19   where the relief was obviously *in personam*, because it sought

20   a judgment against a defendant.

21         We're not seeking any such a judgment here.  As to

22   the Second Circuit's decision that they cite in LiButti --

23   that's L-i-B-u-t-t-i -- v United States.  That arose in the

24   context of an action by the IRS to quiet title over property.

25   And the only court holding there was the unremarkable

1  preposition that, as Your Honor observed, the Court either

2  neither *in rem* jurisdiction over the property or it needed *in*

3  *personam* jurisdiction over the defendants.  And it held that

4  the property was not within the jurisdiction of the court and

5  that the defendants had a lack of minimum contacts.

6        There's nothing in <u>LiButti</u> that holds or suggests

7  that bankruptcy courts entering assumption orders must also

8  have personal jurisdiction over contract counterparties.

9        Similarly, Your Honor, as to the Fourth Circuit's

10  decision in <u>United States v Batato</u>, and that's B-a-t-a-t-o,

11  the Court was clear that it was only assuming, without

12  deciding, that estate-based, minimum contacts approach was

13  appropriate in civil enforcement actions.  Not only is that

14  from outside of the circuit and in a different context, but

15  it didn't actually make a decision about whether <u>Shaffer</u>'s

16  minimum contacts analysis applied; it only assumed that it

17  did.

18        Your Honor, I'd like to turn to the two cases that

19  I think are the closest to being on point as to the square

20  question before the Court.  On MLP's side, and that's a thin

21  stack, because I think this is, the debtors would concede,

22  relatively unprecedented territory MLP is asking the Court to

23  wade into.

24        On MLP's side, I think the closest they get

25  without actually hitting it on the mark, is the 1983 decision

1  from the Western District of Missouri in the Global

2  International Airways case.  In that case, however, Your

3  Honor, the Court does not actually wrestle with the question

4  of whether personal jurisdiction over the contract

5  counterparty was required.

6        The procedural posture of that case was that the

7  parties framed the question for the Court not as whether

8  jurisdiction over the contract counterparty was required as a

9  prerequisite to assumption; instead, the Court only answered

10 the question that was put to it by the parties, which is

11 whether the Court had jurisdiction over Air Canada, as an

12 instrumentality of a foreign state.

13       I'd also note, Your Honor, that that case is

14 almost 40 years old and was decided only a few years after

15 the Bankruptcy Code was enacted and so, it lacked the benefit

16 of the precedent that was developed over the intervening

17 decades.

18       The case that we think is most squarely on point

19 and that the debtors would urge the Court to look to is the

20 one that's before the Court that actually decides the

21 question of whether personal jurisdiction over a lease

22 counterparty is required to enter an assumption order, and

23 that's the more recent decision in Sae Young Westmont from

24 the Northern District of Illinois in 2002.  In that case,

25 Your Honor --

1              THE COURT:  But that case -- I've read it; I've

2    analyzed it -- I'm not sure if that case is helpful to you

3    because that case just simply asked the Court to decide

4    whether it could assume and assign, whether the debtor could

5    assume and assign a contract.

6              There were no findings that were made in an order

7    about defaults.  There were no findings made in an order

8    about cure.  You would agree with me that that seems to be,

9    more squarely, the question that I have before me today?

10             MR. BAREFOOT:  That's correct, Your Honor.

11             And I don't think there were -- there was a

12   request in that case from the debtor to make those findings.

13             I think we have established -- and I don't think

14   it's controversial -- that that is an element of 365(b)

15   that's a prerequisite to the statute.  And that's why the

16   debtors have been asked -- have asked the Court to make those

17   findings.

18             Obviously, if Your Honor was so persuaded, you

19   know, there could be modifications made to the order to

20   comport with Sae Young Westmont.  But we do think that,

21   regardless of whether Sae Young Westmont squarely addressed

22   the question of 365(b) cure, Sae Young Westmont does clearly

23   say that the Court does not need jurisdiction over the state

24   counterparty and said that the nature of *in rem* jurisdiction

25   was to determine the disposition of the property and that by

1 doing that and entering an order authorizing an assumption

2 and assignment, there was no way that the Court was

3 transforming the nature of the proceeding into an *in personam*

4 proceeding.

5          THE COURT:  How would you --

6          MR. BAREFOOT:  And that's the --

7          THE COURT:  How would you define what an *in*

8 *personam* proceeding is?

9          MR. BAREFOOT:  I would say it's a proceeding where

10 the relief that -- where there is specific relief being

11 sought to require a judgment or performance from the adverse

12 party.  And, Your Honor, here, we're simply seeking to, as a

13 matter of 365, assume the agreement because I think we've

14 made the case that it is in the debtors' business judgment to

15 do so.

16          THE COURT:  Okay.  I understand your position but

17 thank you for answering my -- that last question.

18          MR. BAREFOOT:  Just going very briefly back to Sae

19 Young Westmont, you know, I think it's important, Your Honor,

20 that that case also expressly rejected the assertion that the

21 assignment of the lease derived from *in personam* jurisdiction

22 and it, instead, said that the jurisdiction to assume and

23 assign the lease derived from the Court's jurisdiction, not

24 over the state, which was the lease counterparty, but from

25 jurisdiction over the debtors' estate.

1        Your Honor, as I said, the debtors concede that

2   given the relatively unprecedented nature of the holding that

3   MLP seeks, there's not a great deal of case law where courts

4   have directly wrestled with this question.  But the debtors

5   would respectfully submit that the closest guidance that the

6   Court has is not only in the cases that expressly distinguish

7   Shaffer v Heitner as only applicable to *quasi in rem*

8   proceedings, but the Sae Young Westmont case, which expressly

9   decides that personal jurisdiction over the contract

10  counterparty was not a prerequisite to entry of an assumption

11  order.

12        THE COURT:  Okay.  Thank you, Mr. Barefoot, and

13  thank you for the colloquy back-and-forth, via Zoom.  It's

14  difficult, quite frankly, to engage in any back-and-forth,

15  but thank you for attempting that with me.

16        All right.  I know that other parties have filed

17  joinders in support of the debtors' position and I'm happy to

18  hear from them at this time before I turn the podium over to

19  Mr. Bromley on behalf of MLP.

20        MR. ROSENBLATT:  Good morning, Your Honor.

21        It's Andrew Rosenblatt from Norton Rose Fulbright.

22  I'm here on behalf of the senior secured lenders under the

23  common terms agreement.

24        Your Honor, we did file joinders to the debtors'

25  original motion to assume the PPA, the motion to enforce the

1  stay against MLP, and then the debtors' response to the

2  personal jurisdiction, that is the subject of today's

3  hearing.

4           Our latest joinder regarding personal

5  jurisdiction, I believe, is at Docket 526.  Your Honor, I'd

6  note that Strabag SpA is also a party to that joinder.

7           I will be brief, as I agree with pretty much

8  everything Mr. Barefoot said.  I see no reason to just repeat

9  what he said.

10          To me, though, Your Honor, this is not all that

11  complicated.  I think that what MLP has done, because it has

12  to, in order to even make a colorable argument, is to try and

13  turn Alto Maipo's assumption motion into something that it's

14  not.  Our view is that the motion is very straightforward;

15  it's simply a motion to assume a contract that is

16  unquestionably property of the estate and property over which

17  the Court, unquestionably, has *in rem* jurisdiction under 28

18  U.S.C. 1334.

19          Importantly, as Mr. Barefoot, I think he alluded

20  to, the debtors are not seeking to amend the PPA.  They're

21  not seeking to impose any obligations over MLP that do not

22  otherwise exist under the contract.  They're not seeking to

23  modify the PPA in any way, nothing of the sort that would

24  impact or affect MLP's, quote, particularized rights or

25  obligations.

1             And I think that's the distinction; that's when

2   you invoke *in personam* jurisdiction, when you're imposing

3   obligations on a party and you're not just adjudicating, you

4   know, the rights of parties in debtors' property.  To me,

5   Your Honor, their argument makes no sense because every

6   assumption motion -- and I stress the word "every" here --

7   requires the same findings.  And Mr. Barefoot said it's a

8   statutory requirement under Section 365 for the Court to

9   determine if a default exists.

10            So, how is this motion different than any other

11  assumption motion?  It's not and --

12            THE COURT:  Because there's a contract

13  counterparty that does not submit to the jurisdiction of my

14  court and --

15            MR. ROSENBLATT:  Yeah, but Your Honor --

16            THE COURT:  -- and --

17            MR. ROSENBLATT:  Yeah?

18            THE COURT:  -- every omnibus motion to assume or

19  reject typically does not include findings about defaults and

20  cures -- defaults of -- over parties, when we know there's a

21  dispute.

22            MR. ROSENBLATT:  Well, Your Honor, they have the

23  right to come here and contest that on the merits.  They're

24  making a decision not to come in here, okay.  That is of

25  their own volition.

1          But, you know, to me, the Sae Young case actually

2   is on all fours here, Your Honor, because it clearly -- it

3   clearly held that the Court has the authority to enter an

4   assumption order and it's based on the Court's *in rem*

5   jurisdiction.  I think the case is right on point because

6   there you had a nondebtor, and I believe the nondebtor did

7   allege defaults, Your Honor, and also a lack of personal

8   jurisdiction, and yet, the Court expressly found that it had

9   *in rem* jurisdiction to rule on the assumption motion and that

10  was all that was needed.

11          THE COURT:  But the Court in Sae Young

12  specifically said -- let me find my notes:

13          Number one:  The debtor didn't seek to litigate

14  any disputes it may have with the state before the Bankruptcy

15  Court.  Quote, Its rights and obligations under the lease

16  were not adjudicated, end quote.

17          There was no dispute.  There was no judgment on

18  the merit of any dispute between the parties.

19          The findings here, were you -- are they not -- are

20  they not an adjudication of the disputes?

21          MR. ROSENBLATT:  Well, Your Honor, I do believe in

22  Sae Young, though, that there -- that the nondebtor did

23  allege defaults, yet the Court --

24          THE COURT:  Just in passing.

25          MR. ROSENBLATT:  -- you know, yet the Court --

1          THE COURT:  Just in passing, in the briefs.

2          MR. ROSENBLATT:  Right.  But, Your Honor, still,

3    the inherent nature of what the debtor, the relief they're

4    seeking is purely *in rem* relief because they're not imposing

5    any obligations on MLP.  This is a dispute centered solely

6    around the parties' rights with respect to the debtors'

7    property.

8          If the debtors were coming in here and they were

9    saying:  Your Honor, we want to assume this contract; we want

10   to amend it; we want to -- we're modifying this; we're

11   imposing obligations on MLP that don't otherwise exist, Your

12   Honor, that's when *in personam* jurisdiction is necessary.

13   That's a dispute that imposes obligations on a nondebtor

14   party.

15         This, however -- and, Your Honor, again, the

16   findings that the debtors are asking you to make regarding

17   default, that is a requirement under the statute, okay.  That

18   essentially -- whether or not it's contested or not, in any

19   other 365 assumption motion, you're -- a Court is going to

20   have to make those same findings, whether it's contested or

21   not.  A Court has to inherently find that there is no default

22   or if there is a default, that it's cured.

23         So, to me, Your Honor, the larger point is that if

24   MLP's argument has merit, then every assumption motion will

25   require a Court to find personal jurisdiction over the

1  nondebtor party.  And, Your Honor, I do think that this has

2  broader implications, because I think it would create

3  practical barriers that would prevent, particularly, foreign

4  debtors from using Chapter 11.

5           And, Your Honor, I know that lawyers are quick to

6  throw out, you know, a slippery-slope argument.  They like to

7  point out a parade of horribles that would occur from a --

8  not a legal position.  But in this case, to me it's very

9  clear that their argument would strip away a debtor's

10 fundamental right under Section 365 and discourage foreign

11 debtors from using Chapter 11 in a way that was contemplated

12 by Congress; in fact, to me, it's inconsistent with Congress'

13 mandate.

14          You know, we cited in our joinder, Section 109 of

15 the Bankruptcy Code, which are the debtor eligibility

16 requirements and, you know, there really are none, Your

17 Honor.  I think it's pretty clear that if Congress wanted to

18 restrict foreign debtors who logically have foreign creditors

19 and foreign contract counterparties, you know, from using

20 Chapter 11, then they would have said so.

21          But it makes no sense to me, you know, where

22 Congress allows foreign debtors to frequently avail

23 themselves of Chapter 11, but then to impose jurisdictional

24 limitations that essentially strip away their key rights and

25 protections.  So, I don't think that that lines up.

1          Your Honor, the final --

2          THE COURT:  You would agree with me -- you would

3   agree with me that I don't have the ability to affect

4   property, okay -- or I shouldn't -- let me not use the word

5   "affect."  I need the assistance of foreign courts in order

6   to fully realize my orders over assets or people located in

7   foreign jurisdictions.  That's why we have ancillary

8   proceedings that get opened and foreign courts recognize my

9   order.  I just don't sit here as adjudicator of the entire

10  world.

11          Now, it gets cumbersome.  Like you pointed out,

12  there's some difficulties in fully realizing the Code to its,

13  I guess, fullest potential.  And that's why we've developed

14  cross-border procedures and laws to try to marry due process

15  issues with the Bankruptcy Code and the fact that we're in a

16  worldwide -- we handle worldwide cases.

17          MR. ROSENBLATT:  Yeah, Your Honor, I think you've

18  gotten that exactly right.  But to me, enforcement is much

19  different than the inherent power of the Court to enter the

20  order in a Chapter 11, which is all that's before the Court

21  today.

22          Enforcement is a different issue.  Whether or not

23  the -- you know, the impact or import of your order,

24  assumption order in Chile is not before the Court.  That is

25  an enforcement issue.  That is an issue that parties will

1 | have to hash out separately.  We have no -- I don't want to

2 | speculate what MLP will do, whether they will respect your --

3 | you know, your order; obviously, thus far, they haven't

4 | respected the Court's orders.  They have violated the stay.

5 | But to me, Your Honor, those are mutually

6 | exclusive issues.  The inapparent power of the Court to enter

7 | an assumption order versus, you know, enforcement of that

8 | order of ruling, and to me, that second issue, that latter

9 | issue is not before the Court today.

10 | Your Honor, the last thing I would say is that,

11 | you know, to me, MLP's -- the rationale and the legal

12 | position that they are taking, it could have serious

13 | implications.  Even just beyond contract assumption is almost

14 | every court order impacts a creditor's rights, *vis-a-vis*, the

15 | debtor and the debtors' property, including confirmation

16 | orders.

17 | I mean, as Mr. Barefoot said, like, what is the

18 | Court to do?  Do you have to go, you know, creditor by

19 | creditor to determine if you have personal jurisdiction over

20 | them to determine if you have the authority or power,

21 | inherent power to even enter, like, a confirmation order?

22 | I mean, I just think that there's a clear

23 | distinction between purely *in rem* jurisdiction -- and to me,

24 | assumption under 365 is a purely *in rem* action.  It does not

25 | rely in any way, shape, or form on *in personam* jurisdiction

1   or *quasi in rem* jurisdiction, which is why we didn't even

2   address those issues, Your Honor.  It's a purely *in rem*

3   issue.

4        If the debtors were imposing obligations on MLP

5   that didn't exist, if the debtors were trying to amend the

6   contract, that would invoke or require *in personam*

7   jurisdiction.

8        Your Honor, I really, truly believe that despite

9   MLP trying to turn this into something it's not, this truly

10  is nothing more than a run-of-the-mill assumption motion.  If

11  MLP believed that they had -- that there was a default and a

12  basis to oppose assumption, then they should have come in

13  here and contested assumption on the merits, Your Honor.

14        They chose not to do that.  They're playing games

15  and their games -- but their gamesmanship doesn't change the

16  limited relief that the debtors are seeking or, more

17  importantly, the power of the Court to grant relief to the

18  debtors.

19        That's really all I have, Your Honor.

20        THE COURT:  Okay.  Thank you.

21        MR. ROSENBLATT:  Thank you.

22        THE COURT:  Okay.  Anyone else?

23        MR. ABBOTT:  Can --

24        THE COURT:  Oh, Mr. Abbott?

25        MR. ABBOTT:  Yes, Your Honor.

1          Derek Abbott, here on behalf of AES Andes and

2  Norgener Renovables.

3          Your Honor, I don't wish the burden the record.  I

4  do think this matter is a little more basic than MLP would

5  have the Court believe and, obviously, a critical issue to

6  these debtors.  But, again, I don't want to repeat what my

7  colleagues have said, and subject to Your Honor's questions,

8  that's all I have.

9          THE COURT:  Okay.  Thank you, Mr. Abbott.  I have

10 no questions for you.

11         Mr. Resnick?

12         MR. RESNICK:  Thank you, Your Honor.

13         This is Brian Resnick from Davis Polk for Cerberus

14 South American Investments, a senior lender to the debtors

15 and a party to the RSA.

16         Your Honor, we also filed a joinder and I just

17 wanted to express our support for everything that

18 Mr. Barefoot and Mr. Rosenblatt said, and other than that,

19 we'll (indiscernible) anything, in case there's a need for a

20 reply.

21         THE COURT:  Okay.  Thank you.

22         Mr. Alberts, did you want to add to the record?

23         MR. ALBERTS:  Your Honor, we -- Sam Alberts on

24 behalf of the official committee of unsecured creditors -- we

25 had filed a pleading in support of the debtors' motion

1  appearing at 381.

2          We had assessed the contract.  We thought that the

3  contract really is a valuable asset of the estate.  I realize

4  that piece of it is not before the Court, and so we will --

5  you know, we've rested on that pleading, itself.

6          THE COURT:  Okay.  I certainly understand the

7  committee's position with respect to the contract.

8          Okay.  Well, Mr. Bromley, I think we have

9  exhausted everyone that is in support of the debtors'

10 position, so why don't I hear from you on the matter.

11         MR. BROMLEY:  Thank you very much, Your Honor.

12         James Bromley on behalf of Minera Los Pelambres,

13 appearing in a limited fashion as set forth in our papers.

14         Your Honor, this is not a complicated issue.  The

15 U.S. Constitution simply does not allow Your Honor to enter

16 the relief requested.  Your subject-matter jurisdiction under

17 28 U.S.C. 1334 certainly extends to property of the estate,

18 but 1334 does not exempt the bankruptcy court or the

19 bankruptcy process from the due process clause of the

20 Constitution or from personal jurisdictional requirements.

21         It does not mean that the Court can grant any

22 relief under the Bankruptcy Code relating to property of the

23 estate without considering the due process rights of affected

24 parties.

25         I agree that there's a unique aspect to this, that

1    these arguments are not made frequently.  And the reason

2    they're not made frequently is that most debtors do not try

3    to do what this debtor is trying to do.

4          We should start with the motion the debtors have

5    filed to assume the power purchase agreement.  Your Honor, it

6    is almost exactly the situation that the Second Circuit

7    addressed in Orion.  Remember, in Orion, the debtors filed

8    two motions or two things.  They filed a motion to assume and

9    an adversary proceeding looking for declaratory relief and

10   certain findings, with respect to the contract.

11         The Court, in Orion, the Bankruptcy Court, Judge

12   Lifland said, I'm going to deal with it all in connection

13   with the motion and I'm going to say that the adversary

14   proceeding is moot.

15         That is what the debtors have done here, Your

16   Honor.  They have loaded all the relief into a motion to

17   assume.  This is not a motion to assume under Section 365

18   that simply seeks a finding that it's in the debtors' best

19   interests to assume the contract.

20         What the debtors are seeking are specific findings

21   under Chilean law, under the contract, with respect to my

22   client and my client's rights.  That is a choice that the

23   debtors have made.

24         That is not the facts that were before the Court

25   in the Sae Young decision and, in fact, they are the facts

1   that were before the Court in the _Orion_ decision.  What we

2   have here, Your Honor, is a fundamental request to effect the

3   particularized rights of my client under a contract -- it is

4   a contract, no question -- that the debtors are parties to.

5            And I'm not going to get into the questions of

6   whether or not a foreign debtor should be filing a case in

7   Delaware; that's not before the Court.

8            But what we're dealing with is the idea that this

9   contract is a Chilean contract.  It is cited in Chile.  It is

10  written in Spanish.  It is governed by Chilean law.  It has a

11  Chilean arbitration provision in it that requires that

12  Chilean arbitrators, three of them, be appointed.

13           Your Honor, everything about this, it is between a

14  hydroelectric power plant located in Chile and a copper mine

15  located in Chile, everything about this, Your Honor, is

16  Chilean.

17           And the debtors consciously decided to file a

18  motion under 365 and not an adversary proceeding.  We have

19  already talked in prior hearings about the problems that that

20  provided, right.  We did not -- this should be, in our view,

21  and we continue to have our view and respectfully disagree

22  with Your Honor, that this should have been brought as an

23  adversary proceeding.  If it had been brought as an adversary

24  proceeding, we think it should have been served, pursuant to

25  appropriate rules.  And, indeed, if we had accepted service

1  under Federal Rules of Civil Procedure, we would have had 60

2  days to respond.

3          But, no, we are proceeding as if this is a motion.

4  We believe, Your Honor, that what is happening and the

5  specific relief that the debtors are seeking is relief that

6  is beyond simply stating that the debtors' business judgment

7  is appropriate in these circumstances.

8          The Court is asked to specifically find and

9  conclude that the commencement of the Chapter 11 cases does

10 not constitute an insolvency event under the agreement.  If

11 you read the agreement, Your Honor, "insolvency event" is a

12 defined term.

13         If you read the letters that were exchanged

14 between myself and Mr. Barefoot and between my client and his

15 client, you will see that the question that is central to the

16 dispute among the parties is whether the commencement of the

17 Chapter 11 proceedings, these Chapter 11 proceedings

18 constituted an insolvency event under the power purchase

19 agreement.

20         The debtors also seek a finding from this Court

21 that the commencement of the Chapter 11 proceedings does not

22 constitute an act of bad faith for purposes of the agreement.

23 Where does the bad faith come from?

24         Well, Your Honor, we have stated in our

25 correspondence, whether it was between Sullivan & Cromwell

1  and Cleary Gottlieb or my client and Alto Maipo or the

2  lenders, that the actions to file this Chapter 11 proceeding

3  constituted bad faith under Chilean law.  That's where the

4  bad faith comes in.

5        So, what the debtors are asking Your Honor to do

6  is to make a finding outside of the four corners of the

7  agreement that Chilean law, generally, would not allow an

8  action for bad faith for purposes of the agreement.

9        Your Honor, these are litigation issues.  These

10  are not issues relating to the determination of whether it's

11  in the best interests of the debtors' estate to assume this

12  agreement.  So, Your Honor, the fundamental nature of the

13  relief being sought means that this is *in personam* relief.

14        And this is where Shaffer v Heitner comes in.

15  First of all, Shaffer, itself, says in Footnote 17, that it's

16  using the term "in rem" to mean both "*quasi in rem*" and "*in

17  rem*."  So, the Ninth Circuit is just flat wrong that Shaffer

18  v Heitner did not deal with -- that it was only related to

19  *quasi in rem*; the Supreme Court, itself, stated that it was

20  using the term "*in rem*" to capture both in Footnote 17.

21        In addition, Your Honor, there are two other

22  Circuits, the Second and the Fourth, which both find that

23  Shaffer v Heitner extends to both, "*in rem*" and "*quasi in

24  rem*" as the Supreme Court said in Footnote 17 of the

25  decision.  But we don't even need to get to Shaffer v

1  Heitner, because the nature of the relief that's being sought

2  is *in personam* relief.  It is also *in personam* relief with

3  respect to the motion to enforce the automatic stay.

4         THE COURT:  So, let me ask you the question I've

5  asked everyone:  What is your definition of *in personam*

6  relief?

7         Because the definitions that I've received so far

8  is, essentially, I have to -- being put in a position to ask

9  or, I guess, impose affirmative relief against your client

10 and I think you disagree with that definition.  And that

11 really is the issue before me:  How do you determine whether

12 something is *in rem* -- is an *in rem* action versus an *in*

13 *personam* action?

14        MR. BROMLEY:  Well, Your Honor, let's talk about

15 what *in rem* and *quasi in rem* means.  So *in rem* means rights

16 with respect to the property *vis-à-vis* the whole world, and

17 *quasi in rem* means rights with respect to the property *vis-à-*

18 *vis* a particular party.

19        Now what we are talking about here, though, is not

20 simply *quasi in rem* or *in rem*, we are looking at litigating

21 the particularized rights of my client.  So the use of the

22 term "affirmative" relief I'm not sure exactly what my

23 colleagues mean by "affirmative."

24        They are asking the court to make a determination

25 that their point of view, in terms of the interpretation of

1  contract, is correct and my client's view is incorrect.  They

2  are seeking to have you litigate this contract and whether or

3  not there's a breach, whether or not there is a right to

4  terminate.  They want you to litigate that issue in your

5  court, Your Honor.  That, I think, is fundamentally *in*

6  *personam* relief.

7        If I was driving a car in New York and I had an

8  accident with a resident of California that's the classic

9  question of whether or not it could be paled into a court in

10 California or whether I should be subject to suit in New

11 York.

12       We are talking about there is not a single

13 instance that can be shown here that indicates that these

14 parties had any expectation to be litigating disputes

15 relating to this contract in any form other than the Chilean

16 arbitration.  And all the debtors have done -- and with all

17 due respect, Your Honor, this is the truth; all they have

18 done is put a deposit in a couple of professionals' accounts

19 and created an LLC on the eve of filing, and they claim that

20 they can magically transform, through 1334, every single

21 issue that relates to my client's contract into a matter that

22 you have the right to determine definitively as a matter of

23 your subject matter jurisdiction under 1334.

24       We simply do not believe that the United States

25 Constitution allows that to occur.  We don't think that this

1  is outrageous.  We don't think that this is outlandish.  We

2  don't think it's perfidious.  We think it is a fundamental

3  baseline rule with respect to all litigation in the United

4  States.

5          To the extent that there is any risk that is

6  presented here, for all of the non-US entities that are

7  accessing the United States and the Chapter 11 process to

8  reorganize their debts, it would bear everyone -- everyone

9  should bear in mind that those cases are here in effect

10 because the counter-parties allow them to be.

11         The financial services industries, the parties

12 that are investors on a worldwide basis are more than

13 comfortable then having US courts litigating issues.  They

14 consent to the jurisdiction of the court.  And in the vast

15 majority I would argue almost, if not all, cases up to this

16 point have not sought to use the US courts to violate the

17 local law of rights of individuals who are not subject to

18 personal jurisdiction of the US courts.  That is why this is

19 a unique case.  It is unique because no debtor has ever tried

20 to cross that line before.  This debtor is trying to cross

21 that line with my client.

22         They knew about this issue from day one.  They

23 could have filed an adversary proceeding on day one, they did

24 not.  They have sought to shoehorn this through Section 365

25 and ask for affirmative relief that is only available through

1  an adversary proceeding.  They have not tried to serve my

2  client under Rule 4.  They have not -- and now they want Your

3  Honor to enter an order that violates my client's due process

4  rights and, frankly, this is the sort of due process issue

5  that will not stop here.  I am not saying this from a threat

6  perspective.

7          The questions is what will we do.  Well we will

8  appeal.  We will appeal and we will go -- and I think this is

9  an issue that would be very appealing, so to speak, pardon

10 the pun, all the way up the chain.  And we --

11         THE COURT:  That certainly is an interesting issue

12 that we have all grappled with; although, all the parties are

13 saying it's simple, it's clear that it is not simple.

14         MR. BROMLEY:  I very much agree, Your Honor.  From

15 a jurisdictional perspective, right, the framework that the

16 US bankruptcy code, and the history of the bankruptcy laws of

17 the United States, and the bankruptcy clause provide are very

18 interesting.

19         All these eleventh amendment cases and, frankly,

20 most of the framework of the conversations that we had today

21 are premised on the idea that 99.9 percent of the day to day

22 work that we do in US bankruptcy courts deals with

23 individuals and corporations who are subject to or

24 voluntarily submit themselves to the jurisdiction of the US

25 court.

1    This is a situation where there is a company that

2  has -- my client, which has no context with the United

3  States, against whom the debtor is seeking affirmative

4  relief, that is contrary to our point of view with respect to

5  Chilean law generally and with respect to the language of the

6  power purchase agreement.

7    THE COURT:  Mr. Bromley, would you agree with me,

8  and your briefing seems to imply, that if this was a

9  straightforward motion to assume in which I am, essentially,

10  substituting my -- I'm testing the sufficiency of the

11  debtor's business judgment in assuming the contract.  Would

12  you agree with me that that is *in rem*?

13    MR. BROMLEY:  Well, Your Honor, I would say no.

14    THE COURT:  Okay.

15    MR. BROMLEY:  I would also state for this

16  particular case the train has left the station.  In this case

17  the debtor has already asked for specific relief.  We can't

18  back the car out of the car wash, so to speak.  The relief is

19  out there.  If the debtor revised its relief and said I

20  simply want you to tell me you -- simply want Your Honor to

21  determine that there was a -- that it's an appropriate

22  exercise of the debtor's business judgment I don't think Your

23  Honor can do that because you already know that there are

24  disputes.

25    I do think that if -- in this circumstance, Your

1   Honor, if the debtors had simply filed a motion and said we

2   want to say this is an exercise of our business judgment we

3   had already written letters to the debtors before they filed

4   this motion to tell them that we believed that there were

5   issues under the agreement that breaches and rights of

6   termination existed.

7          If they had filed that motion, I would be

8   speculating, but I think we would have taken up, again, with

9   respect to a letter to say you have an obligation to inform

10  the court that there is an active dispute with respect to the

11  agreement and because you're asking the court to make an

12  affirmative finding that there are no breaches and no issues.

13         So, Your Honor, quite honestly, you know, I don't

14  think we have those facts.  We couldn't have those facts.  We

15  had disputed the contract issues before the debtors filed the

16  motion.  That is why they incorporated it into the motion.

17  The debtors at this point have -- the court knows there is an

18  active dispute.  I don't think that Your Honor can enter an

19  order at this point saying that there is no breach and that

20  it's simply an appropriate exercise of the debtor's business

21  judgment.

22         THE COURT:  Okay.  Thank you.

23         I interrupted you so I will allow you to continue.

24         MR. BROMLEY:  Well, Your Honor, to continue, and I

25  don't want to -- I know we have covered a lot of ground here

1   in the colloquy.  I think I have addressed the point where we

2   believe that Orion is on all fours with this case.  We don't

3   believe that Sae Young applies for the reasons both that Your

4   Honor said as well as, you know, another express statement in

5   the decision where the court says, well, you know, I'm not

6   making any decisions here and if they want to go out and try

7   to enforce this and have to deal with a breach of contract

8   action down the road so be it.

9            I think it's also important in Sae Young to

10  recognize that it is yet another eleventh amendment decision.

11  You read Sae Young, you read Hood, and you read Katz the one

12  thing that is implicit in each of those cases is that there

13  is no underlying *in personam* jurisdictional question.  The

14  question is whether the eleventh amendment's statement of

15  sovereign immunity means that the state, itself, or the

16  agency of the state is immune from the jurisdiction of the

17  court.

18           Each one of the 50 states is resident within the

19  50 states.  So each one of them, but for the existence of the

20  eleventh amendment, clearly would be subject to the person

21  jurisdiction of the bankruptcy court. So there is no

22  discussion in any of those cases, as you wouldn't expect it

23  to be, because it's not as if it's a foreign state; it's a

24  domestic state.

25           THE COURT:  I mean those cases are helpful in

1  determining what would be an *in rem* proceeding.  The court is

2  struggling with what the scope of an *in rem* proceeding would

3  be in bankruptcy *vis-à-vis* the state because if it's *in rem*

4  then you can proceed against -- the court can exercise or

5  enter orders that would affect the state in that instance.

6          MR. BROMLEY:  Correct, Your Honor.  Look, our

7  argument is pretty simple.  It boils down to the fact that

8  the characterization of the relief is what controls in terms

9  of determining whether or not *in personam* jurisdiction is

10  required.  We recognize the court's subject matter

11  jurisdiction under 1334, but the inquiry, while necessary,

12  does not end there.  There has to be a question as to what

13  kind of relief is being sought in both with respect to the

14  assumption motion and the enforcement of the stay the debtors

15  are seeking particularized relief, individualized affirmative

16  relief against my client.

17          THE COURT:  Are we on the motion to the stay

18  because if we are I have questions on that.

19          MR. BROMLEY:  I am on that, Your Honor.

20          THE COURT:  Okay. I know, Mr. Barefoot, you didn't

21  really touch upon that so you are welcome to elaborate on the

22  reply, but let's talk about the motion to stay because I

23  think the relief sought with respect to the motion to say is,

24  of course, narrowly tailored.

25          So focusing on that relief don't the debtors just

1  want me to, essentially, put the agreement back in the nature

2  -- basically put the agreement back to where it was before

3  you allegedly took whatever actions you purportedly took.  So

4  it's just a declaration that the actions that were taken, if

5  true, are *void ab initio*.  So how is that affirmative relief

6  against your -- if that is, in fact, the test for *in personam*

7  or I should say only the test for *in personam*.

8          I agree with you that affirmative relief would, of

9  course, be *in personam*, but I think there's other areas where

10 affirmative relief may not be sought that could still be *in

11 personam*.  How is that *in personam*, I guess, the relief being

12 sought?

13         MR. BROMLEY:  So, Your Honor, it folds back into

14 the analysis that relates to the assumption agreement.

15 Without arguing the merits of whether or not there was a

16 violation of the stay.  The allegations that are made focus

17 on letters that my client sent in Chile to Chilean parties

18 that make statements of their point of view with respect to

19 their interpretation of the power purchase agreement full

20 stop.

21         That power purchase agreement, as I said, is

22 entirely a Chilean agreement cited in Chile among Chilean

23 parties; all of that.  Even the backup agreement with the

24 lenders is a Chilean law governed agreement.  So there is

25 nothing that is US about that issue.

1          THE COURT:  Well the agreement is property of the

2   estate.

3          MR. BROMLEY:  The agreement is property of the

4   estate, but not the agreement with the lenders.  There are

5   two agreements, right.  There is an agreement with the

6   lenders between my client and the lenders that is not

7   property of the estate, and there is agreement between my

8   client, Alto Maipo, that is property of the estate.

9          Without delineating and arguing the merits the

10  debtors do not dig into that.  They allege that in the

11  statements that have been made with respect to the agreement

12  with the banks, not property of the estate, is somehow a

13  violation of the automatic stay.  That clearly is not.  It

14  doesn't relate to property of the estate in the least.

15         Your Honor, what the debtors have done to try to

16  alleviate concerns is to say that we're not seeking

17  sanctions, we're not seeking affirmative relief in their

18  view.  Well that is the equivalent of saying that I am suing

19  a doctor for malpractice and I would like a finding of

20  liability, but I am going to hold off on seeking damages.

21  You can't go part way here.

22         The fact -- the idea that they're not seeking the

23  imposition of sanctions against my client, which I think

24  undoubtedly is affirmative relief, is undercut by the idea

25  that as soon as they get the "relief" that they're looking

1  for they will have in their back pocket an adjudicated

2  decision that the automatic stay has been violated and they

3  will come back to Your Honor looking for the imposition of

4  actual sanctions or damages.

5         THE COURT:  Well isn't it how it would work in

6  practice that they would actually go to Chile and seek

7  recognition of my order, okay, as a defensive mechanism

8  perhaps if you were not to perform under the contract or

9  otherwise.

10        MR. BROMLEY:  I don't know what a finding of a

11 statement that says that the debtors -- that MLP has violated

12 the automatic stay would have in Chile unless attached to it

13 with some instruction from this court that there is an impact

14 on MLP as a result of it.

15        THE COURT:  Well the actions -- the relief is that

16 you violated the stay and your actions are *void ab initio*.

17        MR. BROMLEY:  Well that is the affirmative relief.

18 I mean the *void ab initio* is affirmative relief.

19        THE COURT:  Hold on. Is it affirmative relief

20 against your client?

21        MR. BROMLEY:  It is saying that the letters that

22 my client has sent stating out legal positions have no legal

23 effect.

24        THE COURT:  You would agree that the agreement is

25 *res*, correct, of the estate?

1          MR. BROMLEY:  Correct.

2          THE COURT:  Okay.  Why would the relief effect

3   your client -- yes, it effects your client, of course, right,

4   because you took certain actions and they would be declared

5   *void ab initio* but wouldn't the -- wouldn't it really be an

6   effort to return the *res* to what it was before you took the

7   actions which would be *in rem* or would it be *in personam*

8   because your rights and obligations in the agreement are

9   somehow effected.

10          MR. BROMLEY:  I think, Your Honor, rights with

11   respect to the agreement are effected by that sort of a

12   determination.  And without -- I mean this is the slippery

13   slope with respect to jurisdiction, Your Honor, right.  We

14   are not arguing the merits of whether or not there has been a

15   stay violation.  The question of whether or not there was

16   goes to the issue that you are raising as to whether or not

17   there is any status quo to revert to.

18          We don't believe that there has been any change in

19   the status quo, but we are not going to argue that today,

20   Your Honor, because there is no personal jurisdiction with

21   respect to my client on that issue.

22          THE COURT:  I understand.  You can't argue it or

23   you would be submitting to my jurisdiction.

24          MR. BROMLEY:  Exactly, Your Honor.

25          THE COURT:  Absolutely.  If its *rem, in rem,* you

1  get the choice about whether you want to come in and argue

2  it, but I don't need you here, correct?

3          MR. BROMLEY:  Your Honor, I mean true.  Quite

4  honestly the point that Mr. Rosenblatt made so eloquently is

5  that it's the choice of parties to come into court and submit

6  to the jurisdiction.  Well, you know, that is true; it is the

7  choice.  Our client -- my client has chosen not to submit to

8  the court's jurisdiction and will stand on that right.  We

9  believe it is unconstitutional to adjudicate either of the

10  motions as it violates the due process clause because we are

11  not subject to the court's jurisdiction.

12          THE COURT:  Okay.  I appreciate that.  Thank you.

13          Well, Mr. Barefoot, why don't I --

14          MR. BAREFOOT:  Your Honor, may I be heard briefly

15  in reply?

16          THE COURT:  Of course.  I will turn the podium --

17  I was just about to turn the podium back over to you.  I

18  would say to the extent others want to be heard as well I am

19  happy to hear from them, but I want to hear from you first.

20          MR. BAREFOOT:  Thank you, Your Honor, and I

21  apologize for the interruption.

22          THE COURT:  That's okay.  I've been interrupting

23  you all morning.

24          MR. BAREFOOT:  Not at all, Your Honor.  As the

25  court stated, Your Honor, there were very clear suggestions

1  in the Sae Young decision that just as MLP did here the

2  state, which asserted that it was not subject to personal

3  jurisdiction, eluded in passing to asserted defaults under

4  the lease, but opted not to raise that issue on the merits

5  before the court; probably for the same reasons that MLP

6  doesn't want to because it doesn't want to subject itself to

7  the court's jurisdiction.

8        The court in Sae Young held that that was not a

9  bar to entry of the order.  And if Your Honor had any

10 discomfort or qualms about the scope of the proposed order

11 that we asserted we would respectfully suggest, Your Honor,

12 that we can address that just as the Sae Young Westmont Court

13 did by tailoring, in a more narrow fashion, the findings that

14 we would be asking the court to make.

15       THE COURT:  Well I thought that through too.  So

16 let's just say hypothetically you remove the finding that

17 there is a default.  So, essentially, I am in a position that

18 has been described in a few courts that I am just looking at

19 the debtor's business judgment in assuming the agreement, but

20 I still have a 365(b) problem because you cannot assume an

21 agreement unless you cure it or you provide prompt assurance

22 of a cure.

23       So assuming, assuming for the sake of argument,

24 that you're wrong and that you did, in fact, breach the

25 agreement how do I find what the cure would be because that

1  means to actually be a finding, correct?

2          MR. BAREFOOT:  I believe that is correct, Your

3  Honor. That is why we briefed the issue because we did

4  believe that this is a requirement under 365(b).

5          Let me draw Your Honor to an alternative finding

6  that we did include in the proposed form of order which is

7  that the insolvency clause is an unenforceable *ipso facto*

8  clause and that as such it need not be cured.  I don't think

9  there is serious room for debate that the insolvency clause,

10  which MLP asserts, was triggered based on the commencement

11  and continuation of these Chapter 11 proceedings would be an

12  *ipso facto* clause that, at least, as a matter of US

13  bankruptcy law would not be enforceable and would not be

14  required to be cured under 365.

15          THE COURT:  So why does that take this matter from

16  a potential *in personam* action if I were to agree with Mr.

17  Bromley's client to an *in rem* action?

18          MR. BAREFOOT:  Because, Your Honor, that is not

19  adjudicating any rights that MLP has under Chilean law.  That

20  is adjudicating whether a cure is required as a matter of the

21  prerequisites to assumption that are set out in the code.

22  It's not determining whether there was a default under

23  Chilean law, its only determining that as a matter of US

24  bankruptcy law this is not a default that is required to be

25  cured.

1          THE COURT:  So in other words --

2          MR. BAREFOOT:  And I don't think there has been --

3          THE COURT:  -- assuming that there is a default

4  you don't need to cure it because it cannot be enforced.

5          MR. BAREFOOT:  That is correct, Your Honor.  That

6  just flows from the text of 365(b)(2) which provides,

7  effectively, a carve-out from the (b)(1) cure requirement and

8  says that Paragraph 1, which is the cure requirement, does

9  not apply to a default that is a breach of a provision

10  relating to the commencement of a case under this title, the

11  insolvency or financial condition of the debtor, etc.

12          I think that given that MLP's allegations, you

13  know, they haven't been briefed, but you have seen them in

14  the latter correspondence that we have submitted to the

15  court.  They all turn on the insolvency clause being

16  triggered by the commencement of these Chapter 11 cases.

17          THE COURT:  Okay.

18          MR. BAREFOOT:  I think, Your Honor, that -- I also

19  just want to note, you know, I think there is a little bit of

20  a disingenuous in Mr. Bromley's position that was made clear

21  when Your Honor asked him, you know, the question about if

22  this were just limited to a finding about the debtor's

23  business judgment would that be an *in personam* question that

24  directly affected MLP.  He said that it still would be.

25          I think there is really no legitimate argument

1   that if all the court is doing is authorizing the assumption

2   of the agreement based on its finding that based on the

3   evidence that we will present at, what Your Honor deems, the

4   appropriate time that we have satisfied the business judgment

5   standard.  I think there is really no legitimate debate about

6   that evidence.

7          Your Honor, I just want to also briefly touch on

8   the questions that have been raised as to the prospects of

9   impact of realization or enforcement on the orders that Your

10  Honor enters.  I think as Mr. Rosenblatt alluded to that

11  really is a question for another day and potentially for

12  another court.

13         The availability of the remedies that we're asking

14  for Your Honor should not turn on a separate showing of

15  exactly when and how those will be enforced in the future.

16  It would really be premature to speculate about that

17  question.

18         If I could just then briefly touch on the

19  automatic stay argument, Your Honor.  I won't belabor the

20  point, but I think there really is no legitimate argument

21  that a notice to either terminate or unilaterally modify an

22  executory contract is a black letter violation of the

23  automatic stay. It is an interference with the debtors -- the

24  property of the debtor's estates, namely the debtor's

25  property rights under the agreement.

1          As Your Honor eluded to, effectively, undoing that

2   stay violation is in no way an adjudication of specific

3   rights or obligations as to the counterparty to that

4   agreement.  It's simply the natural consequence of the

5   actions being taken in violation of the stay being void.

6          THE COURT:  So it's your position that there was a

7   notice of termination?

8          MR. BAREFOOT:  Your Honor, the letters, I think,

9   quite cleverly are a little ambiguous as to whether the

10  termination was being exercised, but to the extent that that

11  was the intent we would certainly say that that was an act in

12  violation of the stay that was *void ab initio*.  At minimum

13  the letters are very clear that they are seeking to shorten

14  the debtors and unilaterally terminate the debtors cure

15  periods so as to commence the separate cure periods that

16  apply to the lenders.  Even though that is short of

17  termination, a unilateral modification of an executory

18  contract is similarly a stay violation that should be *void ab*

19  *initio.*

20         THE COURT:  Didn't I see a letter come across my

21  desk in which MLP stated that they are performing under the

22  contract subject to all reservations?

23         MR. BAREFOOT:  Your Honor, that letter was

24  attached, you're correct, as an exhibit to the Herzog

25  declaration that we filed with our reply brief.  The letter

1   says that -- you're correct, that they are not waiving any

2   rights or remedies that they have, but that solely for the

3   time being they will -- I think that the language that they

4   used was nominate the power that they are obligated to

5   purchase under the agreement for the time being.

6          I don't think in any way, though, that --

7   Mr. Bromley can correct me if this was his intent that that

8   letter is intended to retract or modify the positions in the

9   prior letters that we would assert constitutes stay

10  violations.

11         THE COURT:  What does it mean to nominate the

12  power?

13         MR. BAREFOOT:  Your Honor, this may be going into

14  a technical realm that I am not perfectly qualified in, but

15  there is a mechanism under the contract wherein MLP has to

16  indicate that it, effectively, will purchase a certain

17  quantity of power.  Because the -- as you have heard in

18  various other proceedings by way of update the project is now

19  commercially operational which triggered a request from Alto

20  Maipo, the debtors, to effectively have MLP agree as to the

21  quantity of power that it's going to take from the off put of

22  the plant.

23         So I think the letter is saying that they will

24  fulfill for the time being those technical requirements and

25  will take the power, but I don't think in any way that that

1  letter, given its express reservation of rights, was undoing,

2  in particular, the unilateral shortening of the debtor's cure

3  periods that was set forth in prior correspondence.

4          THE COURT:  Okay.  I appreciate that explanation.

5  Thank you.

6          MR. BAREFOOT:  So I will turn the podium to

7  Mr. Rosenblatt, or Mr. Resnick, or Mr. Abbott if they had

8  anything further unless Your Honor has questions.

9          THE COURT:  I don't think I have any questions at

10  this time.  Thank you.

11          Mr. Rosenblatt.

12          MR. ROSENBLATT:  Yes.  Thank you, Your Honor.

13  It's Andrew Rosenblatt, again, from Norton Rose Fulbright.

14          Literally just one minute, Your Honor.  I just

15  want to say that I think that, you know, mere findings that

16  are incidental to adjudicating parties rights in the debtor's

17  property does not transform an *in rem* action into an *in*

18  *personam* action.  The findings are not the relief that the

19  debtors are seeking.  The relief here that the debtors are

20  seeking is contract assumption, Your Honor, which is a core

21  proceeding which unquestionably this court has the authority

22  to enter under its *in rem* jurisdiction.

23          Your Honor, I promise this is the last time I will

24  refer to the Sae Young case, but I do think that there is a

25  good quote which we had cited in our brief which addresses

1  this issue and, Your Honor, it's at 276 B.R. 898 where the

2  court finds reasons as follows.  It says pursuant to 28

3  U.S.C. 1334(e) District Courts, hence bankruptcy judges, have

4  exclusive jurisdiction over a debtor's estate which consists

5  of all legal or equitable interest the debtor has wherever

6  located and by whomever held; thus, the bankruptcy judge has

7  such authority over a debtor's property no matter where the

8  property is located.

9       The jurisdiction over a debtor's estate is *in rem*

10 jurisdiction which involves determining the status of

11 property and, therefore, the rights of persons with respect

12 to that property.  In contrast, *in personam* jurisdiction

13 seeks to impose an obligation on a person.

14      Your Honor, I agree with Mr. Bromley.  The key

15 here is really the nature of the relief that the debtors are

16 seeking.  Despite the findings that they have requested,

17 which, again, as Mr. Barefoot eluded to can easily be scaled

18 back the findings are not the relief that the debtor is

19 seeking here.

20      They are merely seeking to have this court

21 authorize them to assume a contract which is property of the

22 estate which this court clearly has *in rem* jurisdiction over,

23 Your Honor.  Again, I don't think that findings that are

24 incidental to a property dispute transforms a clear *in rem*

25 action into an *in personam* action.

1          Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. BROMLEY:  Your Honor, may I -- oh, I'm sorry,

4   I don't know if Mr. Resnick has something to say.

5          THE COURT:  Let me hear from (indiscernible)

6   parties and then Mr. Bromley, you can get a chance to

7   address --

8          MR. RESNICK:  Nothing further at this time.  Thank

9   you.

10          THE COURT:  Okay.  Mr. Abbott.

11          MR. ABBOTT:  Nor from I, Your Honor.  I think you

12   have had, as my grandfather used to say, a sufficiency here.

13          THE COURT:  Okay.  I'd like to meet your

14   grandfather.

15          Mr. Bromley.

16          MR. BROMLEY:  Your Honor, I apologize for that

17   interruption.  Very briefly.

18          First, to deal with Mr. Rosenblatt's comments I

19   couldn't disagree with him more as he just read the order and

20   the relief sought in the motion.

21          With respect to Mr. Barefoot's points I think the

22   most telling comment with respect to the stay violation issue

23   was the phrase to the extent that was the intent.  There is

24   no evidence before Your Honor right now.  We are not going to

25   submit an argument on the merits until a determination is

1  made as to whether or not there is personal jurisdiction.

2  There is nothing before the court that would allow Your Honor

3  to rule on the stay motion at the moment.

4          In the event that Your Honor determines that there

5  is personal jurisdiction we reserved our rights as to

6  whatever relief, whether modified or status quo, that the

7  debtors decide to continue to seek.

8          Thank you, Your Honor.

9          THE COURT:  All right.  Thank you.

10         Well this is very informative.  I am going to take

11  a break and I need to think over a few points that were

12  raised by the parties today.  Why don't we come back at four

13  o'clock and I will let you know what my decision is on these

14  two matters.

15         My understand is that --

16         MR. BAREFOOT:  Your Honor, will we use the same

17  zoom?  Just logistically the same zoom or do we need to

18  register for a new matter?

19         THE COURT:  You can use the same zoom.

20         Are those the only two -- are these the only two

21  matters that are going forward today?

22         MR. BAREFOOT:  They are, Your Honor.

23         THE COURT:  Okay.  So we will adjourn and I will

24  see you all at four o'clock.  Thank you very much.

25         (Recess taken at 12:13 p.m.)

1          (Proceedings resumed at 4:01 p.m.)

2          THE COURT:  Good afternoon, everyone.  This is

3   Judge Owens.

4          Thank you for giving me a couple hours to get my

5   thoughts together following the conclusion of oral argument.

6   We're gathered together for my oral ruling in the Alto Maipo

7   case.

8          So the question before the court is whether it

9   may, without first determining whether it has personal

10  jurisdiction over MLP, adjudicate the debtor's motion to

11  assume the power purchase agreement between Alto Maipo and

12  MLP, and the debtor's motion for entry of an order enforcing

13  the automatic stay and declaring *void ab initio* certain

14  purported actions take to date by MLP with respect to that

15  agreement. This is the third hearing on the matter.

16          At the first hearing it was made clear that the

17  debtors did not serve the motions on MLP pursuant to

18  Rules 9014(b) and 7004 which require them to serve the

19  motions as they would at complaint and summons.  Given MLP's

20  status as a foreign entity service would require compliance

21  with Rule 4(f).

22          While MLP argued that I could not, therefore,

23  schedule a hearing on the motions I disagreed given MLP's

24  actual notice of the motions and my ability to craft an

25  appropriate schedule to give MLP the opportunity to present

1  the relevant jurisdictional arguments that they would raise

2  if the motions were properly served under the applicable

3  bankruptcy and federal rules.  I ultimately scheduled the

4  motions for a hearing today to determine, as a threshold

5  matter, the issue currently before the court.

6       The debtors and their supporters do not wish to

7  spend the time and resources in engaging in discovery and a

8  contested hearing to establish personal jurisdiction over

9  MLP.  Rather, they assert I may enter the orders because I

10  have *in rem* jurisdiction over both the agreement as property

11  of the estate and because the motion to assume that agreement

12  is an *in rem* action.  MLP vigorously opposes the debtors

13  approach directing this courts -- disputing this court's

14  jurisdiction over it and my ability to adjudicate the motions

15  without first establishing personal jurisdiction over it.

16       I agree with MLP and will not adjudicate the

17  assumption motion without an adversary proceeding, proper

18  service and an establishment of personal jurisdiction over

19  MLP.  In order to determine the questions before me I must

20  take critical stock of the relief sought.

21       MLP is correct that the debtor's assumption motion

22  seeks more than a determination of the debtor's business

23  judgment in seeking to assume the agreement.  It seeks

24  findings that, among other things, there are no existing

25  defaults and, thus, no required cure under the agreement in

1  order to comply with Section 365(b).

2  　　　　To provide an evidentiary basis for such findings

3  the debtors attached declarations and those declarations make

4  it clear from the outset that there was a pending dispute

5  amongst MLP and the debtors over a potential default.  The

6  letters attached to the stay motion confirm such a dispute.

7  　　　　Making the requesting findings regarding default

8  and cure requires a determination of the party's contractual

9  rights and responsibilities in the agreement and would

10  constitute an *in personam* action.  A breach of contract

11  action is a common example of an *in personam* action and,

12  effectively, the findings sought here would require the same

13  determination whether a breach of contract occurred and the

14  appropriate remedy, if any.

15  　　　　The action is not one that is traditionally *in rem*

16  requiring or involving a determination of the claims and

17  rights of MLP and the debtors to the agreement.  The debtor's

18  suggestion that --

19  　　　(Audio interruption)

20  　　　　THE COURT:  The debtor's suggestion that they

21  remove most of the at issue findings and leave only the

22  question of whether a particular clause of the agreement

23  amounts to an unenforceable *ipso facto* clause does not change

24  the *in personam* nature of the action. The court would still

25  be adjudicating and effecting MLP's rights in the agreement

1  rather than determining interest of the parties to the

2  estates *res*.

3          Accordingly, the due process clause precludes me

4  from adjudicating those issues and making the debtors

5  requested findings in the absence of personal jurisdiction

6  over MLP.  There is no dispute that I have *in rem*

7  jurisdiction over the agreement.  Moreover, case law,

8  including the Sae Young case relied upon the by debtors and

9  others supportive of the debtors, suggests that a straight-

10  forward adjudication of only a debtor's business judgment in

11  seeking to assume the agreement would be an *in rem*

12  proceeding, but those conclusions do not modify or transform

13  the *in personam* nature of the related default and cure

14  disputes into an *in rem* action or permit me to adjudicate the

15  *in rem* action under the umbrella of an *in rem* proceeding

16  without establishing personal jurisdiction over MLP.

17          While the court's jurisdiction is premised on the

18  debtor and its estate the Supreme Court has acknowledged in

19  Katz and Hood that the bankruptcy court's exercise of *in rem*

20  jurisdiction can involve ancillary *in personam* actions that

21  could exceed a court's authority.  That is what we would have

22  here if we move forward as the debtor's request.

23          Another hurdle presented by the inclusion of the

24  debtor's requested findings in the proposed order is the

25  Second Circuit's decision in Orion which is not binding on me

1  but is persuasive in this instance.  That decision makes it

2  clear that the types of determinations requested by the

3  debtors in this proceeding by way of their assumption motion

4  require an adversary proceeding.

5         As the court explained, at the heart a motion to

6  assume should be considered a summary proceeding intended to

7  efficiently review the debtors or trustee's decision to

8  adhere to or reject a particular contract in the course of

9  swift administration of the bankruptcy estate. It is not the

10 time or place for prolonged discovery or lengthy trial with

11 disputed issues.  In concluding that an adversary proceeding

12 is required for the adjudication of contract issues that

13 arise as part of the motion to assume the court highlighted

14 that proceeding in such a fashion eliminates the possibility

15 that constitutional problems will arise.

16        While I could find no case directly on point

17 addressing today's issues in the context of a foreign

18 creditor there are plenty of case examples included within

19 this jurisdiction in which bankruptcy courts have required

20 adversary proceedings to be commenced and heard concurrently

21 with assumption or rejection motions, or significant contract

22 disputes exist between parties over whom the court already

23 has personal jurisdiction.

24        Often parties seeking answers to contract disputes

25 voluntarily commence an adversary alongside a 365 motion or

1  simply file an adversary proceeding in anticipation of such a

2  motion.  In Orion an adversary proceeding was deemed

3  necessary to protect the counterparty's jury rights.  Here,

4  of course, the need for an adversary and attendant procedural

5  safeguards arises from, among other things, the personal

6  jurisdiction issues asserted by MLP.

7         In sum, if the debtors want the findings they must

8  commence and adversary proceeding, properly serve the

9  complaint and summons as well as the assumption motion to the

10  extent proper service has not yet been effectuated so that

11  the court's adjudicatory authority can be established and

12  MLP's due process rights can be upheld.

13         The set of circumstances in which we find

14  ourselves and which serves to support my decisions today are

15  extraordinary.  Here, there is an acknowledged contract

16  dispute between the debtors and MLP.  In the face of that

17  dispute the debtors sought assumption of the agreement as

18  well as adjudication of the contact disputes without an

19  adversary proceeding or proper service on MLP.

20         MLP does not consent to the procedure or my

21  exercise of personal jurisdiction and the debtors do not wish

22  to engage in a contested hearing to establish personal

23  jurisdiction over MLP at this time, nor have they sought

24  recognition proceedings in Chile.  While the debtors argue

25  that my ruling today fundamentally will alter cases in this

1  district going forward these unique circumstances are not

2  present in 99.999 percent of the cases before me.  I do not

3  anticipate them arising again any time in the near future;

4  moreover, regardless of the effects I simply am not empowered

5  to do what the debtors want me to do.

6          Finally, for the sake of completeness, I want to

7  acknowledge that we have come full circle on the issues

8  unsuccessfully presented by MLP at our first hearing.  Now,

9  however, I have the benefit of full briefing and argument,

10  and I am in a position to hold that proceeding forward on the

11  merits of the assumption motion cannot occur as requested by

12  the debtors for the reasons explained. Moreover, to avoid

13  further briefing on the issue I am also prepared to find that

14  MLP has not submitted to the jurisdiction of the court

15  through their briefing and arguments to date.

16          Turning to the stay motion the stay motion seeks a

17  determination that MLP's actions to date and any future

18  actions purportedly terminating or modifying contract terms

19  violate the stay and are *void ab initio*.  Given the narrow

20  form of relief sought I do believe that the action is *in rem*.

21  It is, essentially, a proceeding to return property of the

22  estate, the agreement, to the form it was before MLP took the

23  purported actions.

24          Affirmative relief is not sought against MLP and I

25  am not being asked to determine whether MLP was entitled to

1  take the purported actions pursuant to its rights under the

2  agreement.  Rather, the question is whether its actions, *vis-*

3  *à-vis* the agreement, property of the estate, the estates *res*

4  violated the automatic stay and are thus *void ab initio*.

5  This is an *in rem* action.

6          Accordingly, I will hear the merits of the motion.

7  In fairness to MLP it should be given the opportunity to make

8  a merits based argument, should it wish, and, therefore, I

9  think that the motion should be scheduled for hearing on

10  May 13th with an appropriate objection deadline for MLP of

11  4:00 p.m. on May 6th.  I am not requiring MLP to submit to

12  the jurisdiction of the court, I'm just giving it the

13  opportunity and time.

14          So for those reasons we will not be going forward

15  on the merits of both motions today.  I will so order the

16  record unless the parties think that my conclusions today

17  should be submitted in an order.  I am happy to direct the

18  parties to meet and confer and submit that order under

19  certification of counsel.

20          Are there any questions?

21          MR. BAREFOOT:  No, Your Honor.

22          THE COURT:  Okay.  I'm not hearing any.  To the

23  extent that you would like an order memorializing the go-

24  forward process, like I said, please meet and confer with

25  Mr. Bromley.  You are welcome to try to memorialize that in a

1  form of order submitted under certification of counsel.

2          I think that is all we had for today.  I look

3  forward to seeing you all on Friday.  With that I will

4  consider today's hearing adjourned.  Thank you all very much

5  for your arguments and your presentations in connection with

6  this matter.

7          (Proceedings concluded at 4:12 p.m.)

1                          CERTIFICATION

2           We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                    April 26, 2022

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Mary Zajaczkowski                     April 26, 2022

13   Mary Zajaczkowski, CET-531

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25